IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BRIDGE AINA LE'A, LLC, | ) | CIVIL NO. 11-00414 SOM-BMK |
| | ) | |
| Plaintiff, | ) | ORDER STAYING CASE PENDING |
| | ) | RESOLUTION OF THE STATE CASE |
| vs. | ) | |
| | ) | |
| STATE OF HAWAII LAND USE | ) | |
| COMMISSION; VLADIMIR P. | ) | |
| DEVENS, in his individual and | ) | |
| official capacity; KYLE | ) | |
| CHOCK, in his individual and | ) | |
| official capacity; THOMAS | ) | |
| CONTRADES, in his individual | ) | |
| and official capacity; LISA | ) | |
| M. JUDGE, in his individual | ) | |
| and official capacity; | ) | |
| NORMAND R. LEZY, in his | ) | |
| individual and official | ) | |
| capacity; NICHOLAS W. TEVES, | ) | |
| in his individual and | ) | |
| official capacity; RONALD I. | ) | |
| HELLER, in his official | ) | |
| capacity; DUANE KANUHA, in | ) | |
| his official capacity; | ) | |
| CHARLES JENCKS, in his | ) | |
| official capacity; JOHN DOES | ) | |
| 1-10; JANE DOES 1-10; DOE | ) | |
| PARTNERSHIPS 1-10; DOE | ) | |
| CORPORATIONS 1-10; DOE | ) | |
| ENTITIES 2-10 and DOE, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

ORDER STAYING CASE PENDING RESOLUTION OF THE STATE CASE

I.      INTRODUCTION.

       This case arises out of a decision by the State of

Hawaii Land Use Commission to reclassify a parcel of land from

urban use to agricultural use.  Plaintiff Bridge Aina Le'a, LLC

("Bridge"), the owner of the parcel, claims that, by

reclassifying the land, Defendants State of Hawaii Land Use Commission (the "Commission"), and some of its commissioners-- Vladimir P. Devens, Kyle Chock, Thomas Contrades, Lisa M. Judge, Normand R. Lezy, Nicholas W. Teves, Ronald I. Heller, Duane Kanuha, and Charles Jencks (collectively, "the Commissioners")-- violated Bridge's rights under the United States Constitution, the Hawaii constitution, and various Hawaii laws.  Bridge seeks both injunctive and monetary relief as to all Defendants.

Bridge appealed the Commission's decision to the state court and, separately, initiated the present action in state court.  Defendants removed this case to this court based on federal question jurisdiction, as the Complaint asserts various federal constitutional claims.  Defendants moved for dismissal on numerous grounds.  Among other things, Defendants contended that this court should abstain from deciding the constitutional issues in light of the pending state court administrative appeal.  Since the filing of Defendants' motion, the state court has ruled in favor of Bridge in the administrative appeal.  Defendants say they intend to appeal that ruling.  In light of that ruling, Defendants have changed their position and now maintain that abstention is inappropriate.  Bridge, on the other hand, now argues in favor of the very abstention it earlier opposed and asks this court to remand either the whole case or at least the state law claims.  Although agreeing that abstention is

appropriate, the court remands no claims and stays the entirety
of the present action pending the resolution of the
administrative appeal.

II.      BACKGROUND.

         A.   Factual Background.

         The subject parcel of land consists of 1,060 acres in
South Kohala, on the island of Hawaii.  Notice of Removal Ex. 1,
ECF No. 1 ("Complaint") ¶ 8.  On November 25, 1987, the parcel
was purchased by a private company that sought to develop a large
residential community.  Id. ¶ 9.  Toward that end, the purchaser
petitioned to reclassify the land from "agricultural use" to
"urban use."  Id.  The Commission approved the petition on
condition that 60 percent of the homes built would be
"affordable" units.  Id. at 11.

         During the next two decades, the property changed
ownership.  Eventually, Bridge became the owner.  Id. ¶¶ 12, 23.
When Bridge acquired the property, it was classified for "urban
use" and subject to an amended affordable housing condition that
still required 60 percent of the homes to be affordable, but that
also set a minimum of 1,000 affordable homes.  Id. ¶ 15.

         After various proceedings, including proceedings that
resulted in amendments to the condition, see Compl. ¶¶ 23-31,
37-55, the Commission, in September 2009, ordered Bridge and DW
Aina Le'a Development ("DW"), the company to which Bridge

3

intended to assign the project, to complete 16 affordable units by March 31, 2010.  Id. ¶ 61.  The 16 units, as well as other work on the project, were allegedly completed by June 2010.  Id. ¶ 65.  However, allegedly because the affordable homes were not completed by the deadline of March 31, 2010, the Commission determined that Bridge and DW had not satisfied the applicable condition.  Id. ¶ 76.  In January 2011, the Commission voted to reclassify the land back to agricultural use.  Id. ¶ 93.

    B.  Procedural Background.

        Bridge filed two actions challenging the Commission's decision to reclassify the land back to agricultural use.  First, Bridge sought judicial review of the Commission's decision through an administrative appeal.  Second, on June 7, 2011, Bridge filed the present action in state court, asserting various federal and state constitutional claims, as well as claims based on other state law grounds.  The constitutional claims assert procedural and substantive due process violations, equal protection violations, and unconstitutional takings under both the United States Constitution and the Hawaii constitution.  Defendants removed this case to federal court, then moved to dismiss all claims.

        On Monday, December 19, 2011, this court held a hearing on the motion to dismiss.  At that hearing, the parties informed the court that, on Friday, December 16, 2011, Judge Elizabeth

4

Strance of the Circuit Court of the Third Circuit of the State of Hawaii had orally ruled in favor of Bridge on its administrative appeal.  In light of this development, the court instructed the parties to submit supplemental briefing addressing how Judge Strance's ruling affected the present action and the pending motion to dismiss.  See ECF No. 38.

Judge Strance, as explained in her written order and findings of fact and conclusions of law, reversed and vacated the Commission's decision to reclassify Bridge's land back to agricultural use.  See Supp. Mem. Regarding Effect of State Court Ruling Ex. A ("Administrative Appeal"), Mar. 9, 2012, ECF No. 41-2.  She concluded that the Commission's decision violated chapters 205 and 91 of the Hawaii Revised Statutes; Bridge and DW's right to due process under the Fourteenth Amendment of the United States Constitution and article I, section 5, of the Hawaii constitution; and Bridge and DW's right to equal protection under the United States Constitution and the Hawaii constitution.  Id.  Defendants have informed the court that they intend to appeal Judge Strance's order.  Defs.' Mem. Re Effect of State Court Ruling on Defs.' Mot. to Dismiss Compl. Filed June 7, 2011, at 3, Mar. 9, 2012, ECF No. 42.

III.    ANALYSIS.

Bridge's Complaint asserts the following claims:  Count I: Denial of Due Process of Law (federal and state

constitutions); Count II: Inverse Condemnation (federal and state constitutions); Count III: Denial of Equal Protection of Law (federal and state constitutions); Count IV: Common Law Deprivation of Vested Rights; Count V: Equitable Estoppel; Count VI: 42 U.S.C. § 1983 (federal due process, equal protection, and takings claims); Count VII: Violation of Hawaii Revised Statutes Chapters 91, 92, and 205 and Chapter 15-15 of the Hawaii Administrative Rules; Count VIII: Unconstitutional Land Development Conditions (federal and state constitutions); Count IX: Injunctive and Declaratory Relief; Count X: Declaratory Relief under Hawaii Revised Statutes § 632-1; and Count XI: Attorneys' Fees and Costs under 42 U.S.C. § 1988.

Defendants argued in their motion to dismiss that, among other things, this court should abstain and stay Bridge's federal takings claim pursuant to Railroad Commission of Texas v. Pullman Co., 312 U.S. 496 (1941), given the pending administrative appeal.  Then, after Judge Strance ruled, Defendants argued that Pullman abstention no longer applied. Bridge, on the other hand, initially opposed abstention, but, in its supplemental brief and at the continued hearing on this motion, adamantly argued that Pullman abstention was appropriate. Relying heavily on VH Property Corp. v. City of Rancho Palos Verdes, 622 F. Supp. 2d 958, 962 (C.D. Cal. 2009), Bridge now argues that this court should invoke Pullman abstention and

either remand the entire case to state court, or remand the state law claims and stay the federal claims pending resolution of the state law claims in state court.   The court agrees that VH Property is particularly instructive and that Pullman abstention is appropriate.   However, for reasons discussed in part C of the present order, the court stays and keeps both the federal and state law claims pending the resolution of Bridge's appeal in the state judicial system.[1]

A.    Pullman Abstention is Appropriate.

"The Pullman abstention doctrine allows a federal court to postpone the exercise of federal jurisdiction when 'a federal constitutional issue . . . might be mooted or presented in a different posture by a state court determination of pertinent state law.'"   VH Prop., 622 F. Supp. at 962 (quoting Pearl Inv. Co. v. City and Cnty. of San Francisco, 774 F.2d 1460, 1462 (9th Cir. 1985), and C-Y Dev. Co. v. City of Redlands, 703 F.2d 375, 377 (9th Cir. 1983)).   Pullman abstention is an "equitable doctrine that allows federal courts to refrain from deciding sensitive federal constitutional questions when state law issues may moot or narrow the constitutional questions."   San Remo Hotel v. City and Cnty. of San Francisco, 145 F.3d 1095, 1104 (9th Cir. 1998).   It is also a discretionary doctrine, which flows from the

_____

[1]  If, despite their statement that they intend to appeal Judge Strance's ruling, Defendants ultimately do not appeal, they should promptly inform the court.

7

court's equity powers.  Potrero Hills Landfill, Inc. v. Cnty. of Solano, 657 F.3d 876, 888 (9th Cir. 2011) (citing Baggett v. Bullitt, 377 U.S. 360, 375 (1964), and Smelt v. Cnty. of Orange, 447 F.3d 673, 678 (9th Cir. 2006).

Pullman abstention is warranted if three conditions are satisfied: "(1) the federal plaintiff's complaint requires resolution of a sensitive question of federal constitutional law; (2) the constitutional question could be mooted or narrowed by a definitive ruling on the state law issues; and (3) the possibly determinative issue of state law is unclear."  Potrero Hills Landfill, 657 F.3d at 888 (quoting Spoklie v. Montana, 411 F.3d 1051, 1055 (9th Cir. 2005)).  These conditions are met in this case.

>        1.    Sensitive Question of Federal Constitutional
>              Law.

The Ninth Circuit has consistently held that "land use planning is a sensitive area of social policy that meets the first requirement for Pullman abstention."  San Remo Hotel, 145 F.3d at 1105 (quoting Sinclair Oil Corp. v. Cnty. of Santa Barbara, 96 F.3d 401, 409 (9th Cir. 1996), and citing Sederquist v. City of Tiburon, 590 F.2d 278, 281-82 (9th Cir. 1978), and Rancho Palos Verdes Corp. v. City of Laguna Beach, 547 F.2d 1092, 1094-95 (9th Cir. 1976)).  See also VH Prop., 622 F. Supp. 2d at 962.  This case directly implicates land use planning, as Bridge is asking this court to determine whether an action taken by the

Hawaii Land Use Commission violated various federal constitutional rights.  The first <u>Pullman</u> requirement is therefore satisfied.

> 2.    The State Appellate Court Ruling May Narrow
>       <u>or Alter Some Federal Constitutional Issues.</u>

The second <u>Pullman</u> abstention requirement involves a "state law question that has the potential of at least altering the nature of the federal constitutional questions." <u>C-Y Dev.</u>, 703 F.2d at 378.  "In land use cases, the Ninth Circuit has frequently found this requirement satisfied where a favorable decision on a state law claim would provide plaintiff with some or all of the relief he seeks." <u>VH Prop.</u>, 622 F. Supp. 2d at 963.

In <u>VH Property</u>, the plaintiffs alleged that the defendant, the City of Rancho Palos Verdes, had violated their rights under the United States and California constitutions and California law by denying land development applications submitted by VH.  <u>Id.</u> at 960.  The court found the second requirement satisfied: "it is possible that resolution of VH's state constitutional takings claim in its favor will obviate the need to rule on its federal claims, particularly if VH finds the compensation awarded by the state court satisfactory." <u>Id.</u> at 963.  The court noted, "Alternatively, the state court may issue a writ of mandamus directing the City to approve VH's development plans, mooting VH's federal claims to the extent they seek

redress for a permanent, rather than temporary, deprivation of property rights." Id.

VH Property relied on two Ninth Circuit cases, Sinclair Oil, 96 F.3d at 405, and C-Y Development, 703 F.2d at 378-80, both of which addressed challenges to land use decisions. C-Y Development is particularly relevant here. As explained in VH Property, 622 F. Supp. 2d at 963:

> [I]n C-Y Development, plaintiff challenged the City of Redlands' denial of its applications for building permits, seeking, among other things, a writ of mandamus requiring the city to issue the permits. C-Y Development, 703 F.2d at 378. The court held that the second requirement for Pullman abstention was met, observing that a writ of mandate directing the city to issue the permits would moot some of the federal issues in the case. Id. at 380. The fact that "following such hypothetical state adjudication [plaintiff] might return to federal court to seek damages for the alleged temporary deprivation of its property rights" did not render Pullman abstention inappropriate. Id.

If Bridge prevails in its administrative appeal, Bridge will obtain some of the relief it seeks in this case. That might well moot out some of the constitutional claims. With respect to Bridge's due process and equal protection claims in this action, Bridge seeks injunctive and monetary relief. It seeks to enjoin the Commission from, among other things, taking any further action to reclassify the property to agricultural use. An affirmance of Judge Strance's order would presumably ensure that

10

the property was designated for urban use, mooting out at least some of the injunctive relief claims.

The appeal could also conceivably narrow the due process and equal protection claims, as a Hawaii appellate court's interpretation of Hawaii law might limit the conduct by the Commissioners that is actionable.  For example, in asserting that Defendants violated its federal and state constitutional rights to procedural and substantive due process, Bridge alleges that "Defendants . . . repeatedly violated State law and their own procedures requiring a full and fair hearing and presentation of evidence to determine whether the Property should be reclassified to agricultural use."  Compl. ¶ 139.  If a Hawaii appellate court held that Defendants had conducted a full and fair hearing under Hawaii law, then that particular alleged violation of Hawaii law would no longer support Bridge's constitutional claims.

With respect to its takings claim, Bridge seeks, among other things, "just compensation" for the reclassification of the subject property to agricultural use, which allegedly deprived Bridge of all economically viable use of the land.  Judge Strance's order vacating and reversing the Commission's decision appears to limit any takings claim to one for just compensation for a temporary taking.  See First English Evangelical Lutheran Church of Glendale v. Los Angeles, 482 U.S. 304, 321 (1987)

(holding that if "the government's activities have already worked a taking of all use of property, no subsequent action by the government can relieve it of the duty to provide compensation for the period during which the taking was effective").  A reversal of Judge Strance's order could, depending on the appellate court's reasoning, undercut any takings claim.

Defendants argue that abstention is not appropriate because any appeal in the state court will not affect the Commissioners' entitlement to judicial or qualified immunity in their individual capacities.  In essence, Defendants argue that, even if this court should abstain from adjudicating Bridge's federal claims, it should address some of the defenses to those claims.  Defendants cite no case taking such a position.

Even if considering just the defenses were appropriate, the court concludes that it should not do so here, because the administrative appeal could also affect judicial and qualified immunity issues.

The doctrine of judicial immunity provides judges, state and federal, with absolute immunity from liability for damages based on acts performed in their judicial capacities. Ashelman v. Pope, 793 F.2d 1072 (9th Cir. 1986) (en banc). Absolute judicial immunity also extends to "agency officials when they perform functions analogous to those performed by judges."

12

Buckles v. King Cnty., 191 F.3d 1127, 1133 (9th Cir. 1999)

(citing Butz v. Economou, 438 U.S. 478, 511 (1978)).

Qualified immunity shields "government officials performing discretionary functions" from civil damage liability as long as their actions "could reasonably have been thought consistent with the rights they are alleged to have violated." Anderson v. Creighton, 483 U.S. 635, 638 (1987) (citations omitted).

An appeal from Judge Strance's ruling could well affect what conduct remains actionable.  As discussed above, an appellate court decision may narrow the scope of the issues before this court by concluding that some or all of the actions taken by the Commissioners comported with applicable law.  In that event, immunity, judicial or qualified, with respect to claims based on actions that a state appellate court defines as legal may become irrelevant.  If the claims are unsustainable on their merits, this court would never reach the defenses.

Alternatively, if a matter were deemed consistent with applicable law, that could affect this court's analysis of whether Bridge's allegations state a violation of federal law, the first prong of a qualified immunity analysis.  Saucier v. Katz, 533 U.S. 194, 201 (2001), overruled in part on other grounds by Pearson v. Callahan, 555 U.S. 223 (2009) (noting that, on the first prong, the court must consider whether "the facts

alleged show the officer's conduct violated a constitutional

right"). Even if the court looked only at the second qualified

immunity prong (i.e., at whether the law was clearly established

at the time Defendants acted, see id. at 201), a ruling made now

by this court on that issue could be rendered unnecessary by a

future state appellate ruling. The second Pullman requirement,

which involves the potential narrowing of federal constitutional

issues, is clearly satisfied here, even if the court focuses on

whether defenses, rather than Bridge's claims, are narrowed.

As the Ninth Circuit noted in Sinclair Oil, 96 F.3d at

409, a state court ruling need not be "absolutely certain to

obviate the need for considering federal constitutional issues."

It is enough for purposes of satisfying the second Pullman

abstention requirement if "state law issues might 'narrow' the

federal constitutional questions." Id. The second Pullman

abstention requirement is met here.

### 3. Resolution of the State Law Issues is Uncertain.

The third Pullman factor goes to the uncertainty of

state law issues. "Relying on the local nature of land use

claims, and the fact that they involve interpretation of various

state and local land use laws, the Ninth Circuit has required

only a minimal showing of uncertainty to satisfy the third

Pullman factor in land use cases." VH Prop., 622 F. Supp. 2d. at

964 (discussing Sinclair Oil). In determining whether

14

determinative state law issues are uncertain, the Ninth Circuit says that "a local government's enactment of land use regulations 'is by nature a question turning on the peculiar facts of each case in light of the many [applicable] local and state-wide land use laws. . . .'" Sinclair Oil, 96 F.3d at 410 (quoting Santa Fe Land Improvement Co. v. City of Chula Vista, 596 F.2d 838, 841 (9th Cir. 1979)).

In Sinclair Oil, the Ninth Circuit, addressing whether abstention was appropriate in a case asserting takings claims under the United States and California constitutions, found the third requirement satisfied even though the state law takings claim was not "particularly extraordinary or unique." 96 F.3d at 410 (citing Kollsman v. City of Los Angeles, 737 F.2d 830, 826 n.18 ("[A]bstention often will be appropriate when state land use regulations are challenged on state and federal grounds.")).

In San Remo Hotel, the Ninth Circuit similarly found the third requirement met, noting that the plaintiff's claim could be rendered moot by a state law issue that was being addressed in a pending state court action. 145 F.3d at 1105. That case involved an ordinance that imposed conditions on converting a hotel from one that housed permanent residents to one that served transient tourists. The owners of the San Remo Hotel were required by the ordinance to obtain a permit to convert hotel units to nonresidential, or tourist, use. Id. at

15

1099.  In addition, local zoning laws required conditional use authorization to establish a tourist hotel.  Id.  Because the San Remo Hotel had been zoned for solely residential use before the zoning law was enacted (even though it had actually been used as both a residential and tourist hotel), the City Planning Commission, affirmed by the Board of Permit Appeals, rejected the plaintiffs' argument that operating as a tourist hotel would be a "prior non-conforming use" and required the plaintiffs to obtain a conditional use permit to convert the hotel rooms to "tourist use."  Id. at 1099-1100.  The plaintiffs ultimately obtained the required permit, but it was subject to three conditions.  Id. at 1100.

The plaintiffs then filed two actions, seeking, ultimately, to unconditionally convert the rooms to tourist use. The first action sought an administrative mandamus in state court challenging the Board of Permit Appeals' determination that the hotel was properly zoned for only residential use.  Id.  The second action, filed in federal court, asserted, among other claims, that the ordinance constituted a facial taking without just compensation under the United States Constitution.  Id.

The Ninth Circuit remanded the case and instructed the district court to abstain with respect to the takings challenge. Characterizing the plaintiffs' case as a challenge to "the applicability of the [ordinance] and the need to obtain a

16

conditional use permit," the Ninth Circuit noted that the case hinged on the designation of the San Remo Hotel as "residential," the precise subject of the pending state mandamus action.  Id. at 1106.  The third Pullman abstention requirement was met because the state mandamus action required the state court to interpret its own ordinance and municipal zoning laws, as well as to determine what effect to give particular facts.  Id.  The Ninth Circuit concluded that those were "uncertain issues of state law."  Id.

In the present case, Defendants' appeal will similarly turn, at least in part, on how the state court interprets its own laws and determines what effect to give to the actions taken by the Commissioners.  For example, Judge Strance concluded that the Commission had exceeded its authority under chapter 205 of the Hawaii Revised Statutes by, among other things, enforcing the affordable housing condition "without considering the factors required for land use boundary changes pursuant to HRS §§ 205-16 and -17."  Administrative Appeal ¶ 15, at 20.  Whether the Commission complied with Hawaii law presents uncertain issues of state law.  Defendants themselves appear to agree that this case presents uncertain issues of state law, as they originally asserted that Pullman abstention applied in their motion to dismiss, and they intend to appeal the order reversing the Commission's decision.

As this court finds all three requirements met, <u>Pullman</u> abstention is appropriate with respect to Bridge's federal claims.

B.    <u>Remand is Not Appropriate.</u>

Bridge argues that invoking <u>Pullman</u> abstention leaves the court with only two options: to remand the whole case to state court, or to remand the state law claims and stay the federal law claims pending the resolution of the state law claims.  This court instead stays all claims, state and federal, pending resolution of the anticipated appeal of Judge Strance's ruling.

This case presents three circumstances: (1) Bridge asserts both state and federal claims, (2) Defendants removed this case from state court, and (3) there is a pending state court action that may significantly alter both the state law claims and the federal constitutional claims before this court. This court has not found a decision issued in another case sharing that combination of circumstances.  This court therefore stitches together procedures suggested by other courts.

As recognized in <u>VH Property</u>, 622 F. Supp. 2d at 967, "<u>Pullman</u> abstention is typically raised by a defendant when [the] plaintiff has filed in federal court."  In such a situation, the federal court typically stays the federal claims and dismisses the state claims.  <u>See</u> <u>Cedar Shake and Shingle Bureau v. City of</u>

18

Los Angeles, 997 F.2d 620, 622 (9th Cir. 1993) (addressing a case brought in federal court asserting state law and federal constitutional claims and stating, "A district court abstaining under Pullman must dismiss the state law claim and stay its proceedings on the constitutional question until a state court has resolved the state issue."). However, when a case has been removed to federal court, remand of only the state law claims and a stay of the federal claims may be warranted. See VH Property, 622 F. Supp. 2d at 970 (remanding state law claims and retaining jurisdiction over the federal claims). Indeed, Bridge relies on VH Property in support of its position that this court may split the present case and remand only the state claims.

The present case differs in a significant manner from VH Property. VH Property viewed a remand as necessary to put the state claims before a state court for its decision. By contrast, in the present case, the heart of the state claims is already before a state court in Bridge's administrative appeal. The administrative appeal is likely to be highly relevant to, and possibly determinative of, many of the state claims in the present case. Thus, the rationale in VH Property for remanding state claims pursuant to Pullman does not have the same force in this case.

In San Remo Hotel, 145 F.3d at 1105, the Ninth Circuit invoked Pullman abstention given the pending state court appeal

19

of an administrative decision.  While that case did not involve all of the circumstances present here, the Ninth Circuit did stay the federal claim pending resolution of the state court action. Id.  This court sees no reason that it cannot also stay the state claims, over which it has supplemental jurisdiction under 28 U.S.C. § 1367.

Indeed, a stay of the state claims might be warranted under Younger v. Harris, 401 U.S. 37 (1971).  Younger abstention "forbids federal courts from unduly interfering with pending state court proceedings that implicate important state interests." Potrero Hills Landfill, 657 F.3d at 881 (quoting Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982) (quotation marks omitted)).  A court is to abstain under Younger in a civil proceeding when there is a state proceeding that is (1) ongoing; (2) implicates important state interests; and (3) provides an adequate opportunity to raise federal questions.  Id. (citing Middlesex, 457 U.S. at 432).  For Younger abstention, the Ninth Circuit also requires that "the federal court action would 'enjoin the proceeding, or have the practical effect of doing so.'"  Id. (quoting AmerisourceBergen Corp. v. Roden, 495 F.3d 1143, 1148-49 (9th Cir. 2007) (quoting Gilbertson v. Albright, 381 F.3d 965, 976-78 (9th Cir. 2004) (en banc))).  "[C]omity is the main reason for federal court restraint in the face of ongoing state judicial proceedings, and

20

another is to avoid unwarranted determinations of federal constitutional law." Gilbertson 381 F.3d at 975.

The first two Younger requirements are clearly met, as the administrative appeal is an ongoing state proceeding, and Hawaii has a strong interest in land use planning. See Sinclair Oil, F.3d at 409. Whether the third and fourth requirements are met is disputed by Bridge.

As to the third requirement, Bridge points out that the state appeal will not determine the takings claim (as that is not before the state court). With respect to the fourth requirement, Bridge points to AmerisourceBergen. That case rejected the argument that "the requisite 'interference with ongoing state proceedings' occurs whenever the relief sought in federal court would, if entertained, likely result in a judgment whose preclusive effect would prevent the state court from independently adjudicating the issues before it." 495 F.3d at 1151. See also Montclair Parkowners Ass'n v. City of Montclair, 264 F.3d 829, 831 (9th Cir. 2001). Cf. Gilbertson, 381 F.3d at 965, 977-78 (noting that a case need not "directly" interfere with a state court proceeding to warrant Younger abstention).

This court need not determine whether the Younger requirements are strictly met here. Even if Younger does not apply, this court has the discretion to manage this case in an orderly and efficient manner. Bridge's suggestion that the court

remand the state claims and stay the federal claims would lead to
needless inefficiency.  Splitting this case into two would force
the parties to litigate overlapping issues in two forums,
increasing the costs and burdens on them.  Moreover, the state
court that received any remanded claims might well itself stay
those state claims pending resolution of any appeal of Judge
Strance's ruling.  That was simply not a concern in VH Property.

   In short, besides staying Bridge's federal claims
pursuant to Pullman, this court also stays Bridge's state claims
in the interest of sensible management of this case.  Appropriate
abstention, unlike dismissal or remand, "does not constitute
abnegation of judicial duty."  Louisiana Power & Light Co. v.
City of Thibodaux, 360 U.S. 25, 29 (1959).  When warranted,
abstention may be a productive "postponement of decision for its
best fruition."  Id.  The court declines Bridge's request to
remand any claims.

IV.      CONCLUSION.

   The court stays the present case pending the appeal of
Judge Strance's order reversing and vacating the Commission's
decision to reclassify the property in issue from urban use to
agricultural use.  The court administratively closes this case
and terminates all pending motions.  The case will be reopened
upon the parties' submission of written statements either
attaching the final appellate decision, or explaining a change in

22

circumstances that warrants the reopening of this case.  Upon the reopening of this case, the motions addressed by this order may, upon written request by a party, be reset for such supplemental briefing and/or hearing as may be appropriate, without the need to refile papers already in the case file.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 30, 2012.



 /s/ Susan Oki Mollway 
Susan Oki Mollway
Chief United States District Judge

Bridge Aina Le'a, LLC, v. State of Hawaii Land Use Commission; Civil No. 11-00414
SOM/BMK; ORDER STAYING CASE PENDING RESOLUTION OF THE STATE CASE.