IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BRIDGE AINA LE'A, LLC, | ) | CIVIL NO. 11-00414 SOM/BMK |
| | ) | |
| Plaintiff, | ) | ORDER GRANTING REVISED MOTION |
| | ) | TO DISMISS |
| vs. | ) | |
| | ) | |
| STATE OF HAWAII LAND USE | ) | |
| COMMISSION; VLADIMIR P. | ) | |
| DEVENS; KYLE CHOCK; THOMAS | ) | |
| CONTRADES; LISA M. JUDGE; | ) | |
| NORMAND R. LEZY; NICHOLAS W. | ) | |
| TEVES; RONALD I. HELLER; | ) | |
| EDMUND ACZON, in his official | ) | |
| capacity; CHAD MCDONALD, in | ) | |
| his official capacity; | ) | |
| JONATHAN SCHEUER, in his | ) | |
| official capacity; KENT | ) | |
| HIRANAGA, in his official | ) | |
| capacity; BRANDON AHAKUELO, | ) | |
| in his official capacity; | ) | |
| NEIL CLENDENINN, in his | ) | |
| official capacity; AARON | ) | |
| MAHI, in his official | ) | |
| capacity; SANDRA SONG, in her | ) | |
| official capacity; ARNOLD | ) | |
| WONG, in his official | ) | |
| capacity; JOHN DOES 1-10; | ) | |
| JANE DOES 1-10; DOE | ) | |
| PARTNERSHIPS 1-10; DOE | ) | |
| CORPORATIONS 1-10; DOE | ) | |
| ENTITIES 2-10 and DOE, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING REVISED MOTION TO DISMISS**

## I.        INTRODUCTION.

This case arises out of a decision by Defendant State of Hawaii Land Use Commission (the "Commission") to reclassify a parcel of land from urban use to agricultural use.  Plaintiff Bridge Aina Le'a, LLC ("Bridge"), the owner of the parcel, claims

that, in reclassifying the land, the Commission and certain commissioners violated Bridge's rights under the United States Constitution, the Hawaii constitution, and various Hawaii laws. The Hawaii Supreme Court has upheld the state trial court's invalidation of the Commission's reclassification ruling.

Defendants Vladimir P. Devens, Kyle Chock, Thomas Contrades, Lisa M. Judge, Normand R. Lezy, Nicholas W. Teves, and Ronald I. Heller (collectively, "Individual Capacity Commissioners"), sued in their individual capacities, were commissioners at the time of the events underlying Bridge's suit. The former commissioners have been removed from this case as Official Capacity Commissioners, and the current commissioners-- Edmund Aczon, Chad McDonald, Jonathan Scheuer, Kent Hiranaga, Linda Estes, Aaron Mahi, Nancy Cabral, and Arnold Wong--have been substituted as Defendants in their official capacities pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.[1]

On March 30, 2012, this court stayed the entirety of the present action pending resolution of Bridge's administrative appeal of the Commission's decision in state court.  Defendants appealed the stay, and Bridge filed a cross-appeal challenging this court's denial of its motion seeking a remand of all or part

---

[1] Defendants noted this substitution in ECF No. 71, PageID # 675.  Since that filing, the Commission's website reflects other commissioners, and the names in the present order reflect what the court understands to be more recent appointments.

2

of this removed action to state court.   After the Hawaii Supreme Court affirmed the state trial court in the administrative appeal, the Ninth Circuit ruled, "While this case originally met _Pullman_'s requirements, abstention is no longer necessary."   ECF 64, PageID # 662.   The stay was dissolved, and the case is back on remand before this court, which now considers the merits of Defendants' motion to dismiss.   The motion is granted in all respects now being moved on by Defendants.

**II.       BACKGROUND.**

         **A.   Factual Background.**

         The subject parcel of land consists of 1,060 acres in South Kohala, on the island of Hawaii.   _See_ ECF No. 1-2, PageID # 15.   On November 25, 1987, Signal Puako Corporation, the then-owner of the parcel, petitioned for reclassification of the land from "agricultural use" to "urban use" to allow development of a large residential community.   _See_ _id._ On January 17, 1989, the Commission issued its Findings of Fact, Conclusions of Law, and Decision and Order approving the petition on condition that 60 percent of the units built be "affordable" units.   _See_ _id._ at PageID # 16.

         On May 4, 1990, Signal Puako Corporation transferred the property to Puako Hawaii Properties ("PHP").   _See_ _id._ at PageID # 16.

         On April 1, 1991, PHP filed a motion to amend the 1989

3

Decision and Order, seeking to decrease the total number of units
in the project.  See id. at PageID # 17.  On July 9, 1991, the
Commission issued its Amended Findings of Fact, Conclusions of
Law, and Decision and Order, which permitted a decrease in the
project's density.  See id.  The 1991 Decision and Order also
amended the affordable housing condition by requiring a minimum
of 1,000 affordable units, in addition to the earlier 60 percent
requirement.  See id.

By September 1, 2005, Bridge had become the owner of
the property.  On that date, Bridge filed a motion to amend
certain conditions imposed by the 1991 Decision and Order so that
the affordable housing conditions would be "consistent and
coincide with County of Hawaii affordable housing requirements."
See id at PageID # 20.

On November 25, 2005, the Commission entered its
Findings of Fact, Conclusions of Law, and Decision and Order
granting in part and denying in part Bridge's motion.  See id. at
PageID # 21.  The Commission stated:

> Petitioner shall provide housing
> opportunities for low, low-moderate, and
> moderate income residents of the State of
> Hawaii by offering at least twenty percent
> (20%) of the Project's residential units at
> prices determined to be affordable by the
> County of Hawaii Office of Housing and
> Community Development, provided, however, in
> no event shall the gross number of affordable
> housing units within the Petition Area be
> less than 385 units. The affordable housing
> units shall meet or exceed all applicable

4

> County of Hawaii affordable housing
> standards, and shall be completed in
> substantial compliance with the
> representations made to the Commission.

See id. at PageID #s 21-22.  The Commission also required Bridge

to "obtain, and provide copies to the Commission [of] the

certificates of occupancy for all of the Project's affordable

housing units within five (5) years of November 17, 2005."  Id.

at PageID # 22.

On December 9, 2008, the Commission issued an order to

show cause as to why the property should not revert to its former

agricultural classification given Bridge's alleged failure to

perform in accordance with the conditions imposed by the

Commission and the representations and commitments made to the

Commission.  See id. at PageID # 24.

On March 20, 2009, Bridge notified the Commission that

it intended to assign its interest in the project to DW Aina Le'a

Development, LLC ("DW").  See id. at PageID #s 26, 27.

At the end of a hearing on April 30, 2009, the

Commission voted unanimously to return the property to

agricultural use.  See id. at PageID # 27.

On August 19, 2009, Bridge moved for rescission of the

Commission's ruling returning the land to agricultural use.

Bridge argued that reversion of the land was improper because

Bridge had made "substantial commencement of the use of the land"

in accordance with section 205-4(g) of Hawaii Revised Statutes.

5

See _id._ at PageID # 28.  On September 28, 2009, the Commission rescinded its order to show cause but imposed a condition that sixteen affordable units be completed by March 31, 2010.  See _id._ at PageID # 29.  The Commission also permitted DW to be named as a co-petitioner with Bridge.  See _id._ at PageID # 30.

Bridge alleges that sixteen affordable units were completed by March 31, 2010, as the Commission required.  See _id._ at PageID # 30.  The Commission, however, determined by vote that Bridge and DW had not completed the sixteen units by March 31, 2010.  See _id._ at PageID # 33.  The Commission also voted to keep in place the earlier order to show cause, to have a further hearing on the matter, and to affirm that the date of November 17, 2010, was the deadline by which 385 affordable units had to be built, not just a goal.  See _id._  The Commission issued a written order to that effect on July 26, 2010.  See _id._ at PageID # 34.

On August 30, 2010, DW moved to amend certain conditions imposed by the Commission.  See _id._ at PageID # 35.  Bridge later filed a motion alleging violations of various statutes and administrative rules by the Commission, which Bridge contended rendered action by the Commission invalid.  See _id._

At a hearing on January 20, 2011, the Commission, by a 5-3 vote, decided to return the property to agricultural use.  See _id._ at 37.  The Commission also voted to deny as moot

Bridge's motion seeking invalidation of earlier action by the Committee.  See id. at 38.  The Commission did not at that time rule on DW's motion to amend.

On April 25, 2011, the Commission entered a written order returning the property to agricultural use.  See id. at PageID # 44.

On May 13, 2011, the Commission denied DW's motion to amend.  See id. at PageID # 45.

**B.    Procedural Background.**

Bridge filed two actions challenging the Commission's decision to reclassify the land to agricultural use.  Bridge not only sought judicial review of the Commission's decision through an administrative appeal, Bridge also filed a separate action in state court.  See ECF No. 1-2.  It is that separate action that was removed to this court on June 27, 2011.  See ECF No. 1.

Bridge's Complaint in this action asserts the following claims: (1) denial of due process of law in violation of the federal and state constitutions (Count I); (2) inverse condemnation in violation of the federal and state constitutions (Count II); (3) denial of equal protection of the law under the federal and state constitutions (Count III); (4) deprivation of common law vested rights (Count IV); (5) equitable estoppel (Count V); (6) deprivation of constitutional rights under 42 U.S.C. § 1983 (Count VI); (7) violation of chapters 91, 92, and

7

205 of Hawaii Revised Statutes and chapter 15-15 of Hawaii
Administrative Rules (Count VII); (8) unconstitutional land
development conditions in violation of the federal and state
constitutions (Count VIII); (9) injunctive and declaratory relief
(Count IX); (10) declaratory relief pursuant to section 632-1 of
Hawaii Revised Statutes and Rule 57 of the Hawaii Rules of Civil
Procedure (Count X); and (11) attorneys' fees and costs pursuant
to 42 U.S.C. § 1988 (Count XI).  See id.

On July 27, 2011, Defendants filed a motion to dismiss
all claims in this action.  See ECF No. 14.

On March 6, 2012, the circuit court in the
administrative appeal entered its Findings of Fact and
Conclusions of Law, and Order Reversing and Vacating the State of
Hawaii Land Use Commission's Final Order.  See ECF No. 41-3.

On March 30, 2012, this court stayed the present action
pending final resolution of the administrative appeal of the
Commission's decision in state court.  See ECF No. 48.  This
court declined Bridge's remand request.  Both sides appealed to
the Ninth Circuit.  See ECF Nos. 49, 56.

On June 15, 2012, the state circuit court entered its
Amended Findings of Fact and Conclusions of Law, and Order
Reversing and Vacating the State of Hawaii Land Use Commission's
Final Order.  See ECF No. 71-2, PageID # 716.  The circuit court
concluded that the Commission: (1) exceeded its statutory

8

authority and violated chapter 205 of Hawaii Revised Statutes; (2) violated section 205-4(h) of Hawaii Revised Statutes; (3) violated section 205-16 of Hawaii Revised Statutes; (4) violated section 205-17 of Hawaii Revised Statutes; (5) violated section 205-4(g) of Hawaii Revised Statutes; (6) violated chapters 91 and 205 of Hawaii Revised Statutes and chapter 15 of Hawaii Administrative Rules; and (7) violated Bridge's and DW's federal and state due process and equal protection rights.  See ECF No. 71-2, PageID #s 716-20.

The Commission filed a notice of appeal and an application to transfer the appeal from the Intermediate Court of Appeals to the Hawaii Supreme Court.  See id. at PageID # 721. The transfer application was granted.  See id.

On November 25, 2014, the Hawaii Supreme Court affirmed in part and vacated in part the state circuit court's second amended final judgment.  See DW Aina Lea Dev., LLC v. Bridge Aina Lea, LLC., 134 Haw. 187, 339 P.3d 685 (2014).  The Hawaii Supreme Court affirmed the state circuit court's determination that the Commission had erred in returning the property to agricultural use without complying with section 205-4 of Hawaii Revised Statutes, but reversed the state circuit court's determination that Bridge and DW had had their procedural due process, substantive due process, and equal protection rights violated. See id. at 191, 339 P.3d at 689.

9

On January 23, 2015, the Ninth Circuit remanded this case to this court for appropriate action in light of the Hawaii Supreme Court's decision.  See ECF 64, PageID # 663.  The Ninth Circuit concluded that, while this case originally met the requirements for Pullman abstention, abstention was no longer necessary.  See id. at PageID # 662.

On April 2, 2015, Defendants filed a request to reopen this case in light of the Ninth Circuit's remand ruling and the Hawaii Supreme Court's decision in the administrative appeal. See ECF No. 71.  Defendants also asked this court to resolve their earlier motion to dismiss, which had been subject to this court's stay.  See id.

The court reopened the present action and instructed the parties to submit supplemental briefing discussing what issues remained in dispute in this case following the Hawaii Supreme Court's decision in the administrative appeal.  See ECF No. 75.

The parties dispute the effect of the Hawaii Supreme Court's ruling on this case.  See ECF Nos. 76, 77.  Bridge contends that the only claims rendered moot by the Hawaii Supreme Court's decision in the administrative appeal are its claims for declaratory relief.  See ECF No. 76, PageID # 775; ECF No. 86, PageID # 1121.  Defendants, on the other hand, have taken the position in supplemental briefs, as amended by statements at the

10

hearing on June 29, 2015, that all of Bridge's claims except the monetary relief portions of the claims based on alleged takings, imposition of unconstitutional land development conditions, and deprivation of common law vested rights were resolved by the Hawaii Supreme Court.  See ECF No. 77, PageID #s 786-89; ECF No. 83, PageID #s 1114-15.

The court first addresses the viability of Bridge's claims for declaratory and injunctive relief, and turns thereafter to the claims for monetary forms of relief.

III.     **LEGAL STANDARDS.**

The motion to dismiss relies on both jurisdictional and failure-to-state-a-claim grounds.

A.     **Rule 12(b)(1).**

Under Rule 12(b)(1) of the Federal Rules of Civil Procedure, a complaint may be dismissed for lack of subject matter jurisdiction.

This court's subject matter jurisdiction is limited to "cases" or "controversies."  Temple v. Abercrombie, 903 F. Supp. 2d 1024, 1030 (D. Haw. 2012).  This requires a federal court to determine whether a plaintiff's challenge is justiciable, a task accomplished through consideration of the doctrines of standing, mootness, and ripeness.  See Culinary Workers Union, Local 226 v. Del Papa, 200 F.3d 614, 617 (9th Cir. 1999).  These doctrines reflect that the court's role "is neither to issue advisory

11

opinions nor to declare rights in hypothetical cases, but to adjudicate live cases or controversies consistent with the powers granted the judiciary in Article III of the Constitution." Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1138 (9th Cir. 2000).

Federal courts may raise a jurisdictional issue sua sponte if not raised by the parties.  See Bernhardt v. Cnty. of Los Angeles, 279 F.3d 862, 868 (9th Cir. 2002); S. Pac. Transp. Co. v. City of Los Angeles, 922 F.2d 498, 502 (9th Cir. 1990).

**B.    Rule 12(b)(6).**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court's review is generally limited to the contents of the complaint.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001); Campanelli v. Bockrath, 100 F.3d 1476, 1479 (9th Cir. 1996).  If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment.  See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996).

On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party.  Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996).  However, conclusory allegations of law, unwarranted

12

deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  Sprewell, 266 F.3d at 988; In re Syntex Corp. Sec. Litig., 95 F.3d 922, 926 (9th Cir. 1996).

Dismissal under Rule 12(b)(6) may be based on either: (1) lack of a cognizable legal theory, or (2) insufficient facts under a cognizable legal theory.  Balistreri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988) (citing Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 533-34 (9th Cir. 1984)).

"[T]o survive a Rule 12(b)(6) motion to dismiss, factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true even if doubtful in fact."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted); accord Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation.").  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 555.  The complaint must "state a

claim to relief that is plausible on its face." Id. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

IV.        **BRIDGE'S PROCEDURAL COMPLAINTS ARE WITHOUT MERIT.**

Bridge raises various "procedural concerns," contending that it has been prejudiced by Defendants' failure to file a new motion to dismiss after the conclusion of the state administrative appeal and the reopening of this case, and by this court's permitting of supplemental briefing regarding the effect of the Hawaii Supreme Court's decision and the viability of certain of Bridge's claims.  See ECF No. 86, PageID #s 1123, 1130.  This court is unpersuaded by Bridge's complaints about the procedure used in addressing Defendants' motion to dismiss.

Defendants were under no obligation to file a new motion to dismiss after this case was reopened.  Bridge points to no such requirement and fails to explain, nearly four months after this case was reopened, why imposition of such a requirement would have been necessary.  Had this court required Defendants to file a new motion, it is the issues raised through supplemental briefing that would likely have been briefed. Bridge identifies no specific matter that has prejudiced it or that it has been denied an opportunity to address.

At most, Bridge says that Defendants have been permitted to "backfill" their motion to dismiss through supplemental briefing.  <u>See</u> ECF No. 86, PageID # 1123.  This argument is plainly without merit.  First, a new motion could have done the same, or greater, "backfilling."  Second, the supplemental briefing, which addressed the effect of the Hawaii Supreme Court's ruling on this action, gave Bridge the same opportunity it gave Defendants to respond to the court's inquiries.  It is difficult to envision how Bridge could possibly have been prejudiced by a supplemental briefing process in which it had equal opportunity to respond to the court's inquiries.  <u>See</u> ECF No. 75; ECF No. 82; ECF No. 84.  In fact, the supplemental briefs and the hearing held on June 29, 2015, have led to a reduction in the scope of Defendants' motion to dismiss.  The original motion to dismiss sought dismissal of all claims against all Defendants.  <u>See</u> ECF No. 14.  However, the original motion to dismiss has been reduced in scope, so that the revised motion to dismiss no longer covers all claims.

In a supplemental memorandum filed on June 15, 2015, Defendants concede that, to the extent asserted against the Commission and Official Capacity Defendants, the monetary relief portions of certain claims are not rendered moot or otherwise precluded by the Hawaii Supreme Court ruling.  Specifically, Defendants agree that the monetary relief portions of Bridge's

takings claims may proceed.  Count I alleges a regulatory taking, and Count II alleges a taking by inverse condemnation.[2] Defendants also concede that the monetary relief portions of the vested rights claim in Count IV and the unconstitutional conditions claim in Count VIII are not resolved by the Hawaii Supreme Court's ruling.  See ECF No. 77.

At the hearing held on June 29, 2015, the parties therefore agreed that, as against the Commission and Official Capacity Defendants, certain matters would be deleted from the motion.  The court's minutes reflect that the motion no longer seeks dismissal of the monetary relief portions of the takings claims, the vested rights claim, and the unconstitutional conditions claim.  See ECF No. 82 (minutes of hearing).  This means that this court does not presently have before it the question of whether those claims for monetary relief are barred by Williamson County Regional Planning Commission v. Hamilton

---

[2] The regulatory taking allegations in Count I appear to be intended by Bridge to be read as distinct from other due process allegations in Count I.  Thus, while the prohibition of a taking without just compensation falls under the same federal and state constitutional provisions that govern other due process violations, and while the Hawaii Supreme Court held that there was no due process violation, Bridge has taken the position that the regulatory taking allegations in Count I, which includes broad due process violation allegations, remain viable.  See ECF No. 76, Page ID # 770.  Defendants parse Count I in the same way, stating that the regulatory taking portion of Count I is not barred by the Hawaii Supreme Court's ruling that there was no due process violation by the Commission.  See ECF No. 77, PageID # 786.

Bank of Johnson City, 473 U.S. 172, 194-95 (1985) (holding that federal takings claim is not reviewable in federal court until plaintiff has sought compensation from state and been denied).[3]

Bridge's complaints about this court's requests for

---

[3] To the extent any Defendant is found liable to Bridge for a taking, no determination of just compensation has yet occurred such that Bridge could claim that any compensation is inadequate. The absence of such a determination does not necessarily mean that this court is barred from considering Bridge's takings claims. The Supreme Court has referred to the Williamson County state exhaustion requirement as prudential rather than jurisdictional. See Suitum v. Tahoe Reg'l Planning Agency, 520 U.S. 725, 733 (1997); see also Guggenheim v. City of Goleta, 638 F.3d 1111, 1117-18 (9th Cir. 2010). Although the Ninth Circuit treats ripeness as implicating both Article III and prudential considerations, see Guatay Christian Fellowship v. Cnty. of San Diego, 670 F.3d 957, 980 (9th Cir. 2011), it has recognized that the Williamson County ripeness requirements are discretionary when the case "raises only prudential concerns," as is the case here. Adam Bros. Farming v. Cnty. of Santa Barbara, 604 F.3d 1142, 1148 (9th Cir. 2010). This court has the discretion to consider Bridge's takings claim if warranted by "the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." Thomas v. Anchorage Equal Rights Comm'n, 220 F.3d 1134, 1141-42 (9th Cir. 2000).

This court notes that Bridge's takings claims have been pending in this court for years. See Yamagiwa v. City of Half Moon Bay, 523 F. Supp. 2d 1036, 1109 (N.D. Cal. 2007) (finding hardship when parties had litigated case for two years and decision would soon issue). Both parties point to Defendants' removal of this case in addressing Bridge's federal takings claims. See ECF No. 88, PageID #s 1172-73; ECF No. 89, PageID # 1182. Although other circuits have determined that the Williamson County state exhaustion requirement does not apply to cases that have been removed to federal court, see Sherman v. Town of Chester, 752 F.3d 554, 564 (2d Cir. 2014); Sansotta v. Town of Nags Head, 724 F.3d 533, 545-47 (4th Cir. 2013), it does not appear that the Ninth Circuit has opined on the matter. Cf. Alpine Vill. Co. v. City of McCall, No. 1:11-CV-00287-BLW, 2011 WL 3758118, at *2-3 (D. Idaho Aug. 25, 2011) (applying state exhaustion requirement in removed case). This court does not decide this issue here.

supplemental briefing on issues of mootness and ripeness are particularly weak.  Both issues being jurisdictional, they may be raised by this court even if the parties fail to raise them.  See, e.g., Wilson v. Fisch, Civ. No. 08-00347 JMS/KSC, 2009 WL 464334, at *3 (D. Haw. Feb. 24, 2009) ("[T]he court has an obligation to ensure that it has jurisdiction over the claims raised by the parties, and may raise this issue sua sponte.").

## V.        CLAIMS FOR DECLARATORY AND INJUNCTIVE RELIEF.

This court begins its discussion of Bridge's claims with an examination of the claims for declaratory and injunctive relief.

### A.   Bridge's Claims Seeking Declaratory Relief Are Moot.

Bridge concedes that the Hawaii Supreme Court decision renders moot its claims for declaratory relief.  See ECF No. 86, PageID # 1121.  Part of Count VII (state statutory and regulatory violations), part of Count IX (seeking injunctive and declaratory relief), and all of Count X (seeking declaratory relief) are therefore dismissed.  See Rosemere Neighborhood Ass'n v. U.S. Envtl. Prot. Agency, 581 F.3d 1169, 1172-73 (9th Cir. 2009) ("A claim is moot if it has lost its character as a present, live controversy."); Foster v. Carson, 347 F.3d 742, 745 (9th Cir. 2003) ("Mootness is a jurisdictional issue, and federal courts have no jurisdiction to hear a case that is moot, that is, where no actual or live controversy exists." (internal quotation marks

18

omitted)).

      **B.**   **Bridge's Claims for Injunctive Relief Are Barred.**

         **1.**   **All Injunctive Relief Claims Seeking to Stop the Reclassification of Bridge's Property as Agricultural Are Moot.**

The Hawaii Supreme Court's ruling has the effect of rendering moot all of Bridge's requests for an injunction barring the reclassification of its land as agricultural.  No further relief in the form of an injunction is in issue given the Hawaii Supreme Court's ruling that the Commission acted improperly in reclassifying the land as agricultural.  The reclassification has been invalidated.  This mootness bar does not prejudice Bridge in any way.  Instead, it operates to avoid the need for a second ruling barring the reclassification that has already been invalidated.

As this court has already noted with respect to the declaratory relief claims, a claim is moot "if it has lost its character as a present, live controversy." Rosemere, 581 F.3d at 1172-73.  If a plaintiff has already obtained the relief requested for a certain claim, that claim is moot.  See Foster, 347 F.3d at 745 ("If there is no longer a possibility that an appellant can obtain relief for his claim, that claim is moot and must be dismissed for lack of jurisdiction." (internal quotation marks omitted)); Weinberg v. Whatcom Cnty., 241 F.3d 746, 755 (9th Cir. 2001) ("[R]emand for trial on the other bases

19

underlying [plaintiff's] procedural due process claim would be
moot, given that [plaintiff] could not, in any event, receive
more than the nominal damages which we have already awarded him
here."); Am. Rivers v. Nat'l Marine Fisheries Serv., 126 F.3d
1118, 1123 (9th Cir. 1997) ("A federal court does not have
jurisdiction 'to give opinions upon moot questions or abstract
propositions, or to declare principles or rules of law which
cannot affect the matter in issue in the case before it.' . . . .
If an event occurs that prevents the court from granting
effective relief, the claim is moot and must be dismissed.");
Ortega v. Sherman, No. CV 14-6544 JLS FFM, 2015 WL 3901649, at *3
(C.D. Cal. June 23, 2015) ("Claims Four and Five are subject to
dismissal because Petitioner has already obtained the relief that
he seeks in these claims. . . .  Consequently, this Court can
provide no further relief in regards to either of these claims.
As such, the claims are moot."); Reyes v. Graber, No.
CV-14-01866-PHX-DJH, 2015 WL 727931, at *3 (D. Ariz. Feb. 19,
2015) ("[W]here a complainant has already obtained the relief he
sought, the claim is moot.").

       The Hawaii Supreme Court has issued a final judgment on
the merits of the state administrative appeal.  While the Hawaii
Supreme Court remanded the case to the state circuit court for
further proceedings consistent with its opinion, that does not
require the state circuit court to make further substantive

decisions regarding the validity of the reclassification.  The state circuit court will presumably refer the matter back to the Commission, but that will be a largely ministerial act.  There is no indication that the Hawaii Supreme Court intended to permit further judicial consideration of the reclassification issue, and there is no longer a live controversy as to whether the Commission may implement its earlier reclassification ruling.

The injunctive relief requests against Individual Capacity Commissioners and Official Capacity Commissioners are no less moot than the injunctive relief requests directed at the Commission, even though the Commission was the only Defendant in this case that was a party in the state administrative appeal.  A claim against a state official in that person's official capacity is essentially a suit against the state.  See Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989).

As for Individual Capacity Commissioners, prospective relief as against them is unavailable not only because of the Hawaii Supreme Court's decision, but also because their terms on the Commission have ended and they now lack the authority to take any action regarding the classification of Bridge's property.

Although relief under the heading of "injunctive relief" was likely unavailable to Bridge in the state administrative appeal, the relief available in that proceeding was essentially equivalent.  The state courts, in reviewing an

administrative decision, have the ability to "affirm the decision of the agency or remand the case with instructions for further proceedings; or . . . reverse or modify the decision and order if the substantial rights of the petitioners may have been prejudiced." Haw. Rev. Stat. § 91-14. Given that authority, the state administrative appeal made available relief that would lead Bridge to essentially the same result sought by its requests for injunctive relief in this action. For example, if this court granted Bridge's request to enjoin Defendants from enforcing the order reclassifying Bridge's property, see ECF No. 1-2, PageID # 64, this court's ruling would lead to the same result as the state court's reversal of the reclassification order.

Bridge has not demonstrated that there is any relief available in this court under the heading of injunctive relief that has not already been obtained in the state administrative appeal. At most, Bridge may be arguing that the state administrative appeal did not make available relief equivalent to its request that this court enjoin future action unrelated to the precise reclassification at issue. That form of injunctive relief, while not moot, is unavailable to Bridge for other reasons, as discussed later in this order.[4]

---

[4] Because such claims are not moot, this court has no reason to consider any exception to mootness such as the exception for ongoing governmental action capable of repetition but evading review. See Gerstein v. Pugh, 420 U.S. 103, 110 n.11 (1975); Or. Advocacy Ctr. v. Mink, 322 F.3d 1101, 1118 (9th Cir. 2003).

22

Admittedly, it may be easier to discern the mootness of some injunctive relief claims than others.  Count I (due process violations), Count III (equal protection violations), Count VII (violations of chapters 91, 92, and 205 of Hawaii Revised Statutes and chapter 15-15 of Hawaii Administrative Rules),[5] and Count VIII (imposition of unconstitutional land development conditions) seek injunctive relief based on allegations expressly addressed by the Hawaii Supreme Court.  See Bridge Aina Lea, 134 Haw. at 218-19, 339 P.3d at 716-17 (addressing due process rights); id. at 219-20, 339 P.3d at 717-18 (addressing equal protection rights under federal and state constitutions); id. at 209-16, 339 P.3d at 707-14 (concluding that reversion of property to agricultural use violated section 205-4 of Hawaii Revised Statutes); id. at 215, 339 P.3d at 713 (addressing unconstitutional land development condition claim).

However, even with respect to subjects the Hawaii Supreme Court does not appear to have addressed, the injunctive relief requests are moot.  The regulatory taking portion of Count I is not expressly addressed by the Hawaii Supreme Court, but the injunctive relief prayed for in Count I is the cessation of Defendants' allegedly illegal actions that "have divested the

---

[5] Count VII seeks only declaratory and injunctive relief, so Count VII, given Bridge's concession that its declaratory relief claims are foreclosed, is entirely disposed of by the Hawaii Supreme Court's ruling.

Property of substantially all of its economic use, rendering it unmarketable, and forbidden substantially all practical, beneficial or economic use of the Property." ECF No. 1-2, Page ID # 48. This is essentially a prayer to end the implementation of the Commission's reclassification decision. The invalidation of that decision is the very heart of the Hawaii Supreme Court's ruling.

Similarly, the injunctive relief prayed for in Count II (inverse condemnation), Count IV (vested rights claim) and Count V (equitable or zoning estoppel) is an order stopping the reclassification of the land to agricultural. Thus, those counts ask for prospective relief to end violations of law, all as detailed in Count IX (a general request for injunctive and declaratory relief) and X (declaratory relief request) of the Complaint. The portion of Count IX that seeks an end to continuing violations of law asks for an end to the land reclassification so that Bridge will be "entitled to continue to develop the Property as an urban parcel in accordance with the 1989 Decision and Order, as amended." Id. at Page ID # 65. While the Hawaii Supreme Court stated that it was not ruling on Bridge's zoning estoppel and vested rights claims, see Bridge Aina Lea, 134 Haw. at 207, 339 P.3d at 705, Bridge does not identify cognizable injunctive relief that it might obtain under counts not addressed by the Hawaii Supreme Court other than the

relief it has already obtained via the invalidation of the Commission's reclassification ruling.

At the hearing on this motion and in supplemental briefing, Bridge has relied on the "voluntary cessation" doctrine to support its claims for injunctive relief, arguing that those claims should not be dismissed because Defendants have failed to meet their burden of coming forward with evidence showing that it is absolutely clear that wrongful conduct will not recur.  See ECF No. 86, PageID #s 1124-27.

"Voluntary cessation" is an exception to mootness, under which "the mere cessation of illegal activity in response to pending litigation does not moot a case, unless the party alleging mootness can show that the 'allegedly wrongful behavior could not reasonably be expected to recur.'"  Rosemere, 581 F.3d at 1173.  Defendants do not appear to be arguing that their voluntary cessation of challenged conduct moots out Bridge's claims for injunctive relief.  Such an assertion is more typically made when there is ongoing conduct that has not in large part been addressed through related litigation.  See, e.g., Moeller v. Taco Bell Corp., 816 F. Supp. 2d 831, 860 (N.D. Cal. 2011) (addressing voluntary cessation doctrine when defendant argued that it had voluntarily ceased conduct that plaintiffs alleged inhibited access by removing and remediating all barriers in its restaurants and issuing new accessibility policies).

The cases Bridge relies on simply do not apply to the circumstances of this case, which involves past conduct that is the subject of state court rulings.  Those cases provide a poor source for imposing a burden on Defendants to produce evidence of future compliance.  Defendants are not voluntarily ceasing any activity.  They are under an order that concludes that they improperly reclassified Bridge's property.

> **2.   The Injunctive Relief Claims Relating to Conduct Other Than Invalidation of the Reclassification Ruling Are Dismissed as Overbroad or as Simply Seeking an Order Requiring Compliance with Law.**

To the extent Bridge also seeks injunctive relief relating to future action other than implementation of the reclassification ruling, those injunctive relief claims are dismissed as overbroad.

The court notes at the outset that Count IX is not really a separate claim alleging some cognizable wrongdoing distinct from what is alleged in other counts.  Instead, Count IX is a mere request for the remedies of injunctive and declaratory relief "[b]ased on Defendants' numerous violations of Federal and State law as set forth herein."  ECF No. 1-2, PageID # 64.  As a mere remedies request, Count IX is dismissed as not stating a claim.

Even if Count IX could proceed without stating an actual claim, it is subject to dismissal for reasons also

applicable to the requests in other counts for injunctive relief. Bridge seeks to enjoin Defendants from, *inter alia*, "taking any further action to reclassify the Property and amend the district boundaries from from urban to agricultural," "further interfering with or denying Bridge's rights to develop the Property in accordance with the 1989 Decision and Order, as amended," and "taking any further acts that will prevent, interfere, or hinder Bridge's rights to develop and use the Property, except only non-discricriminatory and non-dilatory enforcement of reasonable land use requirements legitimately necessary to ensure health and safety."  ECF No. 1-2, PageID #s 64-65.

To the extent those requests seek to enjoin something other than the implementation of the existing reclassification ruling, those requests in Count IX for injunctive relief are overbroad.  The injunctive relief requests in other counts are similarly vague and rely on the overbroad allegations in Count IX.

Thus, for example, Count II asserts, "Based on Defendants' gross violations of the Fifth and Fourteenth Amendments of the Constitution of the United States of America and Article I, Section 5 and 20 of the Hawaii Constitution, Bridge is entitled to prospective relief to end continuing violations of federal and state law as set forth in Counts IX and X of this Complaint."  ECF No. 1-2, PageID # 50.

27

Count IV similarly asserts, "Based on Defendants' deprivation of Bridge's vested rights, Bridge is entitled to prospective relief to end continuing violations of federal and state law as set forth in Counts IX and X of this Complaint." Id. at PageID # 55. Counts V and VI similarly seek injunctive relief as set forth in Counts IX and X.  See id. at PageID #s 56, 59.

Overbroad injunctive relief claims cannot proceed.  See Stormans, Inc. v. Selecky, 586 F.3d 1109, 1140 (9th Cir. 2009) (an injunction must be "tailored to remedy the specific harm alleged." (internal quotation marks omitted)); E. & J. Gallo Winery v. Gallo Cattle Co., 967 F.2d 1280, 1297 (9th Cir. 1992) ("An overbroad injunction is an abuse of discretion."). Any claim for injunctive relief going beyond invalidation of the existing reclassification ruling is not tailored to eliminate a specific harm involved in this case, but instead targets a broad range of future action, even if lawful.  Bridge would have this court prevent Defendants from "taking any further action to reclassify the Property" and from "further interfering with or denying Bridge's rights to develop the Property."  See ECF No. 1-2, PageID #s 64, 65.  This language fails to define the prohibited activity specifically enough to give notice to Defendants of what is enjoined.  Defendants would be left uncertain whether they could exercise even lawful authority to

28

reclassify property.  The Commission might want to reclassify Bridge's property in the future through a completely lawful process for completely lawful reasons, yet such a reclassification, under Bridge's requested injunctive relief, would be barred.  The Commission would end up being unable to impose any requirement at all on Bridge's development of its property.

Bridge offers no reason for this court to prevent Defendants from exercising their lawful authority.  See Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 518 F. Supp. 2d 1197, 1230 (C.D. Cal. 2007) ("The Court is guided generally by the principle that it should only restrain or prohibit actions that violate the law.").

Bridge does appear to be trying to address this overbreadth in at least one of its requests for injunctive relief.  That request asks that Defendants be enjoined from "taking any further acts that will prevent, interfere, or hinder Bridge's rights to develop and use the Property, *except only non-discriminatory and non-dilatory enforcement of reasonable land use requirements legitimately necessary to ensure health and safety.*"  ECF No. 1-2, PageID #s 64-65 (emphasis added).  Even with this qualification, however, the scope of the requested injunction is unclear.  Bridge essentially seeks a general "obey the law" injunction barring Defendants from taking any action

Bridge might view as violative of its rights.  Such an injunction
would be impermissibly vague and overbroad.  See Cuviello v. City
of Oakland, No. C-06-5517 MHP (EMC), 2009 WL 734676, at *3 (N.D.
Cal. Mar. 19, 2009) ("[B]oth provisions are 'obey the law'
injunctions and thus not enforceable."); United States v.
DeAngelo, No. SACV03-251GLT(MLGX), 2003 WL 23676571, at *2 (C.D.
Cal. June 26, 2003) ("Such an injunction does no more than
instruct Defendants to 'obey the law,' and is too broad and vague
for the Court to enforce."); see also S.C. Johnson & Son, Inc. v.
Clorox Co., 241 F.3d 232, 240 (2d Cir. 2001) ("Under Rule 65(d),
an injunction must be more specific than a simple command that
the defendant obey the law." (internal quotation marks and
brackets omitted)); Burton v. City of Belle Glade, 178 F.3d 1175,
1201 (11th Cir. 1999) (noting that courts are "incapable of
enforcing so broad and vague an injunction" as "obey the law").

> **3.    Injunctive Relief Claims with Respect to
> the Takings Claims Are Dismissed on the
> Ground that, Assuming a Taking has
> Occurred, an Injunction is Not a Proper
> Remedy for a Taking.**

There is an additional reason warranting dismissal of
the overbroad injunctive relief portions of Counts I, II, and
VIII.  All three of those counts include takings claims.  Count I
alleges a regulatory taking.  Count II alleges an inverse
condemnation.  Count VIII purports to be a claim relating to the
imposition of unconstitutional conditions, but any such claim is

a takings claim under a different name.  See Kamaole Pointe Dev.
LP v. Cnty. of Maui, 573 F. Supp. 2d 1354, 1366 (D. Haw. 2008)
("[I]t is clear that Plaintiffs' unconstitutional conditions
argument, relying as it does on Nollan/Dolan, can only be
classified as a takings challenge.").

If Bridge establishes a taking, the proper remedy is
just compensation for the property taken rather than an order
enjoining any action.  See Ruckelshaus v. Monsanto Co., 467 U.S.
986, 1016 (1984) ("Equitable relief is not available to enjoin an
alleged taking of private property for a public use, duly
authorized by law, when a suit for compensation can be brought
against the sovereign subsequent to the taking."); In re Nat'l
Sec. Agency Telecomm. Records Litig., 669 F.3d 928, 932 (9th Cir.
2011) (same).

In seeking injunctive relief as part of its takings
claims, Bridge appears to be blurring the distinction between its
takings claims and its due process claim.  The Ninth Circuit
clearly considers a claim that government action was not in
pursuit of a public purpose to fall outside a takings claim.  In
Equity Lifestyle Properties, Inc. v. County of San Luis Obispo,
548 F.3d 1184 (9th Cir. 2008), the Ninth Circuit said:

> The parties dispute whether takings
> jurisprudence governs this challenge, or
> whether its merits turn only upon our due
> process doctrine.  The Supreme Court's
> decision in Lingle v. Chevron U.S.A., Inc., .
> . . answers this question: '[The Takings

> Clause] is designed not to limit the
> governmental interference with property
> rights per se, but rather to secure
> compensation in the event of otherwise proper
> interference . . . .'  Due process violations
> cannot be remedied under the Takings Clause,
> because 'if a government action is found to
> be impermissible--for instance because it
> fails to meet the 'public use' requirement or
> is so arbitrary as to violate due process--
> that is the end of the inquiry.  No amount of
> compensation can authorize such action.'

Id. at 1194 (internal quotation marks omitted)).  Accord Action

Apartment Ass'n, Inc. v. Santa Monica Rent Control Bd., 509 F.3d

1020, 1026 n.1 (9th Cir. 2007) (citing Lingle v. Chevron U.S.A.

Inc., 544 U.S. 528, 532 (2005), to explain "the distinction

between substantive due process and Takings Clause claims");

Miranda v. Bonner, No. CV 08-03178 SJO (VBKX), 2013 WL 794059, at

*10 (C.D. Cal. Mar. 4, 2013) ("[T]he takings clause only

'requires compensation in the event of otherwise proper

interference amounting to a taking.' . . . .  Thus, 'the unlawful

seizure of property does not constitute a public use.'" (internal

quotation marks omitted)).

The Takings Clause presumes that the government has

acted in furtherance of a "public use."  See Lingle, 544 U.S. at

543 ("[T]he Takings Clause presupposes that the government has

acted in pursuit of a valid public purpose.  The Clause expressly

requires compensation where government takes private property

'for public use.'").

Bridge therefore may not rely on a "public use"

32

challenge to support entitlement to injunctive relief with respect to its takings claims.

VI.     **BRIDGE'S PROCEDURAL AND SUBSTANTIVE DUE PROCESS AND EQUAL PROTECTION CLAIMS ARE BARRED BY ISSUE PRECLUSION.**

In part of Count I, Bridge asserts that its federal and state procedural and substantive due process rights were violated.  In Count III, Bridge asserts that its federal and state equal protection rights were violated.[6]  Having already determined that the injunctive relief portions of Counts I and III are moot, this court, relying on the Hawaii Supreme Court's ruling in the state administrative appeal, concludes that the portion of Count I seeking monetary relief for due process violations (other than for a taking), as well as Count III's request for monetary relief, are barred by issue preclusion. Issue preclusion applies to the monetary relief claims because monetary relief for constitutional violations was not available to Bridge in the state administrative appeal.  It is thus the Hawaii Supreme Court's decisions on the issues of whether due process and equal protection rights were violated that this court relies on, rather than any actual adjudication of monetary relief

---

[6] The federal constitutional violations, asserted in free-standing claims, should more properly have been asserted under 28 U.S.C. § 1983, which is the basis for Count VI.  With respect to the state constitutional violations, Defendants challenge Bridge's right to bring such claims directly under the state constitution, a challenge this court need not resolve here because it dismisses those claims on other grounds.

claims.[7]  See, e.g., Plough By & Through Plough v. W. Des Moines Cmty. Sch. Dist., 70 F.3d 512, 516 (8th Cir. 1995) (noting that issue preclusion does not require identity of remedies or availability of requested remedy).

Issue preclusion, a doctrine distinct from the doctrine of claim preclusion, "applies to a subsequent suit between the parties or their privies on a different cause of action and prevents the parties or their privies from relitigating any issue that was actually litigated and finally decided in the earlier action." Bremer v. Weeks, 104 Haw. 43, 54, 85 P.3d 150, 161 (2004).  Issue preclusion applies when:

> (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom [issue preclusion] is asserted was a party or in privity with a party to the prior adjudication.

Id., 85 P.3d at 161.

Issue preclusion bars relitigation of whether Bridge's due process and equal protection rights were violated.  Those issues, contained in Counts I and III, were decided by the Hawaii

---

[7] This court nowhere in this order relies on Eleventh Amendment immunity (although that may be the foundation for judicial holdings that the state is not a "person" for purposes of § 1983).  Defendants acknowledge that they waived Eleventh Amendment protections when they removed this action to this court.  See ECF No. 37, PageID # 327.

Supreme Court in the state administrative appeal, to which
Bridge, the party against whom issue preclusion is asserted, was
a party.  See Bridge Aina Lea, 134 Haw. at 218-19, 339 P.3d at
716-17 (concluding that state circuit court erred in determining
that Bridge's due process rights under federal and state
constitutions were violated); id. at 219-20, 339 P.3d at 717-18
(concluding that state circuit court erred in determining that
Bridge's equal protection rights under federal and state
constitutions were violated).

        Those issues were essential to the final judgment.
Under Hawaii law, an issue decided in a prior adjudication is
essential to the final judgment when the final determination of
the litigation would have changed if the issue had been decided
differently.  See Matsuura v. E.I. du Pont De Nemours & Co., Civ.
No. 00-00328 SOM/LEK, 2007 WL 30600, at *5 (D. Haw. Jan. 4,
2007); see also Keahole Def. Coal., Inc. v. Bd. of Land & Natural
Res., 110 Haw. 419, 430, 134 P.3d 585, 596 (2006) (holding that
issue was essential to final judgment because it ultimately led
to court's determination).  With respect to the present case, the
Hawaii Supreme Court's final determination would have changed had
it determined that Bridge's due process and equal protection
rights were violated.  The determination of those issues led
directly to the Hawaii Supreme Court's decision affirming in part
and vacating in part the circuit court's judgment.

Bridge argues that its federal constitutional claims are not precluded by the Hawaii Supreme Court decision because federal courts are not bound by a state court's interpretation of the United States Constitution.  <u>See</u> ECF No. 76, PageID # 776. Bridge's argument ignores the doctrine of issue preclusion and would allow relitigation of issues already decided by a state court.  While Bridge cites cases standing for the proposition that a federal court is not bound by state court precedent on federal constitutional questions, those cases were not decided in the context of matters that had already been litigated in a prior suit by the very plaintiff now seeking relief here.  It cannot be the case that a federal court may sit in review of a state court decision every time a state court passes on federal constitutional issues.

Bridge also contends that the Hawaii Supreme Court's rulings on its constitutional claims in the state administrative case cannot preclude Bridge's constitutional claims in this action because the Hawaii Supreme Court's constitutional discussion was dicta.  <u>See</u> ECF No. 86, PageID # 1133.  Bridge is mistaken.  The Hawaii Supreme Court's discussion of Bridge's constitutional claims was clearly necessary to its decision affirming in part and vacating in part the circuit court's judgment.  <u>See</u> ECF No. 71-2, PageID # 757.  The Hawaii Supreme Court expressly stated that "the circuit court erred in

36

concluding that their procedural due process rights had been violated." Bridge Aina Lea, 134 Haw. at 219, 339 P.3d at 717. Similarly, the Hawaii Supreme Court ruled that "the circuit court erred in concluding the LUC violated Bridge's and DW's substantive due process rights." Id. The Hawaii Supreme Court also said, "Bridge's and DW's equal protection rights were not violated . . . ." Id. at 220, 339 P.3d at 718. A ground of decision is not dicta merely because it is one of multiple grounds of decision. See Exp. Grp. v. Reef Indus., Inc., 54 F.3d 1466, 1471-72 (9th Cir. 1995) ("Where a decision rest[s] on two or more grounds, none can be relegated to the category of obiter dictum." (quoting Woods v. Interstate Realty Co., 337 U.S. 535, 537 (1949)) (internal quotation marks and brackets omitted)).

In aid of escaping the preclusive effect of the Hawaii Supreme Court's ruling, Bridge also appears to raise issues it believes the Hawaii Supreme Court decided incorrectly. This court, however, is not sitting in review of that decision and cannot ignore its effect on this case merely because a party disagrees with the outcome.

Bridge makes the curious argument that issue preclusion does not bar litigation of whether its due process and equal protection rights were violated because the Hawaii Supreme Court affirmed the circuit court's judgment on alternative grounds. See ECF No. 86, PageID # 1131. Citing comment "o" to section 27

37

of the Restatement (Second) of Judgments, Bridge argues that the
Hawaii Supreme Court's decision is only "conclusive as to the
ruling that the [Commission] violated HRS Chapter 205-4." Id. at
PageID # 1133.   Comment "o" states:

> If a judgment rendered by a court of first
> instance is reversed by the appellate court
> and a final judgment is entered by the
> appellate court (or by the court of first
> instance in pursuance of the mandate of the
> appellate court), this latter judgment is
> conclusive between the parties.
>
> If the judgment of the court of first
> instance was based on a determination of two
> issues, either of which standing
> independently would be sufficient to support
> the result, and the appellate court upholds
> both of these determinations as sufficient,
> and accordingly affirms the judgment, the
> judgment is conclusive as to both
> determinations. In contrast to the case
> discussed in Comment i, the losing party has
> here obtained an appellate decision on the
> issue, and thus the balance weighs in favor
> of preclusion.
>
> If the appellate court upholds one of these
> determinations as sufficient but not the
> other, and accordingly affirms the judgment,
> the judgment is conclusive as to the first
> determination.
>
> If the appellate court upholds one of these
> determinations as sufficient and refuses to
> consider whether or not the other is
> sufficient and accordingly affirms the
> judgment, the judgment is conclusive as to
> the first determination.

Bridge relies on the third paragraph of comment "o" to contend
that due process and equal protection issues may be litigated in
this case.

38

Bridge's argument misses the mark.  Comment "o" to section 27 does not apply to the Hawaii Supreme Court's ruling on Bridge's constitutional claims.  While the Hawaii Supreme Court affirmed the circuit court's decision in certain respects, the court stated, "[W]e vacate the judgment to the extent it is based on the circuit court's conclusion that the LUC violated Bridge's and DW's constitutional rights . . . ."  Bridge Aina Lea, 134 Haw. at 220, 339 P.3d at 718.  Thus, in addressing Bridge's constitutional claims, the Hawaii Supreme Court was not "accordingly" affirming any judgment.

Additionally, despite stating that Hawaii courts "recognize and apply" section 27 of the Restatement (Second) of Judgments, Bridge makes no showing that Hawaii courts rely on comment "o" to that section.  Bridge cites Dorrance v. Lee, 90 Haw. 143, 976 P.2d 904 (1999), but that case cites only comment "h" to section 27.  See id. at 149, 976 P.2d at 910.

The gist of Bridge's contention appears to be that this court can give preclusive effect only to the issues underlying the portion of the Hawaii Supreme Court's decision affirming the lower court's judgment.  This court finds no basis in Hawaii law to ignore the issues determined in vacating part of the lower court's judgment.

Because all elements of issue preclusion are present in this case with respect to whether Bridge's due process and equal

39

protection rights were violated, those issues may not be litigated in this action in connection with any party or any form of relief.  The preclusive effect of the Hawaii Supreme Court's decision with respect to the due process portion of Count I and the entirety of Count III (equal protection) applies to all Defendants.

This court is unpersuaded by Bridge's argument that issue preclusion does not apply in this case because Defendants are judicially estopped from advancing arguments in this court contrary to their state court argument that the record was insufficient to decide Bridge's constitutional claims.  See ECF No. 86, PageID #s 1130-31.  In the state proceeding, Defendants stated: "The circuit court erred in ruling in an agency appeal - without any opportunity for presentation of evidence and without regard to the right to trial by jury - that the LUC and individual commissioners violated developers' constitutional rights to equal protection and due process."  Id. at PageID # 1131.  Bridge contends that this assertion precludes Defendants from arguing that Bridge's constitutional claims are precluded in this court.  See id.

The crux of the judicial estoppel doctrine is "whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the

perception that either the first or the second court was misled." New Hampshire v. Maine, 532 U.S. 742, 750-51 (2001) (internal quotation marks omitted).  No such concern arises in this case.

At the outset, it does not appear that Defendants' position in this action is inconsistent with their earlier position.  Defendants' argument in the state court action that the circuit court erred in finding constitutional violations "without any opportunity for presentation of evidence and without regard to the right to trial by jury" is not inconsistent with arguing that preclusion principles bar the constitutional issues arising in this subsequent proceeding.  Defendants are no longer arguing about whether the circuit court correctly found constitutional violations.

If Defendants were indeed arguing that the state circuit court had correctly determined the constitutional issues without presentation of evidence and without regard to a jury trial right, Bridge would have a viable argument as to inconsistency.  That, however, is not the situation presented here.  The issue arising in this action is whether the Hawaii Supreme Court's rulings on Bridge's constitutional claims have preclusive effect, a distinct issue from whether or not the state circuit court erred in even considering Bridge's constitutional claims.  Defendants' reliance on preclusion is not inconsistent with their prior assertions.

Further, even assuming Defendants were asserting inconsistent positions, the Hawaii Supreme Court explicitly rejected Defendants' argument that the circuit court had erred in considering Bridge's due process and equal protection claims without the presentation of evidence or a trial by jury.  While vacating the state circuit court's substantive rulings on those constitutional claims, the Hawaii Supreme Court found no procedural error of the type argued by Defendants.  See Bridge Aina Lea, 134 Haw. at 218, 339 P.3d at 716.  Judicial estoppel only applies when the court "relied on, or accepted, the party's previous inconsistent position."  Hamilton v. State Farm Fire & Cas. Co., 270 F.3d 778, 783 (9th Cir. 2001).

Because the elements of judicial estoppel are not met in this case, Bridge's judicial estoppel argument fails.

## VII.    COUNT V (EQUITABLE ESTOPPEL) IS DISMISSED AS AGAINST ALL DEFENDANTS.

In Count V, Bridge alleges that Defendants are estopped from taking certain actions because they made "numerous representations to Bridge" and Bridge changed its position in reliance on those assurances that it had met the zoning and other conditions imposed by Defendants.  See ECF No. 1-2, PageID # 56. Count V prays for injunctive relief and money damages.  This court has already dismissed the injunctive relief portion of Count V and turns now to the money damages portion of Count V. Money damages are not available under Hawaii law on an equitable

estoppel theory.

In _Allen v. City & County of Honolulu_, 58 Haw. 432, 571 P.2d 328 (1977), the Hawaii Supreme Court held that an award of damages was not the proper remedy for an equitable estoppel claim.  In reversing the trial court's award of damages for costs incurred in reliance on prior zoning requirements, the court stated:

> [T]o permit damages for development costs is not only unprecedented but would also be unsound policy.  Were we to affirm the award of damages, the City would be unable to act, if each time it sought to rezone an area of land it feared judicially forced compensation.  Monetary awards in zoning disputes would inhibit governmental experimentation in land use controls and have a detrimental effect on the community's control of the allocation of its resources. . . .  Prohibiting damages for development costs does not mean that a property owner must suffer an injury without compensation, for if the facts establish that the doctrine of equitable estoppel should apply to prevent the City from enforcing newly enacted prohibitive zoning, then the property owner is entitled to continue construction.

_Id._ at 438, 571 P.2d at 331.

In addition, Count V is insufficiently pled.  This is so with respect to the monetary relief sought, as well as to the injunctive relief claim, already dismissed on other grounds in this order.  Injunctive relief is the appropriate remedy for equitable estoppel.  That is, a defendant could be estopped from acting in a manner inconsistent with a defendant's assurances on

which a plaintiff reasonably relied.  The problem for Bridge,
however, is that the allegations concerning the assurances and
any reasonable reliance by Bridge on such assurances are so vague
and confusing as to provide no notice to Defendants as to the
bases of Count V.

Count V does indeed allege that Defendants gave Bridge
assurances.  Bridge says, "Defendants made numerous
representations to Bridge, including, but not limited to,
assurances that Bridge would be entitled to proceed with its
development based on the 1989 Decision and Order, as amended."
See ECF No. 1-2, PageID # 56.  However, Count V also "repeats,
realleges, and incorporates by reference" all preceding
allegations in the Complaint.  Id. at PageID # 55.  Those
preceding allegations refer to numerous changes to the 1989
Decision and Order, making it unclear exactly which assurances
Bridge is basing Count V on.

Moreover, those preceding allegations refer to various
conditions imposed by Defendants on whatever Defendants agreed
to.  Because Count V is unclear as to which particular assurances
form the foundation for Count V, it is unclear which conditions
applied to those assurances, or whether Bridge complied with the
applicable conditions.  Count V alleges that "Bridge reasonably
relied in good faith and to its detriment on the promises and
representations of Defendants and past conduct of Defendants, and

based on such reliance, changed its position to its detriment."
Id. at PageID # 56.   This conclusory allegation is not tied to
any factual detail and is notably silent as to whether Bridge
complied with any attendant conditions.  Such compliance appears
from the allegations in the Complaint to be necessary for any
reasonable reliance.  In short, the allegations in Count V
consist of nothing more than the very "labels and conclusions,
and a formulaic recitation of the elements of a cause of action"
that the Supreme Court said in Twombly "will not do."  550 U.S.
at 555.

          This court recognizes that detailed factual allegations
are not required, and that the factual allegations must be taken
as true on a motion to dismiss, but here Count V does not provide
the grounds of Bridge's entitlement to relief.  See id.  This
court therefore cannot draw "the reasonable inference that the
defendant is liable for the misconduct alleged."  See Iqbal, 556
U.S. at 678.  The monetary relief portion of Count V is
dismissed.

**VIII.     ALL REMAINING CLAIMS IN ISSUE ON THIS REVISED MOTION TO
          DISMISS ARE DISMISSED.**

          In the preceding pages, this court has dismissed all
claims for declaratory and injunctive relief, the claims for
monetary relief based on alleged federal and state due process
and equal protection violations (a portion of Count I and all of
Count III), and the equitable or zoning estoppel claim (Count V).

45

As noted earlier, Defendants are no longer moving for dismissal of the monetary relief portions of (a) the takings claims in Counts I, II, and VIII to the extent those claims are asserted against the Commission and Official Capacity Commissioners, and (b) the claims in Count IV (vested rights) to the extent Count IV is asserted against the Commission and Official Capacity Commissioners.  While those monetary relief claims may be the subject of future motions, those particular matters are not before this court on the present motion.

Given the above, the claims against the Commission and Official Capacity Commissioners that remain to be addressed in this order are Counts VI (42 U.S.C. § 1983 claim) and XI (42 U.S.C. § 1988 attorney's fee claim).

The claims against Individual Capacity Defendants that remain for this court's decision on this motion are the claims for monetary relief in (a) Counts I, II, and VIII (takings claims), (b) Count IV (vested rights), and (c) Counts VI (§ 1983) and XI (§ 1988).

### A.   Counts VI (§ 1983) and IX (§ 1988) Are Dismissed as Against the Commission and Official Capacity Commissioners.

Count VI alleges federal constitutional violations by the Commission, Official Capacity Defendants, and Individual Capacity Defendants, all allegedly actionable under 42 U.S.C. § 1983.  Count IX seeks attorney's fees and costs under 42 U.S.C.

§ 1988 for these alleged federal violations.  Counts VI and IX

are dismissed as against the Commission and Official Capacity

Commissioners.

> Section 1983 provides:
>
> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of
> any State or Territory or the District of
> Columbia, subjects, or causes to be
> subjected, any citizen of the United States
> or other person within the jurisdiction
> thereof to the deprivation of any rights,
> privileges, or immunities secured by the
> Constitution and laws, shall be liable to the
> party injured in an action at law, suit in
> equity, or other proper proceeding for
> redress[.]

42 U.S.C. § 1983.

A § 1983 claim for damages is not cognizable against

the state, arms of the state, or state officials sued in their

official capacities.  Such parties are not "persons" under § 1983

and cannot be held liable for money damages under § 1983.  See

Thornton v. Brown, 757 F.3d 834, 839 (9th Cir. 2013); Doe v.

Lawrence Livermore Nat. Lab., 131 F.3d 836, 839 (9th Cir. 1997).

The Commission is an arm of the State of Hawaii.  See Haw. Rev.

Stat. § 205-1.  Official Capacity Commissioners are themselves

indistinguishable from the State of Hawaii.  See Will, 491 U.S.

at 71 ("[A] suit against a state official in his or her official

capacity is not a suit against the official but rather is a suit

against the official's office.  As such, it is no different from

a suit against the State itself." (citation omitted)).

Accordingly, neither the Commission nor Official Capacity Commissioners may be sued for money damages under § 1983.  While prospective injunctive relief remains available against state actors, <u>see</u> <u>Hibbs v. Dep't of Human Res.</u>, 273 F.3d 844, 871 (9th Cir. 2001), all claims for prospective injunctive relief have been dismissed in the preceding pages of this order.

In the absence of a cognizable claim under § 1983, attorney's fees for a constitutional violation under 28 U.S.C. § 1988 are unavailable.  This leaves only claims for monetary relief in Counts I, II, and VIII (takings claims), and claims for monetary relief in Count IV (vested rights)[8] as against the Commission and Official Capacity Commissioners.

### B.   All Remaining Claims Against Individual Capacity Commissioners Are Dismissed.

The court turns now to the remaining claims against Individual Capacity Commissioners.  Those are claims for monetary relief in Counts I, II, IV, and VIII, together with the money damage claims in the § 1983 claim in Count VI and the claim for attorney's fees and costs in the § 1988 claim in Count IX.

---

[8] Later in this order, this court determines that monetary relief is not available under Count IV with respect to Individual Capacity Commissioners.  Because the parties have reserved for later proceedings the monetary relief claim against the Commission and Official Capacity Commissioners in Count IV, this court is not adjudicating that claim here, although it is not presently apparent why monetary relief would be available against the Commission and Official Capacity Commissioners.

### 1.   All Remaining Claims Against Individual Capacity Commissioners Are Barred by Quasi-Judicial Immunity.

#### a.   Federal Law.

Individual Capacity Commissioners contend that they are entitled to quasi-judicial immunity under federal law as to all federal claims asserted against them.  See ECF No. 14-1, PageID # 167.  The court agrees.

Under the doctrine of quasi-judicial immunity, absolute judicial immunity may be "extended to certain others who perform functions closely associated with the judicial process."  Duvall v. Cnty. of Kitsap, 260 F.3d 1124, 1133 (9th Cir. 2001) (internal quotation marks omitted).  "When judicial immunity is extended to officials other than judges, it is because their judgments are 'functional[ly] comparab[le]' to those of judges."  Antoine v. Byers & Anderson, Inc., 508 U.S. 429, 436 (1993) (quoting Imbler v. Pachtman, 424 U.S. 409, 423 n.20 (1976)).

Accordingly, courts take a functional approach to determining whether quasi-judicial immunity is appropriate by "looking to the nature of the function performed and not to the identity of the actor performing it."  Burton v. Infinity Capital Mgmt., 753 F.3d 954, 960 (9th Cir. 2014) (internal quotation marks omitted).  The function performed "must be a judicial act with a sufficiently close nexus to the adjudicative process."  Id. (internal quotation marks omitted).  However, "it is only

49

when the judgment of an official other than a judge involves the exercise of discretionary judgment that judicial immunity may be extended to that nonjudicial officer."  Id.  "The touchstone for the doctrine's applicability has been performance of the function of resolving disputes between parties, or of authoritatively adjudicating private rights."  Antoine, 508 U.S. at 435-36.

The following judicial characteristics are considered in determining whether an official performs duties functionally comparable to those of a judge: "an adversarial proceeding, a decision-maker insulated from political influence, a decision based on evidence submitted by the parties, and a decision provided to the parties on all of the issues of fact and law." Buckles v. King Cnty., 191 F.3d 1127, 1134 (9th Cir. 1999).

Individual Capacity Commissioners performed duties functionally comparable to those of a judge.  They engaged in proceedings relating to the classification of Bridge's parcel that were adversarial.  As an example, the State Office of Planning, which must appear in proceedings for district boundary amendments as a party, see Haw. Admin. Rules § 15-15-52(a), opposed Bridge, "urg[ing] the Commission to . . . change the land to agricultural use."  ECF No. 1-2, PageID #s 32-33; see Buckles, 191 F.3d at 1134 (noting "dramatically polar positions" of relevant parties in finding proceeding to be adversarial).

Individual Capacity Commissioners participated in proceedings conducted under a statutory and regulatory framework providing for numerous quasi-judicial procedures. See Haw. Rev. Stat. Chapter 91; Haw. Admin. Rules §§ 15-15-51 to 76 and 15-15-80 to 84 (discussing, *inter alia*, oral argument, evidence, cross-examination, witnesses, subpoenas, motions, and briefs); see also ECF No. 1-2, PageID # 24 ("[T]he Order to Show Cause specifically stated that 'the Commission will conduct a hearing on this matter in accordance with the requirements of Chapter 91, Hawaii Revised Statutes, and Subchapters 7 and 9 of Chapter 15-15-, Hawaii Administrative Rules.'").  Individual Capacity Commissioners considered evidence and entered a written order regarding reversion of Bridge's property to agricultural use. See ECF No. 1-2, PageID # 44.  Bridge also had the opportunity to appeal the decision to state circuit court and through the state appellate system. See Buckles, 191 F.3d at 1134 (noting right to appeal was relevant, though not necessarily dispositive, to determination of whether quasi-judicial immunity applied); see also Hale O Kaula Church v. Maui Planning Comm'n, 229 F. Supp. 2d 1056, 1066 (D. Haw. 2002) (discussing right to appeal in concluding that quasi-judicial immunity applied). Buckles indicates that these characteristics are consistent with the application of quasi-judicial immunity.

Bridge reads the Ninth Circuit's decision in <u>Zamsky v. Hansell</u>, 933 F.2d 677 (9th Cir. 1991), as foreclosing any possibility of quasi-judicial immunity for Individual Capacity Commissioners.  In <u>Zamsky</u>, the Ninth Circuit concluded that members of the Oregon Land Conservation and Development Commission (the "LCDC"), which adopted state-wide goals and reviewed local land use plans for compliance with those state-wide goals, were not entitled to absolute immunity.  <u>See id.</u> at 678-80.  The court concluded that the LCDC's commissioners had not acted in a judicial capacity, in part because "the LCDC Commissioners are not insulated from the agency that promulgates the rules to be applied."  <u>Id.</u> at 679.  Instead, those commissioners were the very people who had created the goals that land use plans had to serve.  <u>Id.</u>  The court concluded that the LCDC's commissioners "combine the functions of lawmaker and monitor of compliance," and that "[s]uch combined functions . . . are inconsistent with the judicial role and judicial immunity."  <u>Id.</u>

Bridge says that Individual Capacity Commissioners, like Oregon's LCDC commissioners, functioned in a dual role.  <u>See</u> ECF No. 36, PageID #s 276-83.  Bridge describes Individual Capacity Commissioners as having first "acted as lawmakers, establishing the conditions, requirements and 'deadlines' for the Property and the Project," then "as monitors of compliance" when

they issued an order to show cause and "ultimately reclassif[ied] the Property based on a purported failure to comply with conditions they had imposed." Id. at PageID # 276.  According to Bridge, these combined functions preclude application of quasi-judicial immunity.

The court disagrees.  The actions taken by Individual Capacity Commissioners are more characteristic of the judicial process than the actions in Zamsky.  As noted above, numerous quasi-judicial procedures apply to Individual Capacity Commissioners' actions.  Oregon's LCDC, which resembled an executive body, appears to have lacked judicial trappings such as hearings, witnesses, oral argument, subpoenas, motions, and briefs applicable to the Commission in this case.  The Ninth Circuit, in fact, noted that the LCDC's proceedings were often nonadversarial.  See Zamsky, 933 F.2d at 679.

In the present case, the Commission's judicial trappings reduce the importance of any dual role played by Individual Capacity Commissioners.  Notably, the Zamsky court did not rely solely on the LCDC commissioners' dual functions in concluding that they had not acted in a judicial capacity, suggesting that this factor was not necessarily determinative on its own.

Moreover, while the Commission in the present case ultimately returned Bridge's property to agricultural use based

53

on a failure to comply with conditions the Commission had itself
imposed, Individual Capacity Commissioners' ability to impose
conditions on any decision to reclassify land is not of the same
quality as the LCDC commissioners' creation of standards for
local land use plans and the subsequent monitoring of compliance
with those conditions.   In Zamsky, the LCDC's "primary functions"
were to create and monitor land use plan standards.   See id. at
678.   The LCDC appears to have created nearly the entirety of the
framework it had a duty to enforce.   By contrast, the Commission
in the present case imposed conditions attendant to the exercise
of its power to reclassify land.   See Haw. Rev. Stat. § 205-4(g)
("[T]he commission, by filing findings of fact and conclusions of
law, shall act to approve the petition, deny the petition, or to
modify the petition by imposing conditions necessary to uphold
the intent and spirit of this chapter or the policies and
criteria established pursuant to section 205-17 or to assure
substantial compliance with representations made by the
petitioner in seeking a boundary change.   The commission may
provide by condition that absent substantial commencement of use
of the land in accordance with such representations, the
commission shall issue and serve upon the party bound by the
condition an order to show cause why the property should not
revert to its former land use classification or be changed to a
more appropriate classification").

The Commission in the present case did not create the overarching framework under which it was operating; that framework was instead created by statute.  This is a crucial distinction.  Judicial bodies routinely impose and enforce various rules and conditions.  As an example, this court imposes local rules governing practice within this district.  If a party litigates the enforcement of a local rule, the enforcement of that local rule would surely be characterized as a judicial act.  Courts also impose supervised release conditions in criminal cases, with the possibility that supervised release will be revoked upon violation of those conditions.  Yet, the revocation of supervised release cannot be characterized as anything other than a judicial act.

Clearly, judicial or quasi-judicial officials are not automatically divested of the protection of immunity just because they enforce provisions they create.  The principles outlined in Zamsky must always be examined in the context of a particular case.  Here, the Commission's imposition of conditions to reclassifying Bridge's land does not, on its own, render the Commission so akin to a lawmaking body that it triggers the Zamsky court's concern with combining the "functions of lawmaker and monitor of compliance" in a manner "inconsistent with the judicial role."  See Zamsky, 933 F.2d at 679.

55

In the alternative, Bridge argues that the process followed by Individual Capacity Commissioners in returning Bridge's property to agricultural use actually bore little resemblance to a judicial process. Bridge alleges that Individual Capacity Commissioners refused to hear some of Bridge's evidence, failed to discuss or cite any evidence before reinstating the order to show cause, engaged in illegal ex parte communications, and predetermined the result of the proceedings. ECF No. 36, PageID # 283. Bridge also argues that Vladimir P. Devens, an Individual Capacity Commissioner, was biased against Bridge and participated in proceedings despite having a conflict of interest. Id.

Even accepting for purposes of this motion the truth of these and other allegations in Bridge's Complaint regarding the Commission's process, quasi-judicial immunity applies to Individual Capacity Commissioners. Although Bridge argues that there were few, if any, characteristics of the judicial process in the Commission's proceedings, see ECF No. 36, PageID # 283, Bridge does not actually point to alleged facts or to law sufficient to support that argument.

Bridge appears to acknowledge, for example, that multiple hearings were held, evidence was considered, motions were made, oral argument was permitted, and written decisions were issued. See, e.g., ECF No. 1-2, PageID #s 15-45. Even if

Bridge is contending that those quasi-judicial procedures were a mere facade, allegations of bias, bad faith, malice, or corruption generally do not bar the application of quasi-judicial immunity.  See, e.g., Pierson v. Ray, 386 U.S. 547, 554 (1967); In re Castillo, 297 F.3d 940, 947 (9th Cir. 2002).

Nor do "grave procedural errors" preclude quasi-judicial immunity.  Killinger v. Johnson, 389 F.3d 765, 770 (7th Cir. 2004); see also Stump v. Sparkman, 435 U.S. 349, 359 (1978). After all, judges themselves may commit procedural errors without losing judicial immunity.

Bridge's argument that Individual Capacity Commissioners are not insulated from political influence also fails to defeat quasi-judicial immunity.  Bridge contends that Individual Capacity Commissioners were under pressure to kill Bridge's project because: (1) the Office of Planning, which publicly advocated selling the land to another developer, is under the governor's Department of Business, Economic Development and Tourism, like the Commission; and (2) Individual Capacity Commissioners and the Director of the Office of Planning are appointed by the governor.  See ECF No. 36, PageID # 284.

The connection Bridge attempts to draw between Individual Capacity Commissioners and alleged pressure to conform to "the position of the Governor, who appointed them," is tenuous, at best.  Commissioners may not be removed or suspended

except for cause after notice and public hearing.  See Haw. Rev.
Stat. § 26-34(d).  Commissioners are appointed for staggered
terms of four years, with a commissioner appointed from each of
the counties and joined by one at-large member.  See Haw. Rev.
Stat. §§ 26-34(a), 205-1.  No commissioner may hold any other
public office.  See Haw. Rev. Stat. § 205-1.  These kinds of
safeguards serve to provide at least some insulation from
political influence.  See Buckles, 191 F.3d at 1134.  Mere
speculation as to the possibility of political influence cannot,
without more, defeat quasi-judicial immunity any more than it
could defeat judicial immunity.

Individual Capacity Commissioners are entitled to
quasi-judicial immunity under federal law.  All federal claims
asserted against Individual Capacity Commissioners for monetary
relief are therefore dismissed.

Because the court has determined that Individual
Capacity Commissioners are entitled to quasi-judicial immunity
with respect to Bridge's federal claims seeking damages, it need
not consider Individual Capacity Commissioners' alternative
argument that they are entitled to qualified immunity with
respect to those claims.

### b.   State Law.

The doctrine of quasi-judicial immunity also exists
under Hawaii law with respect to state-law claims.  See, e.g.,

Hulsman v. Hemmeter Dev. Corp., 65 Haw. 58, 63-65, 647 P.2d 713, 718-19 (1982).  Although Hawaii courts have not yet considered whether quasi-judicial immunity applies specifically to members of the Land Use Commission, this court finds adequate basis to extend the protection of quasi-judicial immunity to Individual Capacity Commissioners in this case.

In determining the application of quasi-judicial immunity under Hawaii law, Hawaii courts have frequently relied on federal law.  See, e.g., Hawaii Ventures, LLC v. Otaka, Inc., 114 Haw. 438, 486, 164 P.3d 696, 744 (2007); Hulsman, 65 Haw. at 64-65, 647 P.2d at 718-19; Seibel v. Kemble, 63 Haw. 516, 523-27, 631 P.2d 173, 178-80 (1981).  This court does the same and concludes that quasi-judicial immunity applies to Individual Capacity Commissioners under Hawaii law for the same reasons articulated with respect to federal law.  See Hale O Kaula Church v. Maui Planning Comm'n, 229 F. Supp. 2d 1056, 1067 (D. Haw. 2002) (determining that quasi-judicial immunity applied under Hawaii law, for reasons similar to those stated with respect to federal law, to claims against members of Maui Planning Commission and to hearing officer for Maui Planning Commission). All claims against Individual Capacity Commissioners for damages under state law are dismissed.

Because the court has determined that Individual Capacity Commissioners are entitled to quasi-judicial immunity

59

with respect to Bridge's claims seeking monetary relief under state law, it need not consider Individual Capacity Commissioners' alternative argument that they are entitled to immunity under section 26-35.5 of Hawaii Revised Statutes or via a qualified privilege.

> ### 2. Individuals Sued in Their Individual Capacities Are Not Liable in Damages for Takings.

While quasi-judicial immunity offers protection to Individual Capacity Commissioners from all remaining claims for monetary relief, the same protection is available on alternate grounds with respect to the takings claims.

With respect to the takings alleged in Counts I, II, and VIII, monetary relief is simply unavailable against individuals sued in their individual capacities. The very nature of a taking is that a public entity is taking private property for a public purpose, and must provide just compensation in return. This concept is inconsistent with the notion that someone acting in an individual capacity has taken property or could be personally liable for a taking. By definition, the taking is not by a private person for private purposes, and the property does not belong to a private person who must accordingly pay just compensation out of private funds.

Thus, in <u>Freddy Nobriga Enterprises, Inc. v. State Department of Hawaiian Home Lands</u>, 129 Haw. 123, 295 P.3d 993

(App. 2013), the Hawaii Intermediate Court of Appeals noted that the plaintiff made "no factual or legal argument . . . supporting a 'takings claim' against [the defendants] in their individual capacity and we find none."  Id. at 131, 295 P.3d at 1001.

A number of federal courts, among them the Fourth and Sixth Circuits, have also concluded that individual capacity defendants are not liable for federal takings claims.  See Langdon v. Swain, 29 F. App'x 171, 172 (4th Cir. 2002) ("[T]akings actions sound against governmental entities rather than individual state employees in their individual capacities."); Vicory v. Walton, 730 F.2d 466, 467 (6th Cir. 1984) ("Unlike a trespass or other property tort which may be committed by either an individual under or not under color of law or by a governmental entity, a 'taking without just compensation' in violation of the fifth amendment is an act or wrong committed by a government body--a taking 'for public use.' . . . . Plaintiff may not maintain a constitutional cause of action against these defendants who neither have nor claim the eminent domain power, nor any power similar to it."); see also Katsaros v. Serafino, No. Civ. 300CV288PCD, 2001 WL 789322, at *5 (D. Conn. Feb. 28, 2001) ("Only governmental entities, and not individuals, can be liable for takings violations.").

In response to an inquiry by the court about whether there was authority for the proposition that a person sued in his

or her individual capacity could be liable in money for a taking, Bridge pointed to three cases.  None of those cases is controlling.

The first case, Solida v. United States, No. 2:12-CV-1488-RCJ-VCF, 2013 WL 3677735, (D. Nev. July 11, 2013), concluded that the plaintiff could maintain a Bivens action against a defendant sued in an individual capacity because the United States Supreme Court had not "explicitly prohibited" a Bivens action for a takings clause violation.  See id. at *7. The court's conclusion is not accompanied by any analysis.  Based solely on the absence of an explicit prohibition by the Supreme Court, it ignores the prohibition found by some lower courts.

The second case, Asociacion De Subscripcion Conjunta Del Seguro De Responsabilidad Obligatorio v. Flores Galarza, 484 F.3d 1 (1st Cir. 2007), involved an alleged taking of insurance premiums and reserve funds.  The funds were withheld from a claimant and used to address the cash-flow problems that the Commonwealth of Puerto Rico was facing at the time.  In analyzing for qualified immunity purposes the individual liability of Puerto Rico's Secretary of the Treasury for that alleged taking, the First Circuit cited authorities discussing physical takings of property, as opposed to regulatory takings or takings effected by inverse condemnation or the imposition of unconstitutional conditions.  See id. at 28.  There being no indication that the

62

individual had obtained any personal gain through the taking, the First Circuit expressed concern about the individual-capacity claim, noting, "We are troubled by the notion that the personal-capacity claim against Flores Galarza, by which the JUA seeks enormous personal damages from him, is really a subterfuge for an official-capacity suit that seeks payment from the Commonwealth Treasury." Id. at 25. The court nevertheless declined to forbid an individual-capacity damage claim, leaving it to the plaintiff to pursue an uncollectible judgment if it so chose, or to the Commonwealth to indemnify the individual official, if it so chose.

This court considers the rationale of the Fourth and Sixth Circuits more persuasive.

The third case cited by Bridge, Spell v. Edwards, No. Civ No. 12-796, 2013 WL 5232341, (E.D. La. Sept. 13, 2013), merely relies on Flores Galarza. See id. at *2.

This court concludes that monetary relief is not available against persons sued in their individual capacities for takings.

### 3. Money Damages Are Not Available in Connection with the Vested Rights Claim in Count IV.

Damages are also unavailable against Individual Capacity Defendants with respect to Bridge's claim for deprivation of vested rights in Count IV for the same reasons outlined with respect to Bridge's equitable estoppel claim. In

Allen, the Hawaii Supreme Court noted that vested rights and equitable estoppel were "theoretically distinct," but that "courts across the country seem to reach the same results when applying these defenses to identical factual situations."  58 Haw. at 435, 571 P.2d at 329.  The Allen court went on to find that damages were unavailable under both theories.  See id. at 438, 571 P.2d at 331.  Bridge may not maintain a vested rights claim for damages under Hawaii law against the Individual Capacity Defendants.

**V.      CONCLUSION.**

Defendants' motion to dismiss, as revised by Defendants, is granted.  This order leaves only the following claims for adjudication: (1) the takings claims for just compensation in Counts I, II, and VIII, to the extent asserted against the Commission and Official Capacity Commissioners; and (2) Count IV, to the extent seeking damages against the Commission and Official Capacity Commissioners.[9]

This order makes it unnecessary for this court to consider other issues raised by the parties, including but not limited to the scope of sovereign immunity under state law.

---

[9] As noted above, the court leaves this Count IV damage claim pending pursuant to the parties' agreement, notwithstanding this court's ruling that damages are not recoverable under Count IV against Individual Capacity Commissioners.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, August 25, 2015.



/s/ Susan Oki Mollway
Susan Oki Mollway
Chief United States District Judge

Bridge Aina Le'a, LLC v. State of Hawaii Land Use Commission, et al., Civ. No. 11-00414 SOM/BMK; ORDER GRANTING REVISED MOTION TO DISMISS