IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

BRIDGE AINA LE'A, LLC,     )    CIVIL NO. 11-00414 SOM-BMK
                         )
        Plaintiff,     )    ORDER GRANTING IN PART AND
                         )    DENYING IN PART MOTION FOR
    vs.             )    SUMMARY JUDGMENT
                         )
STATE OF HAWAII LAND USE   )
COMMISSION; VLADIMIR P.     )
DEVENS, in his individual and )
official capacity; KYLE     )
CHOCK, in his individual and )
official capacity; THOMAS    )
CONTRADES, in his individual )
and official capacity; LISA  )
M. JUDGE, in his individual  )
and official capacity;      )
NORMAND R. LEZY, in his     )
individual and official    )
capacity; NICHOLAS W. TEVES, )
in his individual and      )
official capacity; RONALD I. )
HELLER, in his official    )
capacity; DUANE KANUHA, in   )
his official capacity;      )
CHARLES JENCKS, in his      )
official capacity; JOHN DOES )
1-10; JANE DOES 1-10; DOE    )
PARTNERSHIPS 1-10; DOE      )
CORPORATIONS 1-10; DOE      )
ENTITIES 2-10 and DOE,      )
                         )
        Defendants.    )
                         )

**ORDER GRANTING IN PART AND DENYING IN PART
MOTION FOR SUMMARY JUDGMENT**

**I.**       **INTRODUCTION.**

      This case arises out of a decision by Defendant State
of Hawaii Land Use Commission (the "LUC") to reclassify a parcel
of land from urban use to agricultural use.  Plaintiff Bridge

Aina Le'a, LLC, the owner of the parcel, claims that, in reclassifying the land, the LUC and certain commissioners violated Bridge's rights under the United States Constitution, the Hawaii constitution, and various Hawaii laws.  The Hawaii Supreme Court has upheld the state trial court's invalidation of the LUC's reclassification ruling.

Defendants now move for summary judgment as to Bridge's takings claims for just compensation in Counts I, II, and VIII, and Bridge's vested-rights claim in Count IV.  The motion is granted with respect to Counts IV and VIII, but denied with respect to Counts I and II.

**II.       BACKGROUND.**

The subject parcel of land consists of 1,060 acres in South Kohala, on the island of Hawaii.  ECF No. 1, PageID # 15. On November 25, 1987, the parcel was purchased by a private company that sought to develop a large residential community. Id.  Toward that end, the purchaser petitioned to reclassify the land from "agricultural use" to "urban use."   Id.  The LUC approved the petition on condition that 60 percent of the homes built would be "affordable" units.   Id.

During the next two decades, the property changed ownership.  Eventually, Bridge became the owner.  Id., PageID #s 16-17.  When Bridge acquired the property, it was classified for "urban use" and subject to an amended affordable housing

2

condition that still required sixty percent of the homes to be affordable, but that also set a minimum of 1,000 affordable homes.  Id., PageID # 17.

After various proceedings, including proceedings that resulted in amendments to the condition, see id., PageID #s 20-28, the LUC, in September 2009, ordered Bridge and DW Aina Le'a Development ("DW"), the company to which Bridge intended to assign the project, to complete sixteen affordable units by March 31, 2010, id., PageID # 29.  The sixteen units, as well as other work on the project, were allegedly completed by June 2010.  Id., PageID # 30.  However, allegedly because the affordable homes were not completed by the deadline of March 31, 2010, the LUC determined that Bridge and DW had not satisfied the applicable condition.  Id., PageID # 76.  In January 2011, the LUC voted to reclassify the land back to agricultural use.  Id., PageID # 37.

Bridge filed two actions challenging the LUC's decision to reclassify the land to agricultural use.  Bridge not only sought judicial review of the LUC's decision through an administrative appeal, Bridge also filed a separate action in state court.  See ECF No. 1-2.  It is that separate action that was removed to this court on June 27, 2011.  See ECF No. 1.

This case has a long history that includes a stay while the appeal from the LUC decision made its way through the state courts, and an appeal to the Ninth Circuit challenging this

3

court's stay.  Upon completion of proceedings in the Hawaii Supreme Court in connection with the appeal from the LUC decision, the Ninth Circuit, while approving this court's earlier stay, found the reason for the stay no longer in issue, vacated the stay, and remanded the case to this court.  Bridge Aina Le'a, LLC v. Chock, 590 Fed. Appx. 705 (9th Cir. 2014).  Following proceedings on remand, this court is left with only Bridge's takings claims for just compensation in Counts I, II, and VIII, to the extent asserted against the LUC and Official Capacity Commissioners, and Count IV, to the extent seeking damages against the LUC and Official Capacity Commissioners.  See ECF No. 93.

On December 31, 2015, Defendants filed the present motion seeking summary judgment as to Bridge's remaining claims. See ECF No. 105.

**III.     STANDARD.**

The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."

Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party must set forth specific facts showing that there is a genuine issue for trial. T.W. Elec. Serv., Inc., 809 F.2d at 630. At least some "'significant probative evidence tending to support the complaint'" must be produced. Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)). See Addisu, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact."). "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587). Accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

All evidence and inferences must be construed in the light most favorable to the nonmoving party. T.W. Elec. Serv., Inc., 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.

Id.  When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  Id.

## IV.     ANALYSIS.

Defendants move for summary judgment as to Bridge's takings claims in Count I (Denial of Due Process of Law), Count II (Inverse Condemnation), and Count VIII (Unconstitutional Land Development Conditions), and Bridge's vested-rights claim in Count IV.  See ECF Nos. 105, 116.

### A.     Bridge's Takings Claims.

"The Takings Clause of the Fifth Amendment, made applicable to the States through the Fourteenth, provides that private property shall not 'be taken for public use, without just compensation.'"  Lingle v. Chevron U.S.A. Inc., 544 U.S. 528, 536-37 (2005) (citing Chicago, B. & Q.R. Co. v. Chicago, 166 U.S. 226 (1897)).  The Takings Clause "does not prohibit the taking of private property, but instead places a condition on the exercise of that power."  First English Evangelical Lutheran Church of Glendale v. Cnty. of Los Angeles, 482 U.S. 304, 314 (1987).  The Takings Clause "is designed not to limit the governmental interference with property rights per se, but rather to secure compensation in the event of otherwise proper interference

6

amounting to a taking." Id. at 315.

Prior to Pennsylvania Coal Co. v. Mahon, 260 U.S. 393 (1922), "the Takings Clause was understood to provide protection only against a direct appropriation of property--personal or real." Horne v. Dep't of Agric., 135 S.Ct. 2419, 2427 (2015). "Beginning with Mahon, however, the Court recognized that government regulation of private property may, in some instances, be so onerous that its effect is tantamount to a direct appropriation or ouster--and that such 'regulatory takings' may be compensable under the Fifth Amendment" if the "'regulation goes too far.'" Lingle, 544 U.S. at 537 (quoting Mahon, 260 U.S. at 415).

Supreme Court precedent identifies two categories of regulatory action that will be deemed per se takings under the Fifth Amendment:

> First, where government requires an owner to suffer a permanent physical invasion of her property--however minor--it must provide just compensation. See Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419 (1982) (state law requiring landlords to permit cable companies to install cable facilities in apartment buildings effected a taking). A second categorical rule applies to regulations that completely deprive an owner of "all economically beneficial us[e]" of her property. [Lucas v. S. Carolina Coastal Council, 505 U.S. 1003, 1019 (1992).] We held in Lucas that the government must pay just compensation for such "total regulatory takings," except to the extent that "background principles of nuisance and property law" independently restrict the

owner's intended use of the property.  Id.,
at 1026-1032.

Lingle, 544 U.S. at 538.

"Outside these two relatively narrow categories . . .
regulatory takings challenges are governed by the standards set
forth in Penn Central Transp. Co. v. New York City, 438 U.S. 104
(1978)."  Lingle, 544 U.S. at 538.  The Court in Penn Central
identified several factors of significance.  438 U.S. at 124.
Those factors include the "economic impact of the regulation on
the claimant and, particularly, the extent to which the
regulation has interfered with distinct investment-backed
expectations."  Id.  An additional factor is the "character of
the governmental action."  For example, "[a] 'taking' may more
readily be found when the interference with property can be
characterized as a physical invasion by government than when
interference arises from some public program adjusting the
benefits and burdens of economic life to promote the common
good."  Id. (citation omitted).

Defendants argue that Bridge's takings claims fail for
three reasons: (1) the LUC's imposition of an affordable housing
condition does not constitute an unconstitutional condition as a
matter of law; (2) Bridge's takings claims are time-barred; and
(3) Bridge's failure to obtain a valid environmental impact
statement independently precludes its takings claims, pursuant to
Lucas, 505 U.S. at 1026–32.  See ECF No. 116, PageID # 3014.

8

1.   **Unconstitutional Condition**.

     a.   **Issue Preclusion Bars Relitigation of Count VIII**.

Defendants are entitled to summary judgment as to Count VIII because issue preclusion bars relitigation of whether the affordable housing condition was unconstitutional.

Issue preclusion, a doctrine distinct from the doctrine of claim preclusion, "applies to a subsequent suit between the parties or their privies on a different cause of action and prevents the parties or their privies from relitigating any issue that was actually litigated and finally decided in the earlier action." Bremer v. Weeks, 104 Haw. 43, 54, 85 P.3d 150, 161 (2004).  Issue preclusion applies when:

> (1) the issue decided in the prior adjudication is identical to the one presented in the action in question; (2) there is a final judgment on the merits; (3) the issue decided in the prior adjudication was essential to the final judgment; and (4) the party against whom [issue preclusion] is asserted was a party or in privity with a party to the prior adjudication.

Id.

Count VIII challenges the constitutionality of the affordable housing condition:

> 209.  The United States Supreme Court has dictated heightened scrutiny of land development conditions, under Nollan v. California Coastal Comm'n, 483 U.S. 825 (1987) and Dolan v. City of Tigard, 512 U.S. 374 (1994).  Hawaii is a Nollan/Dolan state by decision of the Hawaii Supreme Court.  See

9

<u>Public Access Shoreline Hawaii v. Hawaii
Planning Comm'n (PASFH)</u>, 79 Hawai'i 425, 452,
903 P.2d 1246, 1273 (1995).

210.   Under applicable law, any conditions
attached to governmental land development
approvals require, first, that there be a
direct connection or nexus between what
public facility needs a land development will
generate or what public problems it will
cause, on the one hand, and the land
development conditions government imposes to
satisfy those needs or ameliorate those
problems, on the other, and second, that the
conditions be proportional to those specific
needs and problems.   There was no study, and
no finding, by the Commission in 2005
that the Project would create such an impact
as to require completion of 385 affordable
houses by November 17, 2010, nor can there be
such a finding because there is no nexus
between a residential housing project and
affordable housing.

211.   A Land Use Commission boundary
amendment is the "wrong place, wrong time" to
impose a development condition requiring a
specific number of affordable houses be built
by a specific time, as the Commission did in
Condition 1 of its 2005 Order.   The
Commission lacks the authority under
<u>Nollan</u>/<u>Dolan</u> to impose land development
conditions on that simple boundary amendment
reclassification decision because a boundary
amendment does not trigger a need for
affordable housing or any need whatsoever for
land development conditions at the boundary
amendment level.

212.   Having received Professor Callies'
report, Commissioners had actual knowledge
that Condition 1 of the 2005 Order was an
unconstitutional and thus unenforceable land
development condition.   Commissioners
nonetheless chose to base their Final Order
on Condition 1 of the 2005 Order, in willful
disregard of their obligations under the
United States and Hawaii constitutions.

ECF No. 1-2, PageID #s 62-64.

The Hawaii Supreme Court addressed the constitutionality of the condition in the state administrative appeal.  See Bridge Aina Lea, 134 Haw. at 214 n.17, 339 P.3d at 712 n.17.  Bridge, the party against whom issue preclusion is asserted, was a party in the state case.  The Hawaii Supreme Court held:

> Bridge argues that the affordable housing condition was an "unconstitutional land development condition."  However, as noted above, HRS § 205-4(g) gives the LUC broad authority to impose conditions, including those necessary "to assure substantial compliance with representations made by the petitioner."  Given this broad authority and Bridge's representations to the LUC, the affordable housing condition and its included deadline were valid.  Bridge cites no authority that would prevent the LUC from imposing benchmarks or deadlines on development schedules.

Bridge argues the above footnote should not preclude the relitigation of the issue here because the Hawaii Supreme Court never addressed Bridge's argument regarding the effect of Nollan v. California Coastal Commission, 483 U.S. 825 (1987), and Dolan v. City of Tigard, 512 U.S. 374 (1994).  See ECF No. 113, PageID # 1636.

Nollan held that the government may not condition the approval of a land-use permit on the owner's relinquishment of a portion of his property unless there is an "essential nexus"

11

between the "legitimate state interest" and the permit condition
exacted by the city.  483 U.S. at 837.  <u>Dolan</u> further refined the
regulatory takings test articulated in <u>Nollan</u> by holding that an
adjudicative exaction requiring dedication of private property
must also be "'rough[ly] proportiona[l]' . . . both in nature and
extent to the impact of the proposed development."  512 U.S. at
391.

As Defendants point out, Bridge's Answering Brief filed
with the Hawaii Supreme Court presented the very matters raised
by Count VIII of the instant Complaint, including Bridge's
arguments regarding <u>Nollan</u> and <u>Dolan</u>.  <u>See</u> ECF No. 106-9, PageID
#s 1461-68.  The Hawaii Supreme Court, therefore, had occasion to
consider Bridge's arguments regarding <u>Nollan</u> and <u>Dolan</u>, was
ultimately unpersuaded, and, in characterizing the affordable
housing condition as "valid," found it constitutional.

Turning to the other elements of issue preclusion, this
court concludes that this issue was also essential to the final
judgment.  Under Hawaii law, an issue decided in a prior
adjudication is essential to the final judgment when the final
determination of the litigation would have changed if the issue
had been decided differently.  <u>See</u> <u>Matsuura v. E.I. du Pont De</u>
<u>Nemours & Co.</u>, Civ. No. 00-00328 SOM/LEK, 2007 WL 30600, at *5
(D. Haw. Jan. 4, 2007); <u>see also</u> <u>Keahole Def. Coal., Inc. v. Bd.</u>
<u>of Land & Natural Res.</u>, 110 Haw. 419, 430, 134 P.3d 585, 596

12

(2006) (holding that issue was essential to final judgment because it ultimately led to court's determination).  With respect to the present case, the Hawaii Supreme Court's final determination would have changed had it determined that the affordable housing condition was unconstitutional.  The determination of this issue led directly to the Hawaii Supreme Court's decision affirming in part and vacating in part the circuit court's judgment.

The doctrine of issue preclusion therefore prohibits Bridge from litigating in this case the very assertions rejected by the Hawaii Supreme Court in the state administrative appeal.

**b.   The "Unconstitutional Condition" Framework Is Inapplicable to Counts I and II.**

Defendants contend that, because the LUC's affordable housing requirement is not, as a matter of law, an unconstitutional condition, the takings claims in Counts I and II also fail.  See ECF No. 116, PageID # 3021.

In the land use context, the "unconstitutional condition" doctrine provides that "the government may not require a person to give up a constitutional right--here the right to receive just compensation when property is taken for a public use--in exchange for a discretionary benefit conferred by the government where the benefit sought has little or no relationship to the property."  Dolan, 512 U.S. at 385.

This is the appropriate framework, in Defendant's view,

for all of Bridge's takings claims "[b]ecause the takings claims all arise from a conditional grant of an amendment to district boundaries." See ECF No. 116, PageID #s 3021-22.

This court disagrees. Unlike Count VIII, which alleges that the affordable housing condition itself was unconstitutional, Counts I and II assert takings claims under different theories of liability. Counts I and II assert takings claims based on the LUC's decision to reclassify the property in issue as agricultural. Counts I and II are not premised on the imposition of the affordable housing condition itself. See ECF No. 1-2, PageID #s 46-50.

Count I alleges:

142. Further, Bridge's property rights have been arbitrarily, wrongfully and unlawfully restricted in its use and development, and reclassified from urban to agricultural use in violation of Bridge's right to substantive due process of law under Article I, Section 5 and 20 of the Hawaii Constitution and the Fifth and Fourteenth Amendments of the Constitution of the United States.

. . .

143. The egregious and illegal actions of Defendants have divested the Property of substantially all of its economic use, rendering it unmarketable, and forbidden substantially all practical, beneficial or economic use of the Property, constituting a de facto and regulatory taking without just compensation, or any compensation whatsoever, all in violation of Article I, Section 5 and 20 of the Hawaii Constitution and the Fifth and Fourteenth Amendment of the Constitution of the United States of America.

14

ECF No. 1-2, PageID # 47 (emphasis in the original).

      Count II alleges:

      149.  Bridge further has a legitimate property interest in the designation of its Property as urban, based upon the 1989 Decision and Order as amended.

      150.  Defendants' acts, as described herein, form an integrated and continuing course of conduct toward Bridge.

      151.  Defendants have denied Bridge of all economically viable use of Bridge's Property.

      152.  Defendants' actions do not substantially advance a legitimate state interest.

      153.  Defendants have never made any offer to Bridge to purchase the Property, or any part thereof or interest therein, or to pay damages for the taking Defendants have effected, nor have Defendants instituted eminent domain proceedings to acquire it, or any part thereof or interest therein.

      154.  State law does not provide a reasonable, certain and adequate provision for obtaining compensation.

      155.  In terminating Bridge's development rights as set forth herein, Defendants have attempted to accomplish indirectly what they cannot accomplish directly, confiscation of property interests belonging to Bridge, without just compensation, for the use and benefit of the public.

      156.  Bridge has received no just compensation for the taking of its property.

ECF No. 1-2, PageID #s 48-49.

      In accordance with these allegations, Counts I and II claim that the LUC's decision to revert the boundary

classification constituted a <u>Lucas</u> <u>per</u> <u>se</u> taking, or, in the alternative, a <u>Penn Central</u> regulatory taking.  <u>See</u> ECF No. 113, PageID #s 1625-26.  In short, these counts do not challenge the affordable housing condition itself.  Rather, Counts I and II challenge the LUC's response to Defendants' alleged failure to timely satisfy the condition.

Defendants fail to address the merits of Bridge's takings claims under <u>Penn Central</u> or <u>Lucas</u> and are not entitled to summary judgment as to Counts I and II.

This conclusion makes it unnecessary for this court to address Defendants' reliance on the decision in <u>California Bulding Industry Association v. City of San Jose</u>, 351 P.3d 974, 988 (Cal. 2015).  Defendants rely on <u>San Jose</u> to bolster their argument that, for example, "It is clear, however, that before even considering whether an exaction can satisfy the 'substantially advances' and 'roughly proportional' standards [of <u>Nollan</u>/<u>Dolan</u>], the inquiry must begin with a preliminary question--'whether government imposition of the exaction would constitute a taking."  ECF No. 116, PageID #s 3017-18.  Counts I and II are not pled as challenges to the imposition of an "exaction" in the form of the affordable housing condition.

## 2.    Statute of Limitations.

According to Defendants, Bridge's takings claims are time-barred.  <u>See</u> ECF No. 116, PageID # 3014.  This argument

16

requires this court to examine two issues: (1) which Hawaii statute of limitations applies to Bridge's remaining takings claims, Counts I and II; and (2) when the claims accrued, thereby triggering the running of the statute of limitations.

A statute of limitations generally does not begin to run until the claim ripens or accrues. See, e.g., Bay Area Laundry and Dry Cleaning Pension Trust Fund v. Ferbar Corp., 522 U.S. 192, 201 (1997). "[T]he standard rule [is] that the limitation period commences when the plaintiff has 'a complete and present' cause of action." Id. (citing Rawlings v. Ray, 312 U.S. 96, 97 (1941)). "[A] cause of action does not become 'complete and present' until the plaintiff can file suit and obtain relief." Ferbar Corp., 522 U.S. at 201.

"While state law determines the period of limitations, federal law determines when a cause of action accrues" or ripens. Cline v. Brusett, 661 F.2d 108, 110 (9th Cir. 1981).

Under federal law, a regulatory takings claim does not ripen until (1) "the government entity charged with implementing the regulations has reached a final decision regarding the application of the regulations to the property at issue," Williamson County Regional Planning Commission v. Hamilton Bank, 473 U.S. 172, 186 (1985), and (2) "the owner has unsuccessfully attempted to obtain just compensation through the procedures provided by the State for obtaining such compensation," id. at

17

195.  See also City of New Pulaski Co. v. Mayor and City Council of Baltimore, 217 F.3d 840, 843 (4th Cir. 2000) ("[A] takings claim is not ripe and the statute of limitations does not begin to run, unless the property owner has exhausted any available . . . compensation procedures.").

Under Williamson, Bridge's takings claims ripened on June 7, 2011, when Bridge satisfied the second prong by availing itself of state procedures for seeking just compensation.  On that date, Bridge filed its Complaint in state court, which included its state and federal takings claims.

The first prong of Williamson was earlier satisfied on April 25, 2011, when the LUC entered an order adopting the proposed findings of fact, conclusions of law, and decision and order reverting the land to its agricultural use classification.[1]

---

[1] Bridge contends that its claims accrued on April 30, 2009, the date of the LUC's "voice vote" to revert the land.  See ECF No. 113, PageID # 1640.  The LUC's voice vote was not a final order to revert the land to agricultural use.  After the vote, on June 5, 2009, the LUC granted Bridge's motion to stay entry of the decision and order and scheduled a one-day hearing for the submission of additional evidence on the order to show cause.  DW Aina Lea Dev., 134 Haw. at 198, 339 P.3d at 696.  On August 27, 2009, the LUC decided to rescind and vacate the order to show cause, conditioning this decision on Bridge's satisfaction of several conditions.  Id. at 199, 339 P.3d at 697.  However, during a hearing on July 1, 2010, the LUC voted, among other things, to keep the order to show cause pending.  Id. at 201, 339 P.3d at 699.  At a hearing on the order to show cause on January 20, 2011, the LUC again voted to revert the property, but it did not at that time issue any written order.  It was not until the LUC entered an order on April 25, 2011, that, pursuant to Williamson, the LUC could be said to have "reached a final decision regarding the application of the regulations to the

DW Aina Lea Dev., 134 Haw. at 203, 339 P.3d at 701.

Because Bridge's takings claims ripened at the same time that it filed its Complaint, this court need not determine whether the applicable statute of limitations for Bridge's federal and state takings claims is Haw. Rev. Stat. § 657-7, as Defendants suggest, or Haw. Rev. Stat. §§ 657-1(3) or (4), which Bridge urges the court to apply.  See ECF No. 116, PageID # 3023; ECF No. 113, PageID #s 1636-39.  Under any of these statutes of limitations, Bridge's takings claims have been timely asserted.

> **3.   Defendants Do Not Show That Bridge's Failure to Obtain a Valid EIS Independently Precludes Its Takings Claims.**

Relying on passages in Lingle, 544 U.S. at 538, and Lucas, 505 U.S. at 1026-32, Defendants argue that Bridge's failure to obtain a valid EIS independently precludes its takings claims as a matter of law.  See ECF No. 116, PageID # 3014.

In Lingle, the Court, summarizing its precedents on regulatory takings, stated, "We held in Lucas that the government must pay just compensation for such 'total regulatory takings,' except to the extent that 'background principles of nuisance and property law' independently restrict the owner's intended use of the property."  Lingle, 544 U.S. at 1026-1032.  According to Defendants, "The requirement of obtaining a valid EIS was a background principle of Hawai'i property law.  Bridge's failure

property at issue."  See 473 U.S. at 186.

to obtain a valid EIS independently restricted Bridge's intended use of its property." See ECF No. 116, PageID # 3029.

In Lucas, a landowner alleged that the application of the South Carolina Beachfront Management Act to his beachfront property prevented him from erecting any permanent habitable structures on his parcels of land. 505 U.S. at 1006-09. Lucas argued that the regulation deprived him of all economically beneficial use of his property, thereby effectuating a taking. Id. A state trial court ruled in Lucas's favor, concluding that Lucas's property had been "taken" as a result of the Act that rendered his land "valueless." Id. at 1009. The South Carolina Supreme Court reversed, holding that no compensation is owed under the Takings Clause for the deprivation of property value when the regulation is designed "to prevent serious public harm." Id. at 1010.

The United States Supreme Court, reversing the South Carolina Supreme Court, stated, "Where the State seeks to sustain regulation that deprives land of all economically beneficial use, we think it may resist compensation only if the logically antecedent inquiry into the nature of the owner's estate shows that the proscribed use interests were not part of his title to begin with." Id. at 1027. The Court reasoned:

> Any limitation so severe cannot be newly legislated or decreed (without compensation), but must inhere in the title itself, in the restrictions that background principles of

> the State's law of property and nuisance
> already place upon land ownership.  A law or
> decree with such an effect must, in other
> words, do no more than duplicate the result
> that could have been achieved in the courts--
> by adjacent landowners (or other uniquely
> affected persons) under the State's law of
> private nuisance, or by the State under its
> complementary power to abate nuisances that
> affect the public generally, or otherwise.

Id. at 1029.

The Court added, "The principal 'otherwise' that we have in mind is litigation absolving the State (or private parties) of liability for the destruction of 'real and personal property, in cases of actual necessity, to prevent the spreading of a fire' or to forestall other grave threats to the lives and property of others."  Id. at 1029 n.16 (citation omitted).  The Lucas Court recognized as other examples the denial of a permit to the owner of a lake-bed seeking to engage in a landfilling operation that would result in the flooding of others' land, or a requirement that the owner of a nuclear generating plant remove the plant when it is discovered that it sits on an earthquake fault line.  Id. at 1029.  The Court explained:

> Such regulatory action may well have the
> effect of eliminating the land's only
> economically productive use, but it does not
> proscribe a productive use that was
> previously permissible under relevant
> property and nuisance principles.  The use of
> these properties for what are now expressly
> prohibited purposes was always unlawful, and
> (subject to other constitutional limitations)
> it was open to the State at any point to make
> the implication of those background

21

> principles of nuisance and property law
> explicit.

Id. at 1029-30.

The principle espoused by Lucas is that a landowner is not entitled to compensation under the Takings Clause for the deprivation of a right the landowner never possessed in the first place.  A regulation that merely formalizes a prohibition already inherent in a state's background principles of nuisance and property law, therefore, does not take anything.  Id. at 1032 (holding that state must "identify background principles of nuisance and property law that prohibit the [proposed] uses" before state can "fairly claim that, in proscribing all such beneficial uses, the [regulation] is taking nothing").

In light of Lucas, "courts have ruled that the law of public trust and the law of custom are background principles because land held in public trust or by custom was never part of a landowner's title." Pascoag Reservoir & Dam, LLC v. Rhode Island, 217 F. Supp. 2d 206, 220-21 (D.R.I. 2002), aff'd, 337 F.3d 87 (1st Cir. 2003) (citing Stevens v. City of Cannon Beach, 854 P.2d 449, 456 (Or. 1993), and Orion Corp. v. State, 747 P.2d 1062, 1073 (Wash. 1987)).  The mere enactment of a regulation does not transform it into a background principle of law.  Cf. Palazzolo v. Rhode Island, 533 U.S. 606, 630 (2001) (rejecting proposition that "Lucas stands for the proposition that any new regulation, once enacted, becomes a background principle of

22

property law which cannot be challenged by those who acquire title after the enactment").

Defendants bear the burden of establishing that the EIS requirement, codified as Haw. Rev. Stat. § 343-5, is a "background principle of nuisance and property law."  See, e.g., Cebe Farms, Inc. v. United States, 116 Fed. Cl. 179, 196 (2014) ("the government bears the burden of 'identify[ing] background principles of nuisance and property law that prohibit' the plaintiff's use of the property" (quoting Lucas, 505 U.S. at 1031)).  Defendants do not carry their burden, as they offer no support for their argument that "[t]he requirement of obtaining a valid EIS was a background principle of Hawai'i property law." See ECF No. 116, PageID # 3029.  In short, Defendants fail to show that the EIS requirement is the type of proscriptive regulation that qualifies as a background principle of state nuisance or property law under Lucas.  Notably, Haw. Rev. Stat. § 343-5 is not a prohibition on land use based on principles of nuisance or property law.  The statute instead merely requires that an owner seek an assessment of the proposed use's potential environmental impact.

Lucas does not automatically preclude a landowner from recovering under a takings claim just because other regulations or requirements must be satisfied.  Bridge's failure to obtain a valid EIS may affect any analysis regarding what damages, if any,

it is entitled to as a result of the alleged taking.  See Palazzolo, 533 U.S. at 625 ("The mere allegation of entitlement to the value of an intensive use will not avail the landowner if the project would not have been allowed under other existing, legitimate land-use limitations.  When a taking has occurred, under accepted condemnation principles the owner's damages will be based upon the property's fair market value,--an inquiry which will turn, in part, on restrictions on use imposed by legitimate zoning or other regulatory limitations." (citations omitted)).  However, those fact-based arguments are not before the court on the present motion.

Defendants have failed to carry their burden of showing entitlement to summary judgment as a matter of law on Bridge's takings claims based on Bridge's failure to prepare a valid EIS.

### B.  Bridge's Vested-Rights Claim.

Defendants argue that Bridge's vested-rights claim for money damages is precluded by Allen v. City & County of Honolulu, 58 Haw. 432, 571 P.2d 328 (1977).  See ECF No. 116, PageID #s 3030-32.  This court agrees.

In Allen, the plaintiffs purchased oceanfront property intending to build a highrise condominium.  Plaintiffs spent substantial money on work necessary to obtain a building permit. 58 Haw. at 433-34, 571 P.2d at 328-29.  However, the City Council, in response to political pressure from nearby residents

24

to prevent the highrise construction, passed a zoning amendment, which reduced the maximum building height from 350 feet to 40 feet and effectively prohibited plaintiffs from developing the condominium.  Id. at 434 n.1, 571 P.2d at 329 n.1.

The plaintiffs brought claims for damages claiming vested rights and zoning estoppel, and arguing that they had incurred substantial nonrecoverable costs in reliance on the existing zoning and the reasonable probability that they would be issued a building permit.  Id. at 434, 571 P.2d at 329.  The Hawaii Supreme Court held that an award of money damages was not the proper remedy for either theory.  Id. at 437, 571 P.2d at 330 ("The remedy is to allow continued construction, not award damages.").  Given Allen, Bridge may not maintain a vested-rights claim for damages.

Bridge contends that Allen was abrogated by First English Evangelical Lutheran Church of Glendale v. County of Los Angeles, California, 482 U.S. 304 (1987).  In First English, a landowner filed a complaint in state court seeking damages based on allegations that an ordinance denied it "all use" of its land. 482 U.S. at 311.  The state court dismissed the regulatory takings claim for damages based on Agins v. Tiburon, 598 P.2d 25, 26 (Cal. 1979), which held that a landowner may challenge the constitutionality of the ordinance but "may not recover damages on the theory of inverse condemnation."  First English, 482 U.S.

25

at 309-10.  The state appellate courts affirmed.  <u>Id.</u> at 309.
The United States Supreme Court reversed, holding that the remedy
of just compensation is constitutionally required for a temporary
taking, even if the government subsequently rescinds the
regulation.  <u>Id.</u> at 321.

   <u>First English</u>'s holding is specific to takings claims.
<u>First English</u> does not abrogate <u>Allen</u>, which addressed claims
based on vested rights.  <u>First English</u> included no claim for
vested rights; vested rights support a separate theory under
state common law.  Consistent with <u>First English</u>, Bridge can, and
is, pursuing damages under its takings claims.  Under <u>Allen</u>,
however, Bridge cannot also seek monetary damages under the law
of vested rights.  Applying <u>Allen</u>, this court grants summary
judgment in favor of Defendants as to Bridge's vested-rights
claim for damages.

**V.**   **CONCLUSION.**

   The court grants Defendants' motion for summary
judgment with respect to Count IV and Count VIII.  The court
denies the motion with respect to the takings claims in Count I
and Count II, to the extent asserted against the LUC and Official
Capacity Commissioners.  Those takings claims in Counts I and II
are the only claims remaining for further adjudication.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 29, 2016.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Bridge Aina Le'a, LLC, v. State of Hawaii Land Use Commission, Civil No. 11 00414 SOM/BMK; ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUMMARY JUDGMENT

27