IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BRIDGE AINA LE'A, LLC, | CIVIL NO. 11-00414 SOM-KJM |
| Plaintiff, | ORDER AFFIRMING "ORDER GRANTING STATE OF HAWAII'S MOTION TO STRIKE AND EXCLUDE: (1) PLAINTIFF'S SUPPLEMENTAL EXPERT DISCLOSURE OF DAVID J. BURGER, CPA, SERVED ON JUNE 27, 2016 [DCK. 259]; AND (2) PLAINTIFF'S SECOND SUPPLEMENTAL EXPERT DISCLOSURE, FILED ON AUGUST 1, 2017 [DCK. 267]"; ORDER DENYING MOTION TO AMEND FOURTH AMENDED RULE 16 SCHEDULING ORDER [DKT. 170] FILED 5/5/16 |
| vs. | |
| STATE OF HAWAII LAND USE COMMISSION; VLADIMIR P. DEVENS, in his individual and official capacity; KYLE CHOCK, in his individual and official capacity; THOMAS CONTRADES, in his individual and official capacity; LISA M. JUDGE, in her individual and official capacity; NORMAND R. LEZY, in his individual and official capacity; NICHOLAS W. TEVES, JR., in his individual and official capacity; RONALD I. HELLER, in his individual and official capacity; DUANE KANUHA, in his official capacity; CHARLES JENCKS, in his official capacity; JOHN DOES 1-10; JANE DOES 1-10; DOE PARTNERSHIPS 1-10; DOE CORPORATIONS 1-10; DOE ENTITIES 2-10 and DOE GOVERNMENTAL UNITES 1-10, | |
| Defendants. | |

**ORDER AFFIRMING "ORDER GRANTING STATE OF HAWAII'S MOTION TO STRIKE AND EXCLUDE: (1) PLAINTIFF'S SUPPLEMENTAL EXPERT DISCLOSURE OF DAVID J. BURGER, CPA, SERVED ON JUNE 27, 2016 [DCK. 259]; AND (2) PLAINTIFF'S SECOND SUPPLEMENTAL EXPERT DISCLOSURE, FILED ON AUGUST 1, 2017 [DCK. 267]"; ORDER DENYING MOTION TO AMEND FOURTH AMENDED RULE 16 SCHEDULING ORDER [DKT. 170] FILED 5/5/16**

# I.      INTRODUCTION.

In the only claims remaining for adjudication, Plaintiff Bridge Aina Le`a, LLC ("Bridge Aina"), asserts temporary takings arising out of the reclassification of land in violation of the Fifth Amendment of the United States Constitution and Article I, section 20 of the Hawaii constitution. Before this court are (1) Bridge Aina's appeal from a magistrate judge's order striking and excluding two supplemental expert reports of David J. Burger, and (2) Bridge Aina's Motion to Amend the Fourth Amended Rule 16 Scheduling Order to extend the deadline for it to submit those same supplemental reports. The court affirms the magistrate judge's thorough and well-reasoned order striking and excluding the two Burger supplemental reports and denies the motion to amend the scheduling order to allow those reports.

# II.      BACKGROUND.

The factual background of this case has been discussed in the court's previous orders and is incorporated by reference. *See, e.g.,* ECF Nos. 131 and 283. In essence, this case arises out of a decision by Defendant State of Hawaii Land Use Commission (the "LUC") to reclassify a parcel of land from urban use to agricultural use. The LUC had conditioned the reclassification on the condition that sixty percent of the homes built would be "affordable" units. *Id.* When the LUC believed

2

that Bridge Aina had failed to abide by the conditions, the LUC issued an order to show cause as to why the land should not revert back to an agricultural classification.  Bridge Aina claims that Defendants caused a temporary taking under the federal and Hawaii constitutions for the period the property was subsequently reclassified to agricultural use.

The Third Amended Rule 16 Scheduling Order set April 1, 2016, as the discovery deadline.  *See* ECF No. 92, PageID # 1206.

The Third Amended Rule 16 Scheduling Order required Bridge Aina to disclose the identity and written report of any expert no later than November 20, 2015.  *See id.*  Bridge Aina timely served the expert report of David J. Burger, CPA, on the November 30, 2015, deadline for expert disclosures.  *See* Certificate of Service, ECF No. 100; Decl. of John D. Ferry III ¶ 3, ECF No. 284-2, PageID # 6199 (indicating date of service).

Burger, a certified public accountant, opined in his three-page report as to the rate of return that Bridge Aina would have earned had it been able to reinvest the proceeds from the sale of the property for the duration of the temporary taking, which Bridge Aina claimed ran from April 30, 2009 to November 25, 2014.  *See* ECF No. 284-3.  After discussing his resume and hourly rate, Burger opined as to the rate of return applicable, "focus[ing] on the rate of return on invested capital demonstrated by Bridge Capital, LLC, the parent company of Bridge

Aina Lea, LLC" and "its majority owned subsidiaries." *Id.*,

PageID # 6302. Burger's analysis reads in its entirety:

> For our analysis, the two definitions of return on invested capital that we used are as follows:
>
> - Net operating profit minus taxes, divided by invested capital
>
> - Net operating profit minus taxes, divided by total assets minus excess cash and non-interest bearing current liabilities
>
> For our analysis, the two definitions of invested capital that we used are as follows:
>
> - Total equity plus total interest bearing debt
>
> - Total assets minus excess cash minus non-interest bearing current liabilities
>
> With the two different definitions of return on invested capital, we have calculated the average return on invested capital for the years ended December 31, 2009 to 2014 as follows:
>
> ROIC Formula #1
>
> Net operating profit minus taxes, divided by invested capital #1        10.45%
>
> Net operating profit minus taxes, divided by invested capital #2        10.12%
>
> ROIC Formula #2
>
> Net operating profit minus taxes, divided by total assets minus excess cash and non-interest bearing current liabilities        10.12%
>
> Given that the second and third formulas above produce nearly identical results, and are based on audited financial statements, we feel it is both reasonable and realistic to

> use these formulas to derive the return on
> invested capital.  Accordingly, it is our
> opinion that the return on invested capital
> for Bridge Capital, LLC and its subsidiaries
> for the years ended December 31, 2009 to
> 2014 is 10.12%.

*Id.*, PageID # 6302-03.

On March 2, 2016, Defendants moved to exclude Burger's expert report, as well as the expert report of Steven D. Chee. *See* ECF No. 134.

On April 19, 2016, the audited financial data was produced by Bridge Aina to Defendants.  *See* ECF No. 286-3 ("Attached please see Bridge Capital, LLC's audited financial statements, relied upon by Dave Burger in his expert report. . . .").  This production of financial data occurred after the court ordered discovery deadline had passed on April 1, 2016.

On May 5, 2016, the court issued a Fourth Amended Rule 16 Scheduling Order, setting trial in this matter for June 15, 2016.  *See* ECF No. 170, PageID # 3837.  The order did not change the expert disclosure deadline of November 20, 2015, which had already passed.  *See id.*, PageID # 3838; ECF No. 92.  Nor did it change the discovery deadline of April 1, 2016, which had also passed.  *See id.*

On May 11, 2016, the court issued its usual prehearing Inclinations with respect to the motion to exclude expert reports.  *See* ECF No. 172.  The court stated:

> The court is inclined to rule that the Burger
> Report should be excluded because (1) Bridge
> Aina failed to comply with Rule 26(a)(2)(B)
> of the Federal Rules of Civil Procedure; and
> (2) the opinions expressed in the Burger
> Report are not sufficiently reliable under
> Rule 702 of the Federal Rules of Evidence and
> *Daubert v. Merrell Dow Pharmaceuticals, Inc.*,
> 509 U.S. 579 (1993).
>
> Under Rule 26(a)(2)(B) of the Federal Rules
> of Civil Procedure, an expert report must
> contain, among other things, "a complete
> statement of all opinions the witness will
> express and the basis and reasons for them";
> "the facts or data considered by the witness
> in forming them"; and "any exhibits that will
> be used to summarize or support them." Fed.
> R. Civ. P. 26(a)(2)(B).

*Id.*, PageID # 3883. The inclinations noted that Burger failed to

provide any of the documents underlying his opinions or the

calculations forming the basis for his conclusion that the rate

of return should be 10.12%. *Id.*, PageID # 3884. The

inclinations stated that, under Rule 37(c)(1) of the Federal

Rules of Civil Procedure, a party who fails to provide

information required by Rule 26(a) "is not allowed to use that

information or expert witness at trial, 'unless the failure was

substantially justified or is harmless.'" *Id.* The court stated

that it was "inclined to rule that Bridge Aina has not shown that

its failure to comply with Rule 26(a)(2)(B) was either harmless

or substantially justified." *Id.* The court also stated that it

was inclined to rule that Burger's opinions were not reliable for

purposes of Rule 702 of the Federal Rules of Evidence. *Id.*

On May 19, 2016, the court held a hearing on the motion to exclude expert reports and took the motion under advisement. *See* ECF Nos. 207, 209.

Before this court could rule on the motion to exclude the Burger report, Bridge Aina sought to disqualify this judge. *See* ECF No. 238. The court therefore refrained from ruling while another judge decided to motion to disqualify. *See* ECF No. 258. In light of the motion to disqualify, the court continued the trial date to July 27, 2016. *See* ECF No. 251. On June 9, 2016, the trial date was continued to August 1, 2016. *See* ECF No. 256. On June 21, 2016, Judge Alan C. Kay denied the motion to disqualify. *See* ECF No. 258.

On June 27, 2016, Bridge Aina sent Defendants Burger's purported "supplemental" expert report. *See* ECF No. 284-4 (copy of report); Ferry Decl. ¶ 4, ECF No. 284-2, PageID # 6299 (indicating that report was served on June 27, 2016). This "supplement" said:

> In reviewing our November 20, 2015, report, we see that we only presented the results of the calculations and not the detailed calculations themselves. Had we presented the detailed calculations, we feel that the readers of the report would have been able to better understand the results.

ECF No. 284-4, PageID # 6304. The "supplement" went on to explain that the second and third formulas contained in the original report were different because the third accounted for

income tax implications.  The "supplement" then stated, however, that Bridge Capital, Bridge Aina's parent company (on which Burger was basing his rate of return), had no income taxes.  *See id.*, PageID Nos. 6304-05.

On July 5, 2016, the parties notified the court that they had settled this case pending legislative approval of the settlement payment.  *See* ECF No. 262.  The court therefore terminated Defendant's motion to exclude Berger's expert report without ruling on it.

On May 30, 2017, Defendants notified the court that the legislature had not approved the settlement.  *See* ECF No. 264.  The court therefore set trial in this case for March 13, 2018.  *See* ECF No. 265.

On August 1, 2017, Bridge Aina served Defendants with Berger's second supplemental expert report.  *See* Ferry Decl. ¶ 5, ECF No. 284-2, PageID # 6299; ECF No. 284-5 (copy of report).  In Burger's second "supplemental" report, he noted that he had reviewed the court's inclinations and transcript of the hearing with respect to the motion to exclude his report.  He stated that he would "address" this court's concerns in that second "supplemental" report.  ECF No. 284-5, PageID # 6310.

In response to this court's concerns that his original report had failed to present any of the financial statements or calculations, Burger claimed that calculations were presented in

8

the "supplemental" report of June 27, 2016, which was served

after the discovery deadline had passed. *See id.* Burger then

stated that he was including with the second "supplemental"

report

> summarized balance sheets and statements of
> income and comprehensive income for Bridge
> Capital . . . for the years ended December
> 31, 2009 to 2014. . . . Further, we are
> providing . . . our calculations of return on
> invested capital using many definitions.
> These are the financial documents that we
> relied upon to formulate our opinions
> contained in this letter and our prior
> reports.

*Id.*

Burger's second "supplemental" report then addressed

this court's concern that his second and third formulas were

identical. He conceded that the denominators of the formulas

were "the same." *Id.*, PageID # 6312. He reiterated what he had

said in the first "supplemental" report–-that the numerators in

the second and third formulas were different because the third

formula took into account income taxes. He again noted that,

because Bridge Capital was not subject to income taxes, the

numerators in the second and third formulas were the same,

meaning that the second and third formulas produced identical

results. *Id.*, PageID # 6312-13.

> Burger then stated:
>
> Our November 20, 2015 letter report only
> included two definitions respectively for
> "return on invested capital" and for

"invested capital". We did, however, perform
our original calculations using all of the
definitions below, but we only included the
two most credible and conservative results in
our letter report. . . .

We will show the calculations of return on
invested capital under twelve different
combinations of these definitions. We
actually performed these calculations in
arriving at the result in our November 20,
2015, report but we did not provide these
calculations with that report.

*Id.*, PageID # 6312-13. The second "supplemental" report then

discussed for two single-spaced pages the definitions of return

on invested capital and invested capital. *Id.*, PageID # 6314-16.

It then listed two single-spaced pages of "figures" it relied on.

*Id.*, PageID # 6316-18.

III.    **THE MAGISTRATE JUDGE NEITHER CLEARLY ERRED IN EXCLUDING
        BERGER'S "SUPPLEMENTAL" REPORTS, NOR RULED CONTRARY TO
        LAW.**

        **A.    Standard of Review.**

        Under Local Rule 74.1 and 28 U.S.C. § 636(b)(1)(A), a

district judge may set aside a magistrate judge's nondispositive

order if it is "clearly erroneous or contrary to law." *See Bhan*

*v. NME Hosp., Inc.*, 929 F.2d 1404, 1414-15 (9th Cir. 1991). "The

clearly erroneous standard applies to the magistrate judge's

factual findings while the contrary to law standard applies to

the magistrate judge's legal conclusions, which are reviewed de

novo." *Lovell v. United Airlines, Inc.*, 728 F. Supp. 2d 1096,

1100 (D. Haw. 2010) (quotation marks and citations omitted).

The threshold of the "clearly erroneous" test is high. "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *Burdick v. Comm'r Internal Revenue Serv.*, 979 F.2d 1369, 1370 (9th Cir. 1992) ("A finding of fact is clearly erroneous if we have a definite and firm conviction that a mistake has been committed.").

"A decision is 'contrary to law' if it applies an incorrect legal standard or fails to consider an element of the applicable standard." *Na Pali Haweo Cmty. Ass'n v. Grande*, 252 F.R.D. 672, 674 (D. Haw. 2008) (quotation marks and citations omitted).

## B.    Burger's "Supplements" Are Reactions to This Court's Inclinations.

On May 11, 2016, this court stated that it was inclined to rule that Burger's original report should be excluded because Bridge Aina had failed to comply with Rule 26(a)(2)(B) of the Federal Rules of Civil Procedure and because the opinions expressed in it were not sufficiently reliable under Rule 702 of the Federal Rules of Evidence and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993).

## 1. Expert Disclosures Under the Federal Rules of Civil Procedure.

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert opinions. Rule 26(a)(2)(B) mandates that, in addition to disclosing the identity of the expert witness, the witness must produce a written report containing:

> (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
>
> (ii) the facts or data considered by the witness in forming them;
>
> (iii) any exhibits that will be used to summarize or support them;
>
> (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
>
> (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
>
> (vi) a statement of the compensation to be paid for the study and testimony in the case.

The consequences for a litigant's failure to "provide information or identify a witness as required by Rule 26(a)" are set forth in Federal Rule of Civil Procedure 37(c). In relevant part, Federal Rule 37(c)(1) states, "If a party fails to provide information . . . required by Rule 26(a) . . . , the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P.

37(c)(1).  "Rule 37(c)(1) gives teeth to these requirements by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed."  *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001); *accord Torres v. City of Los Angeles,* 548 F.3d 1197, 1212 (9th Cir. 2008).  The burden is on the potentially sanctioned party to prove harmlessness or justification.  *See Yeti*, 259 F.3d at 1107.

The Ninth Circuit "give[s] particularly wide latitude to the district court's discretion to issue sanctions under Rule 37(c)(1)."  *Yeti*, 259 F.3d at 1106.

### 2.   Rule 702 of the Federal Rules of Evidence and *Daubert/Kumho* Standard.

The party submitting opinions of an expert has the burden of demonstrating the admissibility of the expert's opinions.  *Lust By & Through Lust v. Merrell Dow Pharms., Inc.*, 89 F.3d 594, 598 (9th Cir. 1996) ("It is the proponent of the expert who has the burden of proving admissibility.").

Rule 702 of the Federal Rules of Evidence governs the admissibility of expert evidence in this court.  *See Clausen v. M/V New Carissa*, 339 F.3d 1049, 1055 (9th Cir. 2003).  Rule 702 allows the admission of expert testimony when scientific, technical, or other specialized knowledge will help the trier of

fact understand the evidence or determine a fact in issue.  Fed.
R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509
U.S. 579 (1993), the Supreme Court, focusing on the admissibility
of scientific expert testimony, found that such testimony is
admissible only if it is both relevant and reliable.  In *Kumho
Tire Co. v. Carmichael*, 526 U.S. 137, 146 (1999), the Supreme
Court explained that the presiding judge's role (or gatekeeping
function) in ensuring the reliability and relevancy of expert
testimony extends to all expert testimony.  *See also Clausen*, 339
F.3d at 1056 (noting that district courts are "charged . . . with
the responsibility of ensuring that proffered [expert] evidence
is both relevant and reliable").

*Daubert* outlined nonexclusive factors, such as testing,
peer review and publication, error rates, and acceptance in the
relevant scientific community, some or all of which might help a
court to determine the reliability of a particular scientific
theory or technique.  509 U.S. at 593-94.  The *Daubert* test is
"flexible," and the "list of specific factors neither necessarily
nor exclusively applies to all experts or in every case.  Rather,
the law grants a district court the same broad latitude when it
decides how to determine reliability as it enjoys in respect to
its ultimate reliability determination."  *Kumho*, 526 U.S. at 141;
*see also Living Designs, Inc. v. E.I. Dupont de Nemours & Co.*,

431 F.3d 353, 369 (9ᵗʰ Cir. 2005) (noting that the inquiry envisioned by Rule 702 is a flexible one that must be tied to the facts of each particular case).

"[T]he test under *Daubert* is not the correctness of the expert's conclusions but the soundness of his methodology." *Primiano v. Cook*, 598 F.3d 558, 564-65 (9ᵗʰ Cir. 2010), *as amended* (Apr. 27, 2010). "Under *Daubert*, the district judge is 'a gatekeeper, not a fact finder.' When an expert meets the threshold established by Rule 702 as explained in *Daubert*, the expert may testify and the jury decides how much weight to give that testimony." *Primiano v. Cook*, 598 F.3d 558, 564-65 (9ᵗʰ Cir. 2010). "A trial court not only has broad latitude in determining whether an expert's testimony is reliable, but also in deciding how to determine the testimony's reliability."• *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 834 (9ᵗʰ Cir. 2011 (quotation marks and citation omitted).

### 3. Bridge Aina Knew That This Court Was Inclined to Rule That Burger's Original Report Had Failed to Comply With Rule 26(a)(2)(B) and That Bridge Aina Had Failed to Demonstrate its Reliableness.

This court told the parties that it was inclined to rule that Burger's original report had not met the requirements of Rule 26(a)(2)(B). Specifically, this court was concerned that the report did not contain "a complete statement of all opinions the witness will express and the basis and reasons for them."

15

Fed. R. Civ. P. 26(a)(2)(B)(i).  The court was also concerned that it lacked "the facts or data considered by the witness in forming [the opinions]" and "any exhibits that will be used to summarize or support them."  Fed. R. Civ. P. 26(a)(2)(B)(ii), (iii).

Burger's original report states that it "relied on audited financial statements [of Bridge Capital and its subsidiaries] for the years ended December 31, 2009 through 2014," but the Report did not provide any of these documents. *See* ECF No. 134-3.  The only document attached to Burger's Report was his curriculum vitae.  *See id.*  The audited financial data was subsequently produced to Defendants on April 19, 2016, which was after the discovery deadline of April 1, 2016.  *See* ECF No. 286-3.

Nor did Burger include any of the underlying calculations that he relied on in opining that the applicable rate was 10.12 percent.  Because the court was inclined to rule that Bridge Aina had failed to demonstrate that its failure to comply with Rule 26(a) was harmless or justified, the court was inclined to exclude Burger's original report Rule 37(c).

The court was inclined to reject Bridge Aina's contention that any deficiencies in the original Burger report were harmless because the State could have cured them by deposing Burger.  The court was also inclined to reject Bridge Aina's

contention that any failure to include the 2009-14 audited financial statements with the original Burger report was rendered harmless by Bridge Aina's later production of the financial statements. *See* ECF No. 168, PageID # 3493. Both the expert report deadline and the general discovery deadline had passed by the time Defendants received the financial statements on April 19, 2016. Bridge Aina's belated production meant that Defendants could not have identified a rebuttal expert witness based on its review of the financial statements. Nor could the State have deposed Burger about the audited financial statements. Under these circumstances, the court was inclined to rule that Bridge Aina's belated production did not render the omission of the financial statements in the Burger Report harmless.

The court was also inclined to rule that Bridge Aina's belated production of financial statements did not remedy the original Burger report's failure to disclose the calculations that Burger relied on in opining as to the proper rate of return, as his report did not include a single calculation.

> A damage figure in an expert report cannot satisfy Rule 26(a)(2)(B) simply by stating a conclusory figure and then attaching documents that purportedly support that figure. Rather, the report must supply actual calculations with detailed and complete information elucidating how the expert arrived at the damage figure.

*Great White Bear, LLC v. Mervyns, LLC*, 2008 WL 2220662 at *3 (S.D.N.Y. May 27, 2008).

The court was also inclined to rule that the original Burger report did not use a sufficiently reliable method to determine Bridge Aina's prospective rate of return. Burger uses the rate of return on investment of Bridge Capital, Bridge Aina's parent company, to calculate Bridge Aina's potential rate of return. See ECF No. 284-3. The court, however, was inclined to rule that a parent company's financial performance generally is not a reliable indicator of how a subsidiary would have performed. *Cf. N. States Power Co. v. City of Ashland, Wis.*, 2015 WL 1745880 at *10 (W.D. Wis. Apr. 16, 2015) (excluding in limine finances of plaintiff's parent company as irrelevant); *Salinas v. State Farm Fire & Cas. Co.*, 2012 WL 5187996 at *4 (S.D. Tex. Feb. 23, 2012) ("'relevant financial data must be specific to the defendant, not its parent'" (citation omitted)); *In re Welding Fume Products Liab. Litig.*, 2010 WL 7699456 at *49 (N.D. Ohio June 4, 2010) (noting expert's analysis of financial condition of defendant companies' parents, not defendants, made opinion irrelevant).

The court was also inclined to view the original Burger report as unreliable. Its overarching opinion was that Bridge Aina's reasonable rate of return would have been 10.12 percent because that was the figure produced by two allegedly different formulas. The court was inclined to rule that the two

"different" formulas producing 10.12% were actually iterations of the same formula.

Burger's "supplemental" report of June 27, 2016, demonstrates the correctness of this court's inclination that the second and third formulas were actually the same. In that "supplemental" report, ECF No. 284-4, Burger purports to clarify the original report. Burger states that the first formula leading to the 10.12% rate is based on the company's net operating profit minus taxes. *Id.*, PageID # 6304 ("You would subtract the income tax figure from the operating profit figure, and you would have the numerator"). Burger says that this does not take into account the income tax implications of nonoperating profits. He says that the second formula leading to the 10.12% rate is based on after-tax operating earnings. He says that the two calculations "will have different results if the entity has non-operating income and expenses, unless the entity itself is not subject to income taxes. In the case of Bridge Capital, since it is an LLC, there are no income taxes at the entity level." *Id.*, PageID # 6305. In other words, the original report chose the 10.12% rate because the second and third formulas "produce[d] nearly identical results," but those results were identical because Bridge Capital's absence of income taxes made the formulas the same. That the same formulas yielded the same results was no reason to say the result was correct.

### C. The Magistrate Judge's Determination that the Supplemental Report and the Second Supplemental Report Were Not Actually Supplements is Neither Clearly Erroneous Nor Contrary to Law.

Rule 26(a)(2)(E) of the Federal Rules of Civil Procedure requires parties to supplement expert disclosures "when required under Rule 26(e)." Rule 26(e)(1)(A) requires supplementation with respect to disclosures under Rule 26(a) when "the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process." Rule 26(e)(2) states that, with respect to expert reports disclosed under Rule 26(a)(2)(B), "[a]ny additions or changes to this information must be disclosed by the time the party's pretrial disclosures under Rule 26(a)(3) are due," or 30 days before trial, unless the court orders otherwise.

Because trial is currently set for March 13, 2018, *see* ECF No. 265, the "supplemental" report dated June 27, 2016, and the second "supplemental" report dated July 15, 2017, would be timely if they are considered supplements for purposes of Rule 26(e). This court agrees with the magistrate judge that the reports were not truly supplements.

"A supplemental expert report that states additional opinions or rationales or seeks to strengthen or deepen opinions expressed in the original expert report exceeds the bounds of

permissible supplementation and is subject to exclusion under Rule 37(c)." *Matsuura v. E.I. du Pont De Nemours & Co.*, 2007 WL 433546 at *3 (D. Haw. Feb. 6, 2007) (quotation marks and citation omitted)). Moreover, "[t]he duty to supplement does not provide the opportunity to add information that should have been initially provided under Rule 26(a); rather, supplementation under the Rules means correcting inaccuracies, or filling the interstices of an incomplete report based on information that was not available at the time of the initial disclosure." *Durham v. Cty. of Maui*, 2011 WL 2532423, at *8 (D. Haw. June 23, 2011) (quotation marks, citations, and alterations omitted).

　　　　*Keener v. United States*, 181 F.R.D. 639 (D. Mont. 1998), is instructive. In *Keener*, the district court determined that the defendant's expert's report had failed to satisfy the requirements of Rule 26(a)(2)(B). When the defendant provided a second disclosure styled as a "supplement" for purposes of Rule 26(e), the court called that disclosure a "disingenuous effort." *Id.* at 640. The court stated, "What is set forth in the second report is the information, reasoning and opinions that Rule 26 requires be disclosed in the critical initial disclosure." Burger's "supplemental" and second "supplemental" reports present the same problem identified in *Keener*, even though Burger's report does not involve the presentation of a new opinion.

Burger's original report did not comply with the requirements of Rule 26(a)(2)(B). Although it stated its ultimate opinion that the rate of return should be 10.12%, it completely failed to provide "the basis and reasons" for that opinion or "the facts or data considered" in reaching that opinion. Fed. R. Civ. P. 26(a)(2)(B)(i) and (ii). It also failed to provide "any exhibits that will be used to summarize or support" the opinions. Fed. R. Civ. P. 26(a)(2)(B)(iii). Only after this court informed the parties that it was inclined to exclude the Burger report did Burger attempt to "supplement" his original report to cure the identified deficiencies. Bridge Aina is not seeking only to "fill in" some missing information. Instead, the original disclosure was so deficient that the "supplements" were actually the first attempt to comply with Rule 26(a)(2)(B).

In the "supplement" of June 27, 2016, for example, Burger states:

> In reviewing our November 20, 2015, report, we see that we only presented the results of the calculations and not the detailed calculations themselves. Had we presented the detailed calculations, we feel that the readers of the report would have been able to better understand the results.

ECF No. 284-4, PageID # 6304. Burger thus recognized that his original report "only presented the results." *Id.* Just as an expert report regarding causation that simply states that a

defendant caused the harm would, without more, be insufficient, Burger's report was deficient. It presented only his conclusion, with no detail as to how that conclusion was reached. Bridge Aina is correct that the "results" or opinion regarding a 10.12% rate did not change. The "supplements" did not present new theories or opinions. But the "supplements" did not simply provide "additional information" that was missing from the original report. They instead were the nuts and bolts of the report that were so untimely disclosed that it deprived Defendants of the opportunity to take discovery about them.

In the second "supplemental" report, Burger notes that this court, in its inclinations with respect to the motion to exclude his report, had expressed a concern that the report had failed to provide financial statements or the calculations leading to his opinion. He stated that his "supplemental" report of June 27, 2016, provided the calculations and that his second "supplemental" report was providing the balance sheets and statements of income and expenses of Bridge Capital. He said, "These are the financial documents that we relied upon to formulate our opinions contained in this letter and our prior reports." *Id.* Burger therefore concedes that the financial statements and calculations had not been provided with his original report. He notes that his calculations had been made at the time of the report, but were not included in the report.

*Id.*, PageID # 6313. Under these circumstances, Burger's "supplemental" reports were the disclosures he should have made under Rule 26(a)(2)(B), not "supplements" to those disclosures under Rule 26(e). Burger's ultimate opinion that the rate of return should be 10.12% may not have changed, but Burger improperly attempted to add information that was available to him at the time of his original, incomplete report. The disclosures were therefore not "supplements" and were untimely.

> **D.    The Magistrate Judge Correctly Excluded the Untimely Expert Disclosures Under Rule 37 of the Federal Rules of Civil Procedure.**

Rule 37(c)(1) of the Federal Rules of Civil Procedure provides:

> If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.

Fed. R. Civ. P. 37. "Rule 37(c)(1) is a 'self-executing,' 'automatic' sanction designed to provide a strong inducement for disclosure." *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817, 827 (9th Cir. 2011) (quoting Fed. R. Civ. P. 37 advisory committee's note (1993)). The only way to avoid the self-executing, automatic sanction is to demonstrate that the failure to provide information required by Rule 26(a) or (e) was "substantially justified or harmless." *Id.* (citing Fed. R. Civ.

24

P. 37(c)(1)).  The burden is on the party facing Rule 37(c)

sanctions to prove its failure to comply with Rule 26(a) was

"substantially justified or harmless.  *See Yeti*, 259 F.3d at

1107; *see also Rembrandt Vision Techs., L.P. v. Johnson & Johnson*

*Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013); *Niemeyer*

*v. Ford Motor Co.*, 2012 WL 135702 at *2 (D. Nev. Jan. 17, 2012).

        The Ninth Circuit has advised that, in determining

whether a violation of a discovery deadline is justified or

harmless, four factors should be considered:

> (1) prejudice or surprise to the party
> against whom the evidence is offered; (2) the
> ability of that party to cure the prejudice;
> (3) the likelihood of disruption of the
> trial; and (4) bad faith or willfulness
> involved in not timely disclosing the
> evidence.

*Lanard Toys v. Novelty, Inc.*, 375 Fed. Appx. 705, 713 (9th Cir.

2010).  The court notes that Bridge Aina is not claiming that

Burger's failure to comply with the expert disclosure

requirements was justified.  The issue is therefore whether

Bridge Aina demonstrates that its failure to timely comply with

the expert disclosure requirements was harmless.  Bridge Aina

does not make the required showing of harmlessness, and the

magistrate judge did not err in excluding Burger's two

"supplemental" reports.

## 1.   **Burger's Belated Disclosures Prejudiced Defendants.**

Although Bridge Aina argues that Defendants were not prejudiced by the timing of Burger's "supplemental" disclosures, it concedes that belated disclosures shortly before trial do create prejudice.  *See* ECF No. 284-1, PageID # 6289.

On May 5, 2016, the court issued a Fourth Amended Rule 16 Scheduling Order, setting trial in this matter for June 15, 2016.  *See* ECF No. 170, PageID # 3837.  The order did not change the expert disclosure deadline of November 20, 2015, which had had already passed.  *See id.*, PageID # 3838; ECF No. 92.  Nor did it change the April 1, 2016, discovery deadline.  *See id.*, PageID # 3838.

On June 9, 2016, the trial date in this matter was continued to August 1, 2016.  *See* ECF No. 256.  On June 27, 2016, Bridge Aina sent Defendants Burger's purported "supplemental" expert report.  *See* ECF No. 284-4.  On July 5, 2016, the parties notified the court that they had settled this case pending legislative approval of the settlement payment.  *See* ECF No. 262. On May 30, 2017, Defendants notified the court that the legislature had not approved the settlement.  *See* ECF No. 264. The court therefore set a new trial date of March 13, 2018.  See ECF No. 265.  On August 1, 2017, Bridge Aina served Defendants

with Berger's second supplemental expert report.  *See* ECF No.
284-5.

Berger's original report of November 20, 2015, was
timely produced to Defendants.  Had this report complied with
Rule 26(a)(2)(B), Defendants could have deposed Burger about the
facts and data underlying his ultimate opinion that the rate of
return should be 10.12%, as the discovery deadline was not until
April 1, 2016.  But the report did not comply with Rule
26(a)(2)(B) and instead stated only its ultimate opinion in a
conclusory manner.  Burger's calculations and data were given to
Defendants in "supplements" of June 27, 2016, and August 1, 2017,
and via an e-mail of April 19, 2016, all of which occurred after
the discovery deadline had passed.  In fact, most of the bases of
Burger's opinions were first given to Defendants after the date
on which trial had been scheduled in August 2016.

While the settlement fell through and a new trial has
been set, the "supplemental" disclosures continue to prejudice
Defendants.  The time for discovery has not been reopened.  Under
these circumstances, Bridge Aina's untimely expert disclosure
prejudices Defendants.  *See Wong v. Regents of Univ. of Cal.*, 410
F.3d 1052, 1062 (9th Cir. 2005) ("Disruption to the schedule of
the court and other parties in that manner is not harmless.
Courts set such schedules to permit the court and the parties to
deal with cases in a thorough and orderly manner, and they must

be allowed to enforce them, unless there are good reasons not to.").

Bridge Aina makes much of Defendants' failure to depose Burger as to the bases for his ultimate opinion. *See* ECF No. 284-1, PageID # 6271 ("The State never subpoenaed Burger's records or noticed his deposition."); *id.*, PageID # 6274 ("the Burger Supplements consisted of the same opinions using the same methods—it simply provided additional details and calculations (which frankly the State would have discovered back in 2016 if Burger was subpoenaed or deposed)"); *id.*, PageID # 6290 ("The Burger Supplements provide additional information that the State could have gathered through the deposition that it decided not to take (and apparently, now refuses to take)."); *id.*, PageID # 6290 ("The State chose not to depose Mr. Burger.").  But Rule 26(a)(2)(B) was designed to reduce the need for costly expert depositions.  <u>See</u> 1993 Comment to Fed. R. Civ. P. 26 ("The requirement under subdivision (a)(2)(B) of a complete and detailed report of the expected testimony of certain forensic experts may, moreover, eliminate the need for some such depositions or at least reduce the length of the depositions.").  Defendants chose not to take Burger's deposition to figure out what the bases of his report were and instead sought to exclude his report as deficient.  This was a reasoned decision.  Defendants were under no obligation to allow Burger to fix his

report through deposition testimony. The rules placed the burden on Bridge Aina to properly disclose its expert's opinions. Defendants were not required to use the discovery process to figure out what Defendants were required to disclose.

Defendants formulated their trial strategy based on Burger's original report. Not only did they decide not to depose Burger, they decided which experts they needed or did not need in light of Burger's original report. They would need to rethink their trial strategy and possibly seek out an additional expert if Burger were allowed to present his two supplemental reports. This would clearly be prejudicial to Defendants.

The magistrate judge committed no error in determining that the prejudice factor weighs in favor of a ruling that Bridge Aina's violation of the expert disclosure deadline was not harmless.

## 2. Ability to Cure the Prejudice.

Bridge Aina argues that any prejudice to Defendants can be cured by lesser sanctions such as reopening the discovery deadline to allow Defendants to depose Burger about his opinions and to allow Defendants to have an expert rebut those opinions. This court, of course, could reopen discovery and allow Burger's deposition as well as allow Defendants to rebut Burger's belated disclosures with their own expert. This court could even require Bridge Aina to reimburse Defendants for any costs and fees caused

by the reopening of the discovery deadline as a result of the belated disclosures. But the court has not reopened discovery and, as discussed below, declines to do so under the circumstances.

Just because the parties may now have additional time to conduct additional discovery that would alleviate the prejudicial effect of Bridge Aina's failure to comply with its discovery obligations does not mean that the court should lift the discovery deadline. This case was essentially on the eve of trial when the parties informed the court that the case had been settled. This means that all discovery had been completed and the parties were ready for trial. Forcing Defendants to adjust their trial plans at this late date (even if the trial date is months away) would prejudice Defendants. As the Magistrate judge stated, "Bridge's arguments trivialize the considerable additional effort Defendants would have to expend due to Bridge's untimeliness. Rather than persuade this Court that prejudice can be cured, Bridge's arguments in fact highlight the prejudice Defendants will suffer because of Bridge's untimeliness." ECF No. 283, PageID # 6254.

This case is ready for trial. The parties and the court are just awaiting the trial date. The court will not reopen discovery simply to give Bridge Aina a chance to do that which it wishes it had done earlier, when the rules allowed for

it.  Although lesser sanctions exist, this court finds no error
in the magistrate judge's determination that those lesser
sanctions are not warranted under the circumstances presented
here.  *Cf. R&R Sails, Inc. v. Ins. Co. of Pa.*, 673 F.3d 1240,
1247-48 (9th Cir. 2012) (stating that when a sanction amounts to
dismissal of a claim, a court must consider whether the conduct
involved willfulness, fault, or bad faith, as well as the
availability of lesser sanctions).

The "ability to cure" factor therefore weighs in favor
of determining that Bridge Aina's violation of the expert
disclosure deadline was not harmless.

### 3.    The Likelihood of Disrupting Trial.

This court has no doubt that, if it allowed the
parties to conduct additional discovery, that discovery would not
disrupt the actual trial.  This factor therefore weighs in favor
of determining that Bridge Aina's violation of the expert
disclosure deadline was harmless.

### 4.    Bad Faith or Willfulness.

The magistrate judge ruled that "there is no evidence
that Bridge's withholding of the additional information now
contained in the Supplemental Expert Disclosures was in bad faith
or willful."  ECF No. 283, PageID # 6256.  This court similarly
sees no evidence that Burger's failure to timely comply with the
requirements for expert disclosures was in bad faith.  It is less

31

apparent that there is no evidence of willfulness.  Burger choose
to submit his original report with only his conclusions, not the
underlying data or calculations that he admittedly had in his
possession.  Bridge Aina was represented by experienced counsel
who undoubtedly knew the expert disclosure requirements.  Given
what Bridge Aina says is the importance of Burger's expert
opinion to its case, it should have been motivated to comply with
the expert witness disclosure requirements.  Bridge Aina may well
have willfully failed to make sufficient original expert
disclosures; Bridge Aina clearly acted deliberately in filing
untimely supplements seeking to comply with the expert disclosure
requirements.  This court is not ruling that the magistrate judge
clearly erred in finding no evidence of willfulness, but
regardless of whether Bridge Aina acted willfully or not, the
magistrate judge correctly concluded that this factor did not
outweigh the factors favoring Defendants on the present issue.
This factor weighs in favor of determining that Bridge Aina's
violation of the expert disclosure deadline was not harmless.

**IV.    BRIDGE AINA'S MOTION TO AMEND THE FOURTH AMENDED RULE
         16 SCHEDULING ORDER IS DENIED.**

On November 8, 2017, Bridge Aina filed a Motion to
Amend Fourth Amended Rule 16 Scheduling Order.  *See* ECF No. 286.
This motion seeks to undo the magistrate judge's order excluding
Burger's "supplemental" reports by seeking an amendment of the
Fourth Amended Rule 16 Scheduling Order "to extend the deadline

for Bridge to submit a supplemental expert disclosure by is rate
of return expert David. J. Burger, CPA, and to all Defendants to
conduct limited discovery and serve a supplemental rebuttal
report as necessary." *Id.*, PageID # 6359.  Although this motion
was initially referred to the magistrate judge for adjudication,
this court denies the motion without a hearing pursuant to Local
Rule 7.2(d) as it is clearly related to the appeal regarding the
same subject matter.

Pursuant to Rule 16 "[a] schedule may be modified only
for good cause and with the judge's consent." *Johnson v. Mammoth*
*Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1991).  "Rule
16(b)'s 'good cause' standard primarily considers the diligence
of the party seeking the amendment." *Id.* at 609.  Accordingly,
this court "may modify the pretrial schedule if it cannot
reasonably be met despite the diligence of the party seeking the
extension." *Id.* (citations and internal quotations omitted).
"Although the existence or degree of prejudice to the party
opposing the modification might supply additional reasons to deny
a motion, the focus of the inquiry is upon the moving party's
reasons for seeking modification." *Id.*  If the party seeking
modification was not diligent, "the inquiry should end." *Id.*
Central to the required showing of diligence under Rule 16 "is
whether the movant discharged [its] obligation under Rule 16 to
collaborate with the district court in managing the case."

*Jackson v. Laureate, Inc.*,186 F.R.D. 605, 608 (E.D. Cal. 1999)
(citing *In re San Juan Dupont Plaza Hotel Fire Litig.*, 111 F.3d
220, 228 (1ˢᵗ Cir. 1997)). "As Rule 16 recognizes, scheduling
orders are at the heart of case management," *Koplove v. Ford
Motor Co.*, 795 F.2d 15, 18 (3d Cir. 1986), and are intended to
alleviate case management problems, *Johnson*, 975 F.2d at 610.
"Good-faith compliance with Civil Rule 16 plays an important role
in this process." *Veranda Beach Club Ltd. P'ship v. W. Sur. Co.*,
936 F.2d 1364, 1371 (1ˢᵗ Cir. 1991).

Bridge Aina claims that it first learned of possible
deficiencies in Burger's original report when Defendants filed
their motion to exclude the report on March 2, 2016. *See* ECF No.
284-1 ("Bridge learned of the State's complaints through its
Motion to Exclude."). Bridge did not diligently seek to cure any
possible deficiencies before the April 1, 2016, discovery
deadline, even though it knew Defendants were seeking to exclude
Burger's opinions because of those deficiencies. Instead, it
waited until well after that deadline had past to provide the
nuts and bolts of Burger's expert report and did so only after
this court had informed it that the court was inclined to exclude
the opinions. Bridge Aina now seeks to reopen the discovery
process to save itself from the consequences of its lack of
diligence. The court disagrees with Bridge Aina's
characterization that it acted quickly. Instead, the court rules

that Bridge Aina does not establish a basis for amending the
scheduling order.  Even if there would be sufficient time to
conduct discovery, and even if Bridge Aina is willing to bear the
costs of that discovery, that alone is insufficient to
demonstrate the requisite "good cause."

Bridge Aina argues that it acted diligently because it
produced the relevant financial data on April 19, 2016, after the
discovery deadline but before the deposition of its manager,
which appears to have been taken by agreement after the deadline.
*See* ECF No. 286-1, PageID # 6371.  Bridge therefore says that the
production of financial data occurred "while discovery was still
ongoing."  *Id.*  This statement is misleading.  While the
information may have been produced before the deposition of
Bridge Aina's manager, it was not produced early enough to allow
Defendants to depose Burger about the data underlying his
opinions.  The court therefore disagrees that the belated
production of financial statements demonstrates good faith simply
because Defendants had the opportunity to ask a different witness
about those statements.  Bridge Aina knew of the scheduling
deadlines.  It chose to ignore them.  That conduct does not
justify the amendment of the deadlines Bridge Aina ignored.

Because Bridge Aina has failed to show that it was
diligent in providing what are actually its first compliance with
the expert disclosure requirements, and because of the prejudice

Defendants would suffer as described above, the court denies the motion.  Bridge Aina fails to demonstrate "good cause" to amend the scheduling order to excuse its untimely disclosures.

## V.        CONCLUSION.

The court affirms the magistrate judge's order that excluded Burger's "supplemental" reports.  The court is not here deciding whether Burger's original report should be excluded, as that was not sought in the underlying motion, ECF No. 268.

The court also denies Bridge Aina's motion to amend the scheduling order, ECF No. 286.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 21, 2017.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

Bridge Aina Le'a, LLC v. State of Hawaii Land Use Commission, et al., Civ. No. 11-00414 SOM-KJM; ORDER AFFIRMING "ORDER GRANTING STATE OF HAWAII'S MOTION TO STRIKE AND EXCLUDE: (1) PLAINTIFF'S SUPPLEMENTAL EXPERT DISCLOSURE OF DAVID J. BURGER, CPA, SERVED ON JUNE 27, 2016 [DCK. 259]; AND (2) PLAINTIFF'S SECOND SUPPLEMENTAL EXPERT DISCLOSURE, FILED ON AUGUST 1, 2017 [DCK. 267]"; ORDER DENYING MOTION TO AMEND FOURTH AMENDED RULE 16 SCHEDULING ORDER [DKT. 170] FILED 5/5/16