IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

BRIDGE AINA LE'A, LLC,                )   Civ. No. 11-00414 SOM-KJM
                                      )
          Plaintiff,                  )
                                      )
     vs.                              )   ORDER DENYING PLAINTIFF'S
                                      )   MOTION FOR PARTIAL
STATE OF HAWAII LAND USE              )   RECONSIDERATION OF THE ORDER
COMMISSION; VLADIMIR P.               )   GRANTING STATE OF HAWAII'S
DEVENS, in his individual and         )   MOTION TO EXCLUDE EXPERT
official capacity; KYLE               )   REPORTS OF DAVID J. BURGER
CHOCK, in his individual and          )   AND STEVE D. CHEE; EXHIBITS A
official capacity; THOMAS             )   AND B
CONTRADES, in his individual          )
and official capacity; LISA           )
M. JUDGE, in her individual           )
and official capacity;                )
NORMAND R. LEZY, in his               )
individual and official               )
capacity; NICHOLAS W. TEVES,          )
JR., in his individual and            )
official capacity; RONALD I.          )
HELLER, in his individual and         )
official capacity; DUANE              )
KANUHA, in his official               )
capacity; CHARLES JENCKS, in          )
his official capacity; JOHN           )
DOES 1-10; JANE DOES 1-10;            )
DOE PARTNERSHIPS 1-10; DOE            )
CORPORATIONS 1-10; DOE                )
ENTITIES 2-10; and DOE                )
GOVERNMENTAL UNITS 1-10,              )
                                      )
          Defendants.                 )
                                      )
_____       )


**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL**
**RECONSIDERATION OF THE ORDER GRANTING STATE OF HAWAII'S MOTION**
**TO EXCLUDE EXPERT REPORTS OF DAVID J. BURGER AND STEVE D. CHEE**

I.        **INTRODUCTION.**

        The State of Hawaii Land Use Commission (the "State")
filed a motion to exclude an expert opinion by Steven Chee on
the diminution in value caused by the State's alleged regulatory
taking of land from Bridge Aina Le'a.   In an oral order issued
on January 9, 2018, the court partially excluded Chee's
testimony.   Bridge Aina Le'a now asks the court to reconsider
its order insofar as it excludes Chee's testimony.   The motion
is untimely, but the court nevertheless addresses the merits of
the motion and denies it because it fails to establish that the
court's order was based on a manifest error of law.

II.       **PROCEDURAL BACKGROUND.**

        The factual background of this case has been discussed
in the court's previous orders and is incorporated by reference.
*See, e.g.,* ECF 131; 283.

        On November 30, 2015, Bridge Aina Le'a served the
expert reports of David Burger and Steven Chee on the State.
*See* ECF 134, PageID # 3120.   Both reports were submitted as
going to the amount of "just compensation" allegedly owing to
Bridge Aina Le'a under the Takings Clause.   According to Bridge
Aina Le'a, the Chee and Burger opinions

> figured into the following formula for
> calculating just compensation: (1) the
> diminution in value caused by the government
> action, multiplied by (2) the time period of
> the temporary taking, multiplied by (3)

>Plaintiff's rate of return.  The Chee report
>went to the first two numbers in that
>formula, while the Burger report went to the
>third.

ECF 314, PageID # 6592.

On March 2, 2016, the State filed a motion to exclude both expert reports.  ECF 134.  On May 11, 2016, the court issued Inclinations stating that it was inclined to grant the State's motion.  After a lengthy delay during which the parties attempted to settle the case, the State filed a separate motion requesting that the court strike two "supplemental" Burger reports that Bridge Aina Le'a had filed in the interim.  ECF 268.  On November 11, 2017, the Magistrate Judge issued an order granting the motion to strike the supplemental Burger reports. ECF 283.  On appeal, this court affirmed the Magistrate Judge's order.  ECF 288.

On January 8, 2018, this court issued a minute order striking the original Burger report.  ECF 297.  It reserved ruling on the Chee report until the hearing the next day.  *See id.*  At the January 9, 2018 hearing, the court issued an oral order excluding Chee's opinion insofar as he sought to address Bridge Aina Le'a's claim for just compensation, but stated that it would permit Chee to testify on the issue of whether a taking had occurred.  *See* ECF 313.  The court reasoned that, because Bridge Aina Le'a had failed to submit any admissible evidence

establishing its rate of return under its proffered just
compensation formula, Chee's opinion regarding the first two
numbers of that formula--which were to be multiplied by a rate
of return--was no longer relevant. *See id.*

Three weeks after the court's oral order partially
excluding Chee's opinion, Bridge Aina Le'a filed the Motion for
Partial Reconsideration. *See* ECF 306.

**III.     LEGAL STANDARD.**

"As long as a district court has jurisdiction over
the case, then it possesses the inherent procedural power to
reconsider, rescind, or modify an interlocutory order for cause
seen by it to be sufficient." *City of Los Angeles, Harbor Div.
v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001)
(emphasis omitted) (quoting *Melancon v. Texaco, Inc.*, 659 F.2d
551, 553 (5th Cir. 1981)). "Whether or not to grant
reconsideration is committed to the sound discretion of the
court." *Navajo Nation v. Confederated Tribes & Bands of the
Yakama Indian Nation*, 331 F.3d 1041, 1046 (9th Cir. 2003).

Local Rule 60.1 restricts motions for reconsideration
of interlocutory orders to "the following grounds: (a) Discovery
of new material facts not previously available; (b) Intervening
change in law; (c) Manifest error of law or fact." *Id.; see
also Nunes v. Ashcroft*, 375 F.3d 805, 807-08 (9th Cir. 2004)
("Reconsideration is appropriate if the district court (1) is

4

presented with newly discovered evidence, (2) committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law." (quoting *Sch. Dist. No. 1J v. ACandS, Inc.,* 5 F.3d 1255, 1263 (9th Cir. 1993)).  Motions asserting a manifest error of law or fact "must be filed and served not more than fourteen (14) days after the court's written order is filed."  *Id.*

IV.     **ANALYSIS.**

        **A.     The Motion for Partial Reconsideration Is
                Untimely.**

        Local Rule 60.1, which governs motions "for reconsideration of interlocutory orders," requires a reconsideration motion based on a manifest error of law to "be filed and served not more than fourteen (14) days after the court's written order is filed."  *Id.*  No written order was issued in this case.  The court therefore looks to the date on which it issued its oral order: January 9, 2018.  The Motion for Partial Reconsideration, which argues that the court's order was "manifestly unjust and erroneous," was filed on January 30, 2018, making it untimely.  *See* ECF 306-1, PageID # 6513.

        Although this court denies the motion on substantive grounds, this court spends a considerable part of this order addressing the motion's untimeliness in the hope of forestalling future problems in this case.  Bridge Aina Le'a argues that its

motion is timely because it was filed fourteen days after the parties were served with Minutes summarizing the hearing at which the court announced its oral ruling.  This argument is unavailing.

While the Minutes memorializing what occurred at the hearing were not served on the parties until January 16, 2018, those Minutes are not an order, and the timing of the Minutes is therefore irrelevant to any calculation of the deadline for seeking reconsideration.  To address any confusion about the import of the January 16 Minutes (and to address a calendaring error in those minutes), this court, conscious that Bridge Aina Leʻa had a deadline of February 13 for its reply memorandum in support of its Motion for Partial Reconsideration, issued a minute order on February 10 emphasizing that the document filed on January 16 was what it was labeled as: "Minutes," not an order.  *See* ECF 312 (explaining that "minutes" are "nothing more than a historical account of what occurred in open court").  Nothing in the Minutes indicates that it constitutes an order.

Attached to the present order as Exhibit A is a copy of the Minutes served on January 16, 2018, containing an erroneous reference to a hearing on January 8, 2018.[1]  The

---

[1]  As served on January 16, Exhibit A bore an electronic filing header erroneously referring to January 8, but, on February 10, the header was corrected by court staff to read January 9, which was the date of the hearing.  Exhibit A is the February 10

hearing actually occurred on January 9, 2018.  To correct that

error, court staff filed Amended Minutes on February 13,

attached as Exhibit B.  The word "Minutes" appears at the top of

both documents.[2]  The documents lack a judge's signature, and

state that they are "Submitted by: Theresa Lam, Courtroom

Manager."  Additionally, the Minutes are in the same format as

the Minutes of the hearing on January 10, which includes

administrative notes that are clearly a report of proceedings.

*See* ECF 302.

Of particular note is the designation "EP" (for

"Entering Proceeding") on the docket entries for both the

original Minutes and the Amended Minutes.  *See* ECF 301; 313.

Court employees in the District of Hawaii follow a convention of

using "EP" for docket entries that record what has occurred in

---

version of the Minutes; except for the header, it is identical
to what was served on the parties on January 16.
[2] *Bridge Aina Le'a* refers in its reply memorandum to a purported
"text-only entry" that the parties received on January 16, 2018.
*See* ECF 314, PageID # 6598 ("[T]he only properly filed 'written
order' was the text-only entry that the parties received January
16, 2018 . . . ."").  What the parties received on January 16 was
a Notification of Electronic Filing ("NEF") that was part of
this court's Electronic Case Filing ("ECF") system.  The NEF
alerted the parties to the Minutes that indeed included a text
entry in the docket sheet, but this was not a "text-only" entry.
The docket also included a link to a separate document with the
title "Minutes" as part of ECF 301.  That link was closed when,
on or around February 10, 2018, court staff corrected an error
in the Minutes, but Bridge Aina Le'a's access to that link and
separate document before that correction is established by
Exhibit 5 to Bridge Aina Le'a's reply memorandum (which is a
copy of the separate Minutes document as served with an
incorrect date).  *See* ECF 314-5, PageID #s 6641-43.

7

proceedings attended by a judge and participants in a case.  A
minute *order*, by contrast, is designated by "EO" (for "Entering
Order"), which is used to designate a judge's pronouncement made
when the judge is not in a proceeding with the parties.

The distinction between minutes and minute orders is a
longstanding one.  Even before the District of Hawaii
implemented its ECF system in 2006, EP and EO designations
governed whether hard copies of activity in the docket were
mailed to counsel.  Minute orders (bearing "EO" designations)
were mailed, as were formal written orders, while pure minutes
(bearing "EP" designations) were not.  Anything marked "EP" was
not itself an order and contained historical information already
known to counsel who had attended the proceeding being
summarized.

Some repeat Hawaii civil litigators may have a good
understanding of the EP/EO minutes/minute order distinction.
For other litigators, even veteran ones, the EP/EO designation
may appear to be more nothing more than court jargon, and this
distinction might have escaped their notice.  Thus, an attorney
unaware of this distinction might, in certain circumstances, be
excused for having miscalculated a deadline by relying on the
date an EP was served--so long as that error is adequately
explained by counsel.

But Bridge Aina Le'a is not professing to have been confused at all. It does not dispute that the court made an oral ruling from the bench on January 9. Nor does Bridge Aina Le'a express any doubt as to what that oral ruling was. Instead, in the face of this court's minute order of February 10 stating that "[t]he order in issue was an oral one" and that the Minutes served on January 16 were "nothing more than a historical account of what occurred in open court," ECF 312, Bridge Aina Le'a states with certitude: "this court's statement that '[t]he order in issue was an oral one' . . . is incorrect." ECF 314, PageID # 6598 (alteration in original) (citing ECF 312). This unequivocal declaration ignores something obvious: Whether a judge has issued a written order is a matter particularly within that judge's ken.

Bridge Aina Le'a's position is, to put it charitably, untenable. The Minutes in issue here were submitted by a courtroom manager. This judge does not expect her courtroom manager to issue any orders.[3] It is the nature of minutes that,

---

[3] This does not negate the authority of a judge to choose to include a minute order within minutes submitted by a courtroom manager. When that happens, a document bearing the title "Minutes" will usually bear an "EO" designation. "Minutes" that include a minute order typically will also include language making it clear that the document contains an order. The document may, for example, include a heading such as "Order Granting Motion to Stay," or boilerplate language typical of orders, such as "it is so ordered." The Minutes filed at ECF 301 and the Amended Minutes at ECF 313 have an "EP" designation

9

if they incorrectly report what transpired, the transcript controls. That is precisely because minutes are not an order. No court order was issued in the Minutes served on January 16.

Notably, the parties had advance notice that the Minutes would be a detailed record of the hearing. The court's recollection is that the January 9 hearing included more than one statement by the judge to the courtroom manager that the judge wanted the Minutes to include details of what she was saying.

Admittedly, as Bridge Aina Le'a points out, Local Rule 60.1 refers to a deadline that runs from the filing of a "written order." Bridge Aina Le'a says that the January 16 minutes must therefore be a "written order." *See* ECF 314, PageID # 6598. This conclusion overlooks several matters.

First, nothing in Local Rule 60.1 defines "minutes" to be written orders. Second, Bridge Aina Le'a's reliance on Local Rule 100.7.2 is unpersuasive. That rule says that court orders "*may* be issued as text-only entries on the docket without an attached document." LR 100.7.2.[4] It is not clear why Bridge Aina Le'a thinks that this provision is relevant to the present discussion. The "EP" docket entry in issue here has a document

_____

and no such heading or boilerplate language. Indeed, the Minutes include the court reporter's name, which is usual in minutes but not in orders.

[4] This "text-only" version is precisely what this judge employs when she issues minute orders with the "EO" designation.

attached.  Moreover, even if something *may* occur that does not establish that it *has* occurred.

A better (but still unconvincing) argument would be that Local Rule 60.1's deadline only applies to "written orders," not oral orders.  Bridge Aina Le'a did not raise this argument, but even if it had, this would be an unreasonable reading of the rule.  The court recognizes that the local rules could be improved by an express reference to oral orders, but, in the nearly two decades this judge has presided over cases, lawyers faced with oral orders in her cases have uniformly counted their deadline as being fourteen days from the date of the oral ruling.  Otherwise, a party would be free to move for reconsideration of an oral order until the moment the "district court is divested of its jurisdiction over [the] interlocutory order," which often does not occur until "the filing of a notice of appeal."  *See City of Los Angeles, Harbor Div. v. Santa Monica Baykeeper*, 254 F.3d 882, 885 (9th Cir. 2001).[5]  The court

---

[5] The "reasonable time" restriction on reconsideration motions filed pursuant to Rule 60 of the Federal Rules of Civil Procedure would not apply, as Rule 60 only covers "final . . . order[]s."  Fed. R. Civ. P. 60(b); *see BlueEarth Biofuels, LLC v. Hawaiian Elec. Co.*, No. CIV. 09-00181 DAE-KS, 2011 WL 1230144, at *5 n.3 (D. Haw. Mar. 28, 2011) ("[T]he Ninth Circuit has since been clear that a court may not grant Rule 60(b) relief from interlocutory orders." (citing *Prudential Real Estate Affiliates, Inc., v. PPR Realty, Inc.*, 204 F.3d 867, 880 (9th Cir. 2000)); Advisory Comm. Note to Fed. R. Civ. P. 60(b) ("The addition of the qualifying word 'final' emphasizes the character of the judgments, orders or proceedings from which

does not read the local rules as illogically granting a party
indefinite time to request reconsideration of an interlocutory
oral order, while limiting them to fourteen days in the case of
a written one.

Bridge Aina Leʻa has not requested leave of court to
file a late reconsideration motion. *See* ECF 306; 314-2. It
could have acknowledged an error and requested such leave in its
reply memorandum, especially after reading the court's February
10 EO emphasizing that the Minutes were not an order. *See Pac.
Radiation Oncology, LLC v. Queen's Med. Ctr.,* No. CIV. 12-00064
LEK, 2015 WL 274131, at *4 (D. Haw. Jan. 21, 2015). Bridge Aina
Leʻa has chosen to stand on its declaration that the Minutes
constitute an order.

The State argues that consideration of this untimely
motion, a month before trial, would be prejudicial to the State.
ECF 310, PageID #s 6572-73. The State further notes that,
through the motion, Bridge Aina Leʻa is improperly attempting to
adjust its theory of damages on the eve of trial. *See id.*
Bridge Aina Leʻa responds that "the State suffered no prejudice
by having to wait an extra week to oppose the motion," and that

---

Rule 60(b) affords relief; and hence interlocutory judgments are
not brought within the restrictions of the rule, but rather they
are left subject to the complete power of the court rendering
them to afford such relief from them as justice requires.").

granting the motion will not disrupt the State's litigation strategy at all.  ECF 314, PageID #s 6599-6600.

The court understands that *granting* the untimely motion would indeed prejudice the State, with trial only a month away.  The motion is clearly attempting to amplify Bridge Aina Le'a's theory of damages.  The court agrees with the State that, outside of the (now-stricken) Burger report, "no other person[s]" and "no other bases" for calculating the rate of return were disclosed in Bridge Aina Le'a's Initial Disclosures or its Final Pretrial Statement.  *See* ECF 310, PageID # 6565-66. The court is unmoved by the boilerplate language in the Initial Disclosures and the Final Pretrial Statement to the effect that every single potential witnesses listed "will testify as to the facts and circumstances surrounding the Complaint and will further testify as to liability and damages."  *See* ECF 314-2, PageID #s 6609-11; ECF 166, PageID #s 3396-99.  The Initial Disclosures still wholly fail, in the "COMPUTATION OF DAMAGES" section, to discuss any theory concerning the rate of return aside from that in the Burger report.  *See* ECF 314-2, PageID # 6612-14.  The same goes for the Final Pretrial Statement, which does not mention any rate of return methodology aside from that in the report of "rate of return expert, David Burger." *See* ECF 166, PageID #s 3384-85.

Bridge Aina Le'a argues that the State has nonetheless "been on notice that . . . Mr. Baldwin would be offering testimony regarding the rate of return that Bridge could have been expected to achieve." *See* ECF 314, PageID #s 6599-6600. The reference to "Bridge" is telling. At the January 9 hearing, just two months before trial, the court asked counsel for Bridge Aina Le'a to clarify what entity Baldwin was proposing to testify about. Counsel for Bridge Aina Le'a represented to the court and opposing counsel that Baldwin would testify about the rate of return of Bridge Capital, a separate entity that is not a party in this case. In the present Motion for Partial Reconsideration, filed a little more than a month before trial, John Baldwin avers for the first time that he has "personal knowledge about the investment return of . . . *Bridge Aina [Le'a]*" in addition to Bridge Capital, and can "testify about how these returns compare to more traditional and conservative avenues for investments." ECF 306-3, PageID # 6548 (emphasis added). The reference to "Bridge" conflates Bridge Capital with Bridge Aina Le'a and obscures the distinction.

While the State was prepared to offer its own rate of return expert, Ted Yamamura, to rebut the excluded Burger report on rate of return, that would not eliminate any prejudice if Baldwin were allowed to offer his own rate of return testimony. Assuming Baldwin would not simply parrot the excluded Burger

14

opinion, the State's readiness to address the Burger report does not imply that it can readily address what Baldwin might say. The Baldwin declaration does not discuss the "investment return" of Bridge Aina Le'a by giving a specific number or range of numbers, and fails to provide any of the data or financial information that Baldwin might rely on to calculate it. *See id.* The declaration is similarly tight-lipped as to what Baldwin believes a rate of return based on "more traditional and conservative avenues for investments" would look like. *See id.* The Motion for Partial Reconsideration only tells us that Baldwin's data is "the same sort" of data that Yamamura would have relied on. *See* ECF 314, PageID # 6591. Forcing the State, on the eve of trial, to scramble to respond to Baldwin's inchoate opinion as to calculation of Bridge Aina Le'a's rate of return would unquestionably be prejudicial.

But acknowledging the prejudice to the State of *granting* the motion is not the same as saying that the State is materially prejudiced by its *untimeliness*. Had the Motion for Partial Reconsideration been timely filed, the State would still have had to address the prejudice issue and analyze the merits of the motion (but would not have had to discuss any timeliness issue). The court recognizes that the State is probably more pressed for time the closer the case gets to trial, but the greater time pressure imposed by Bridge Aina Le'a's one-week

delay in seeking reconsideration about a month before trial is not so great as to prevent this court from turning to the merits of the motion.  Therefore, although Bridge Aina Le'a's motion is clearly untimely, the basis for the present denial goes to the merits.

> **B.    The Motion for Partial Reconsideration Is Denied Given Bridge Aina Le'a's Failure to Show a Manifest Error of Law.**

Nothing in the motion establishes that this court committed a "[m]anifest error of law" in excluding the Chee report.  *See* LR 60.1.

Bridge Aina Le'a asks the court to reconsider the following three rulings, which, it says, should lead the court to retract its determination that the Chee report is irrelevant to the just compensation calculation (given the absence of rate of return evidence):

> (1) that John Baldwin, Bridge Capital LLC's chief executive officer and Bridge [Aina] Le'a]'s manager, cannot testify from his personal knowledge as to the rate of return that Bridge [Aina Le'a]'s investments historically generated;
>
> (2) that Mr. Baldwin cannot testify from his personal knowledge regarding publicly available information such as Moody's Composite Index of Yields on AAA Long Term Corporate Bonds ("Moody's Rate"); and
>
> (3) that the Court will not . . . judicially notic[e] the Moody's Rate or other publicly available information and setting an applicable rate of return

*Id.* at PageID # 6512 (citing ECF 301).

In asking the court to reconsider these rulings, Bridge Aina Le'a argues that 1) the rulings go beyond the scope of the relief requested in the State's Motion to Exclude; 2) the testimony offered by John Baldwin is relevant and admissible under Rule 701 of the Federal Rules of Evidence; 3) the rulings impair Bridge Aina Le'a's constitutional right to offer evidence pertaining to just compensation; and 4) the court should judicially notice and then present to the jury evidence of publicly available interest rates. The court addresses these arguments in turn.

### 1. The Court Did Not Grant the State Relief Beyond the Scope of its Motion to Exclude.

Bridge Aina Le'a argues that the court should revisit its evidentiary rulings because they "addressed matters beyond the scope of the relief that the State sought through [its] Motion to Exclude." ECF 306-1, PageID # 6517. This argument is factually incorrect and legally frivolous.

The State's Motion to Exclude asked the court "to exclude the expert reports of David J. Burger and Steven D. Chee." ECF 134, PageID # 3120. On May 11, 2016, the court issued Inclinations stating that it was inclined to exclude the Chee report for the following reasons:

> Because the court is inclined to exclude the
> Burger Report, it is also inclined to
> conclude that the Chee Report would no
> longer assist the jury in determining Bridge
> Aina's alleged damages. . . . [T]he purpose
> of the Chee Report is to provide a valuation
> of the property before and after the Land
> Use Commission's April 30, 2009 vote to
> reclassify the property, which can then be
> applied to the rate of return in Burger's
> opinion to determine the diminution of the
> property's value during the alleged takings
> period.  The court is inclined to reason
> that the Chee Report is only helpful to the
> jury to the extent it can be used in
> conjunction with the Burger Report.

ECF 172, PageID #s 3885-86.  The court then advised the parties

to arrive at the hearing on the Motion to Exclude "prepared to

discuss whether the Chee Report is still admissible under Rule

702 if the court excludes the Burger Report."  ECF 172, PageID

# 3886.

Bridge Aina Le'a complains that the State's Motion to

Exclude did not articulate the same reasons to exclude the Chee

report that the court identified in its Inclinations.  ECF 314,

PageID # 6594; see ECF 134, PageID # 3121 (asking the court to

exclude the Chee report as "irrelevant," albeit for a different

reason).  But there is no impropriety in a court's selection of

an alternative basis on which to grant requested relief.

Certainly the court may direct the parties to address the

court's Inclinations at an upcoming hearing.

The parties discussed the court's Inclinations a week later, at the hearing on May 19, 2016, on the Motion to Exclude. As Bridge Aina Le'a admits in its Motion for Partial Reconsideration, it argued at the hearing that it still had admissible rate of return evidence even absent the Burger report, because its own "executives could offer testimony from their personal knowledge of what Bridge was realizing for investment returns during the takings period." ECF 314, PageID # 6595. One of these executives was John Baldwin, described by counsel for Bridge Aina Le'a as able to "testify as to . . . [his] personal knowledge as to Bridge's rate of return." ECF 209, PageID # 5069. In other words, at this hearing, Bridge Aina Le'a sought to substitute other testimony regarding the rate of return as an affirmative reason that the court should not grant the relief requested in the Motion to Exclude.

The court took the Motion to Exclude under advisement, but its decision was postponed because 1) on May 26, 2016, Bridge Aina Le'a filed a motion to disqualify this judge; and 2) the parties' were attempting to settle this case. After the motion to disqualify was denied by Senior District Judge Alan C. Kay and after the parties informed the court that there was no settlement, the court issued a new minute order scheduling an additional hearing on the Motion to Exclude for January 9, 2018.

ECF 292.  The court invited supplemental briefing from the
parties in advance of the new hearing.  *See id.*

The State, in its supplemental brief, argued that,
without evidence speaking to "the rate of return, the Chee
report is irrelevant."  ECF 294, PageID #s 6425-26.  The State
also disputed Bridge Aina Le'a's suggestion at the May 19, 2016,
hearing that its "lay witnesses may testify as to [Bridge Aina
Le'a]'s rate of return."  *Id.* at PageID #s 6426-27.  Bridge Aina
Le'a, in its supplemental brief, countered that Baldwin could
indeed "testify regarding [a] reasonable rate of return."  ECF
295, PageID # 6467.  Bridge Aina Le'a argued that Baldwin's
testimony would be within his "particularized knowledge, helpful
to the jury, and properly within the confines of FRE Rule 701."
*Id.*

On January 8, 2018, the day before the new hearing on
the Motion to Exclude, the court issued a minute order striking
the Burger report.  ECF 297.  It then advised Bridge Aina Le'a
to be prepared to discuss "what admissible evidence it proposes"
to offer relating to the rate of return, and advised the parties
to be prepared to discuss whether "Chee's opinion is irrelevant
in the absence of evidence of the rate of return."  *Id.*  The
next day, the court issued its oral evidentiary rulings
excluding the Chee report and Baldwin's testimony as to the
issue of just compensation.  *See* ECF 313.

Bridge Aina Le'a now characterizes the court as having raised "evidentiary issues *sua sponte* a day before the January 9 hearing." ECF 306-1, PageID # 6518. The court is at a loss to see how Bridge Aina Le'a can contend that these evidentiary issues were not raised until the day before the January 9 hearing, when the admissibility of Baldwin's proffered testimony had been previously debated by both parties. *See, e.g.*, ECF 294, PageID #s 6426-27; ECF 295, PageID # 6467. The court is at an even greater loss to understand how Bridge Aina Le'a can assert that the court *sua sponte* raised the Baldwin issue or that this court's rulings went "beyond the scope" of the Motion to Exclude. *See* ECF 306-1, PageID # 6517. Bridge Aina Le'a raised the Baldwin issue as a reason the court should deny the motion to exclude as far back as 2016. *See* ECF 209, PageID # 5069. The court could hardly ignore this matter. And ruling on whether Baldwin could testify was necessary to any decision on whether to exclude Chee's expert testimony on just compensation. To say that this court has no business addressing a matter that Bridge Aina Le'a itself raised in opposition to the State's motion is to make a breathtaking argument.

Finally, even if Bridge Aina Le'a's assertions were somehow correct, the Ninth Circuit has nowhere suggested that district courts lack the ability to *sua sponte* exclude inadmissible evidence. *Cf., e.g., United States v. Morsette*,

21

653 F. App'x 499, 502 (9th Cir. 2016), *cert. denied,* 137 S. Ct. 694, 196 L. Ed. 2d 571 (2017) ("The district court did not plainly err when it did not exclude *sua sponte* evidence . . . ."); *United States v. Hardy*, 289 F.3d 608, 613 (9th Cir. 2002) ("The trial court did not plainly err in failing to exclude the evidence *sua sponte* on prejudice grounds."); *United States v. Fierro*, 450 F. App'x 586, 587 (9th Cir. 2011) ("District judges are not obligated to exclude evidence under Rule 403 *sua sponte.*"). As the Sixth Circuit explained in *HDM Flugservice GmbH v. Parker Hannifin Corp.*, 332 F.3d 1025, 1034 (6th Cir. 2003), previous cases holding that a "court's failure to exclude evidence *sua sponte* was not plain error" "imply[] that courts have the authority to exclude evidence on their own motion." *See also Maddox v. Patterson*, 905 F.2d 1178, 1180 (8th Cir. 1990) ("[I]t is clearly within the trial court's discretion to exclude evidence sua sponte.").

### 2. Baldwin's (Old and New) Proffered Testimony Is Inadmissible.

The rest of the arguments in the Motion for Partial Reconsideration are repetitions of matters already considered by this court. They cannot, for that reason, serve as a basis for asking the court to reconsider its rulings. *See Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985) (explaining that

motions for reconsideration must present "arguments that had not already been raised").

For example, the Motion for Partial Reconsideration attempts to relitigate this court's exclusion of Baldwin's rate of return testimony as irrelevant. *See* ECF 306-1, PageID # 6522. At the January 9, 2018 hearing, the court explained that it viewed Baldwin's testimony as irrelevant because he was offering to testify about the rate of return of Bridge Capital, an entity that is not a party to Bridge Aina Leʻa's lawsuit. The court also explained that rate of return evidence should speak to what a reasonably prudent investor would do (i.e., the market rate of return), not what investments a particular corporation might make. *See, e.g.*, *Tulare Lake Basin Water Storage Dist. v. United States*, 61 Fed. Cl. 624, 627 (2004) ("[T]he appropriate interest rate [under the Takings Clause] is calculated based not on an assessment of how a particular plaintiff would have invested any recovery, but rather on how ʻa reasonably prudent person' would have invested the funds to ʻproduce a reasonable return while maintaining safety of principal.'" (quoting *United States v. 429.59 Acres of Land*, 612 F.2d 459, 464-65 (9th Cir. 1980))). The court also expressed concern about having Baldwin testify, as a lay expert, about what formula among several possible formulas should be selected for purposes of calculating any rate of return.

As previously noted, the Motion for Partial Reconsideration changes course in belatedly claiming that Baldwin "can testify from personal knowledge regarding the rates of return that *Bridge[ Aina Le'a]'s* investments historically generated." ECF 306-1,PageID # 6523. This runs counter to what counsel represented at the January 9 hearing, and the theory of Bridge Aina Le'a's rate of return articulated in Bridge Aina Le'a's Initial Disclosures and Final Pretrial Statement. Baldwin cannot belatedly offer to add an opinion about Bridge Aina Le'a's rate of return to his earlier proffer of testimony about only Bridge Capital's rate of return. This tardy offer is especially problematic when the actual rate of return number that Baldwin would testify to remains unstated.

The offered testimony still fails to overcome the hurdle that the appropriate rate of return is the *market* rate of return, not an individual company's rate of return. Baldwin's offer to testify about his "personal knowledge regarding [Bridge Aina Le'a's] rates of return" and his "personal knowledge" of the "yield [of] more traditional and conservative avenues for investment," ECF 306-1, PageID # 6523, is still a far cry from having a qualified expert testify on what the *market* rate of return would be. Nor is there any reason for this court to assume that Baldwin can testify as to the appropriate formula for calculating a market rate of return. In short, the court

was unconvinced by Bridge Aina Leʻaʻs relevance argument at the
January 9 hearing, and remains unconvinced by its argument in
the Motion for Partial Reconsideration.

### 3. Bridge Aina Leʻa Has No Constitutional Right to Present Inadmissible Evidence.

The Motion for Partial Reconsideration also insists
that the court's evidentiary rulings have impaired Bridge Aina
Leʻaʻs constitutional right to "submit evidence regarding the
applicable rate of return."  ECF 306, PageID # 6519.  Bridge
Aina Leʻa made this argument at the hearing on January 9, 2018.
The court responded that Bridge Aina Leʻa had had ample
opportunity to describe what evidence it might have, but had
failed to put forward admissible evidence within established
deadlines concerning the rate of return.  The court further
explained that Bridge Aina Leʻa lacked a constitutional right to
have the jury calculate "just compensation" based on
inadmissible evidence.  Counsel for Bridge Aina Leʻa disagreed
with the court's view of evidentiary and constitutional law, but
cited no authority supporting its purported constitutional right
to present inadmissible evidence.  The Motion for Partial
Reconsideration, unsurprisingly, similarly fails in that regard.
See ECF 306-1, PageID # 6519-21.

**4.    Bridge Aina Le'a Has No Right to Have the
Court Present Evidence to the Jury.**

The Motion for Partial Reconsideration also argues
that the "prevailing interest rates in 2009 and 2014" such as
"the Moody's rate" are "matters of public record," and that "the
jury must be allowed to consider such evidence."  ECF 306-1,
PageID # 6525.  It further asks this court to "judicially
notice[] the Moody's Rate [and] other publicly available
information and set[] an applicable rate of return."  ECF 306-1,
PageID # 6512.  This is a reprisal of counsel's prior argument,
made in its Supplemental Brief in Further Opposition to the
State of Hawaii's Motion to Exclude, that the court should
judicially notice the Moody's rate and other corporate bond
rates and, in the absence of admissible expert testimony,
calculate the rate of return itself.  *See* ECF 295, PageID
# 6467-68.  At the January 9 hearing, the court agreed that
corporate bond and other investment vehicle evidence could be
considered by a jury if it were properly admitted through expert
testimony, but responded that it was not the court's duty to
collect and present such evidence to the jury itself.

It would be improper for the court to hand what it
believes to be a proper market rate of return to the jury.  The
Motion for Partial Reconsideration references a plethora of
different investment vehicles--"treasury bills," "real estate,"

"high-yield debt," "statutes and bond indexes" like the "Moody's Composite Index of Yields on AAA Long Term Corporate Bonds," and other "corporate bonds."  *See* ECF 306-1, PageID #s 6512, 6525; ECF 307-1, PageID # 6548; ECF 314, PageID # 6596.  There are, in other words, a variety of indices from which a market rate of return could be established.  Determining, out of this variety, how a "reasonably prudent person would have invested the funds to produce a reasonable return while maintaining safety of principal" does not amount to a "generally known" matter that a court can or should judicially notice.  *See* Fed. R. Evid. 201; *see, e.g.*, *Wheeler v. City of Pleasant Grove*, 296 F.2d 1347, 1352 (11th Cir. 1990) ("According to the experts, the market rate of return for th[e] period was 9.77 percent."); *Nemmers v. City of Dubuque*, 746 F.2d 502, 504 (8th Cir. 1985) ("The city retained its own expert who approved the 15% rate of interest . . . ."). None of the cases cited by counsel in advance of the January 9 hearing, or in the Motion for Partial Reconsideration, convinces the court that it can or should set a market rate of return itself in the absence of admissible expert testimony.

## V.      CONCLUSION.

The Motion for Partial Reconsideration is DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, February 16, 2018.



/s/ Susan Oki Mollway

Susan Oki Mollway

United States District Judge

Bridge Aina Le'a, LLC v. Hawaii Land Use Comm'n et al., Civ. No. 11-00414 SOM-KJM; ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL RECONSIDERATION OF THE ORDER GRANTING STATE OF HAWAII'S MOTION TO EXCLUDE EXPERT REPORTS OF DAVID J. BURGER AND STEVE D. CHEE; EXHIBITS A AND B.