IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| BRIDGE AINA LE'A, LLC, | CIVIL NO. 11-00414 SOM-KJM |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS TO GRANT IN PART AND DENY IN PART BRIDGE AINA LE'A, LLC'S MOTION FOR ATTORNEYS' FEES AND COSTS |
| vs. | |
| STATE OF HAWAII LAND USE COMMISSION, VLADIMIR P. DEVENS, in his individual and official capacity, KYLE CHOCK, in his individual and official capacity, THOMAS CONTRADES, in his individual and official capacity, LISA M. JUDGE, in her individual and official capacity, NORMAND R. LEZY, in his individual and official capacity, NICHOLAS W. TEVES, JR., in his individual and official capacity, RONALD I. HELLER, in his individual and official capacity, DUANE KANUHA, in his official capacity, and CHARLES JENCKS, in his official capacity, JOHN DOES 1-10, JANE DOES 1-10, DOE PARTNERSHIPS 1-10, DOE CORPORATIONS 1-10, DOE ENTITIES 2-10 and DOE GOVERNMENTAL UNITS 1-10, | |
| Defendants. | |

FINDINGS AND RECOMMENDATIONS TO
GRANT IN PART AND DENY IN PART BRIDGE AINA LE'A LLC'S
<u>MOTION FOR ATTORNEYS' FEES AND COSTS</u>

Plaintiff Bridge Aina Le'a, LLC ("Bridge") moves this Court for an award of $662,227.03 in attorneys' fees and $62,810.06 in costs against Defendant State of Hawai'i Land Use Commission ("the Commission" or "the State"), in connection with a March 23, 2018 jury verdict. The jury determined that the Commission's actions against Bridge amounted to a taking under the United States and Hawai'i Constitutions.

Bridge moved for its fees and costs in its Motion for Attorneys' Fees and Costs filed April 13, 2018 ("Motion"). *See* ECF No. 384. The State filed a Renewed Motion for Judgment as a Matter of Law, or in the Alterative, for a New Trial on April 20, 2018. *See* ECF No. 385. This Court issued an Order that it would not issue a decision on the Motion until the district court issued its decision on the Motion for Judgment as a Matter of Law. ECF No. 387. The State filed its Opposition to the Motion on May 14, 2018. See ECF No. 399. Bridge filed its Reply on May 31, 2018. *See* ECF No. 402.

The district court denied the State's Motion for Judgment as a Matter of Law on June 27, 2018. This Court requested supplemental briefing from the parties related to the Motion on July 10, 2018. *See* ECF No. 406. The parties filed their supplemental briefs on July 23, 2018. *See* ECF No. 408-09. The Court elected to decide the Motion without a hearing pursuant to Local Rule 7.2(d).

2

After careful consideration of the parties' arguments, the record in this action, and relevant case law, the Court FINDS that (1) Bridge is not entitled to attorneys' fees pursuant to Hawaii's private attorney general doctrine, and (2) Bridge is entitled to $15,085.51 of its requested costs.  The Court thus RECOMMENDS, for the reasons further discussed herein, that the district court GRANT IN PART AND DENY the Motion.

BACKGROUND

The Court presents a short background of this case, detailing only the facts necessary to analyze this Motion.  This case arises out of a decision by the Commission to reclassify a parcel of land from urban use to agricultural use. Bridge filed this action in the Circuit Court of the First Circuit for the State of Hawaiʻi  ("State Court") against the Commission and some of its commissioners-- Vladimir P. Devens, Kyle Chock, Thomas Contrades, Lisa M. Judge, Normand R. Lezy, Nicholas W. Teves, Ronald I. Heller, Duane Kanuha, and Charles Jencks (collectively, "the Commissioners") on June 7, 2011.  *See* ECF No. 1-2.  Bridge alleged the following claims:  (1) Denial of Due Process of Law, Procedural Due Process, Substantive Due Process, and Due Process Taking in violation of (a) the United States Fifth and Fourteenth Amendment, and (b) Article I, Section 5 and 20 of the Hawaiʻi Constitution; (2) Inverse Condemnation in violation of (a) the United States Fifth and Fourteenth Amendment, and (b) Article I, Section 5 and 20 of the Hawaiʻi Constitution; (3) Discrimination in Application of Land Regulation

3

Laws and Denial of Equal Protection of Law in violation of (a) the United States

Fourteenth Amendment, (b) Article I, Section 5 of the Hawaiʻi Constitution; (4)

Common Law Deprivation of Vested Rights; (5) Equitable Estoppel; (6)

Deprivation of Constitutional Rights Against Commission and Certain

Commissioners in Their Official and Individual Capacities under

42 U.S.C. § 1983; (7) Declaratory and Injunctive Relief in violation of Hawaii

Revised Statutes Chapters 91, 92, and 205 and Hawaii Administrative Rules

Chapter 15-15; (8) Unconstitutional Land Development Conditions in violation of

(a) the Fifth and Fourteenth Amendment of the United States Constitution, and (b)

Article I, Section 5 and 20 of the Hawaii Constitution; (9) Injunctive and

Declaratory Relief; (10) Declaratory Relief under Hawaii Revised Statutes § 632-1

and Hawaii Rule of Civil Procedure 57; and (11) Attorneys' Fees and Costs

pursuant to 42 U.S.C. § 1988 (respectively, Count I, Count II, Count III, Count IV,

Count V, Count VI, Count VII, Count VIII, Count IX, Count X, Count XI).  *See*

ECF No. 1-2.

The State removed this action to this court on June 27, 2011, based on

federal question jurisdiction under 28 U.S.C. § 1331 and § 1343(a)(3).  *See* ECF

No. 1.  The Commission contended that the district court had original subject

matter jurisdiction because Bridge's claims arose in part under the laws of the

United States.  *Id*. at 3.

On March 30, 2012, the district court issued its Order Staying Case Pending Resolution of the State Case ("Stay Order").  *See* ECF No. 48.  In its Stay Order, the district court stayed the action pending the appeal of a December 16, 2011 State Court order reversing and vacating the Commission's decision to reclassify. *Id*. at 22-23.  This action was reopened on April 2, 2015.  *See* ECF No. 71.

On August 25, 2015, the district court issued its Order Granting Revised Motion to Dismiss, dismissing all of the counts in the Complaint except:  "(1) the takings claims for just compensation in Counts I, II, and VIII, to the extent asserted against the Commission and Official Capacity Commissioners; and (2) Count IV, to the extent seeking damages against the Commission and Official Capacity Commissioners."  ECF No. 93 at 64.  On February 29, 2016, the district court issued its Order Granting in Part and Denying in Part Motion for Summary Judgment, further narrowing the claims by granting the State's motion for summary judgment with respect to Count IV and Count VIII.  *See* ECF No. 131. Accordingly, the only claims remaining for further adjudication were the takings claims in Counts I and II of the Complaint, to the extent asserted against the Commission and Commissioners.  *Id*. at 26.

On July 5, 2016, the parties informed the district court that they had reached a settlement subject to legislative approval.  *See* ECF No. 261.  On May 30, 2017, the Commission informed the court that the legislature had not appropriated the

5

settlement funds and thus, the settlement had "died."  *See* ECF No. 264 at 3-4.  The

district court set trial for March 13, 2018.  *See* ECF No. 265.

On March 23, 2018, the jury found in favor of Bridge, concluding that the

Commission's decision to reclassify the land at issue constituted a "taking."  *See*

ECF No. 373.  On March 30, 2018, the district judge awarded Bridge an award of

$1 in nominal damages.  *See* ECF No. 375.  Bridge subsequently filed the instant

Motion.

## DISCUSSION

### I.  Bridge's Entitlement to Attorneys' Fees

As a threshold matter, this Court must determine whether Bridge is entitled

to attorneys' fees.  The parties agree that Hawaiʻi state law applies to the attorneys'

fees based on the district court's exercise of supplemental jurisdiction over

Bridge's state takings claim under Article I, Sections 5 and 20 of the Hawaiʻi

Constitution.  *See* ECF No. 409 at 2.  Accordingly, the Court applies Hawaiʻi state

law in determining whether Bridge is entitled to attorneys' fees.

Bridge seeks an award of attorneys' fees and costs pursuant to the private

attorney general doctrine, a doctrine first acknowledged by the Hawaiʻi Supreme

Court in *In re Water Use Permit Applications*, 96 Haw. 27, 32, 25 P.3d 802, 807

(2001) ("*Waiahole II*").  In *Waiahole II*, the Hawaiʻi Supreme Court explained

that, normally, "each party is responsible for paying his or her own litigation

expenses" pursuant to the "American Rule," absent authorization "'by statute, rule

of court, agreement, stipulation, or precedent.'"  96 Haw. at 29, 25 P.3d at 804

(quoting *Chun v. Bd. of Trustees of Emps.' Retirement Sys.*, 92 Haw. 432, 439, 992

P.2d 127, 134 (2000)).  The private attorney general doctrine, however, is an

exception to the "American Rule."  The private attorney general doctrine "is an

equitable rule that allows courts in their discretion to award attorneys' fees to

plaintiffs who have "'vindicated important public rights.'"  *Id.* (quoting *Arnold v.

Dept. of Health Servs.*, 775 P.2d 521, 537 (Ariz. 1989)).

Courts applying the private attorney general doctrine consider three basic

factors:  "'(1) the strength or societal importance of the public policy vindicated by

the litigation, (2) the necessity for private enforcement and the magnitude of the

resultant burden on the plaintiff, (3) the number of people standing to benefit from

the decision. [PAG Test]'"  *Id.* (quoting *Serrano v. Priest*, 569 P.2d 1303, 1314

(Cal. 1977)).  Bridge contends that:  (1) this action involved matters of significant

public concern; (2) given the Commission's conduct, it was necessary for Bridge

alone to bear the "heavy burden" of litigating this action in state and federal courts;

and (3) although the action involved one discrete property, the "'number of people

standing to benefit by the litigation is significant' and this case will have 'value to

society as a whole.'"  ECF No. 384-1 at 14 (quoting *In re Honolulu Constr. &

Draying Co.* ("*Irwin Park II*"), 130 Haw. 306, 314, 310 P.3d 301, 309 (2013)).

Bridge thus argues that it is entitled to its attorneys' fees pursuant to the private

attorney general doctrine.

Bridge also asserts, however, that the foregoing three factors are not "outcome-dispositive." ECF No. 402 at 4. Rather, Bridge argues that the three factors "should help guide the Court's discretion as to whether the equities favor the doctrine's application." *Id.* The Court agrees in part. The Court agrees that the private attorney general doctrine is indeed discretionary. The Court disagrees, however, that the three factors are not "outcome-dispositive."

The Hawaiʻi Supreme Court has considered cases in which the party requesting fees met all but one of the three factors of the PAG Test, but nonetheless denied attorneys' fees on that basis alone. *See e.g. Goo v. Arakawa*, 132 Haw. 304, 320, 321 P.3d 655, 671 (2014) (concluding that the circuit court did not abuse its discretion in denying attorneys' fees under the private attorney general doctrine and declining to examine the first two prongs of the test because the plaintiffs failed to satisfy the third prong); *Waiahole II*, 96 Haw. at 32; 25 P.3d at 807 (holding that because the applicability of the second prong of the private attorney general doctrine test was "less convincing," the case did not "qualify for an award of attorneys' fees under the conventional application of the private attorney general doctrine"). Accordingly, the Court concludes that the three-prong test is outcome-dispositive. A plaintiff seeking fees under the private attorney general doctrine pursuant to Hawaiʻi state law must meet the three prongs of the PAG Test to be entitled to fees under this doctrine. *See Goo*, 132 Haw. at 318; 321 P.3d at 669 ("All three prongs must be satisfied by the party seeking attorneys'

8

fees."); *Irwin Park II*, 130 Haw. at 316, 310 P.3d at 311 ("[T]he court may grant attorneys' fees where equitable so long as the party requesting such fees satisfies the three prongs of the doctrine.").

In this case, the Court concludes that Bridge fails to meet all three prongs of the PAG Test, thereby precluding an award of attorneys' fees to Bridge under the private attorney general doctrine.

## II.  The PAG Test

As set forth above, this Court must consider the following three basic factors of the PAG Test in deciding whether to apply the private attorney general doctrine: "'(1) the strength or societal importance of the public policy vindicated by the litigation, (2) the necessity for private enforcement and the magnitude of the resultant burden on the plaintiff, [and] (3) the number of people standing to benefit from the decision.'" *Waiahole II*, 96 Haw. at 29, 25 P.3d at 804 (quoting Serrano, 569 P.2d at 1314).  The Court has considered the foregoing factors and every decision issued by the Hawai'i Supreme Court on the private attorney general doctrine.  Based on these considerations, the Court finds that the private attorney general doctrine does not apply in this case.

A.    The Public Policy Vindicated by the Litigation

Bridge contends that the "litigation involved matters 'of significant public concern.'"  ECF No. 384-1 at 12 (quoting *Irwin Park II*, 130 Haw. at 314, 310 P.3d at 309).  Bridge argues that, "[i]n proving that the [Commission's] conduct

9

amounted to a temporary regulatory taking under *Lucas* and *Penn Central*, Bridge

vindicated 'constitutional rights of profound significance.'"  ECF No. 384-1 at 12.

Bridge asserts that the "litigation, and the results achieved, will serve as a

benchmark for land use regulation and constitutional protection of rights of private

property ownership."  *Id*.  The Court is not persuaded.

The Hawai'i Supreme Court has held in three cases that the plaintiff had

vindicated a strong public policy or a public policy of societal importance

sufficient to meet the first prong of the PAG Test.  None of these cases support

Bridge's arguments that the first prong of the PAG Test is satisfied in this

litigation.

First, in *Sierra Club v. Department of Transportation of State of Hawai'i*,

the Hawai'i Supreme Court found that the first prong was met because the

litigation was "responsible for establishing the principle of procedural standing in

environmental law in Hawai'i and clarifying the importance of addressing the

secondary impacts of a project in the environmental review process pursuant to

HRS chapter 343."  120 Haw. 181, 220, 202 P.3d 1226, 1265 (2009) ("*Superferry

II*").  Second, in *Irwin Park II,* the Hawai'i Supreme Court held that the first prong

was met because the plaintiff vindicated the significant public concern of the

preservation of public parks and historic sites in the State of Hawai'i.  130 Haw. at

314, 310 P.3d at 309 (citing HRS § 6E-1) ("The Constitution of the State of

Hawai'i recognizes the value of conserving and developing the historic and

10

cultural property within the state for the public good.")).  Third, similar to

*Superferry II* and *Irwin Park II*, the Hawaiʻi Supreme Court held that the first

prong was satisfied in *Kaleikini v. Yoshioka* because a private citizen was

responsible "for clarifying the principle of procedural standing in historic

preservation law in Hawaiʻi, and clarifying the importance of addressing impacts

on historic properties prior to approval and commencement of projects that are

subject to the provisions of HRS chapter 6E."  129 Haw. 454, 463-64, 304 P.3d

252, 261-62 (2013).

      In each of the three foregoing cases, the Hawaiʻi Supreme Court found that

the plaintiff had vindicated a public policy goal, *e.g.*, preservation of public parks

and historic sites, protection of environmental resources, clarifying procedural

standing in environmental law and historic preservation law.  Here, Plaintiff has

not vindicated an important *public* right in this case; rather, Plaintiff has vindicated

an important *private* right.

      In asserting one's right to just compensation where the government has

taken private property for public use under either the United States Constitution or

Hawaiʻi Constitution, the plaintiff "necessarily seek[s] to vindicate the right of the

private property owner to just compensation.  The very nature of a takings claims

protects the interest of the *private* party or parties from whom the State has taken

property."  *Maunalua Bay Beach Ohana 28 v. State*, No. 28175, 2010 WL

2329366, at *13 (Haw. June 9, 2010) (Acoba, J., dissenting) (emphasis in original).

In this Court's view, it is not enough that the litigation involved a constitutional right unless the case involves a public right. *See Waiahole II*, 96 Haw. at 31, 25 P.3d at 806 (involving not only a "constitutional right of profound significance," but also a right that "all of the citizens of the state, present and future, stood to benefit from" because it involved the State of Hawaii's water resources) (citing *Arizona Ctr. For Law in Pub. Interest v. Hassell*, 837 P.2d 158, 173 (Ariz. Ct. App. 1991) (applying the private attorney doctrine in a case featuring issues related to the public trust doctrine); *Defenders of Wildlife v. Hull*, 18 P.3d 722, 739 (Ariz. Ct. App. 2001) (same); *Montanans for the Responsible Use of the Sch. Trust v. State ex rel. Bd. of Land Comm'rs*, 989 P.2d 800 (Mont. 1999) (applying the doctrine in a case involving the wrongful disposition of school trust lands)); *see also Press v. Lucky Stores, Inc*., 667 P.2d 704, 709 n.7 (Cal. 1983) (opining that "not all lawsuits enforcing constitutional guarantees will warrant an award of fees," *e.g*., although the right to be free from an unconstitutional taking of private property is certainly important, the economic interests protected in such a case "can hardly be considered as fundamental" as equal protection rights or the freedom of speech and petition rights).  Bridge must demonstrate that in addition to vindicating its own private interests, it also vindicated an important public right. *See Irwin Park II*, 130 Haw. at 319, 310 P.3d at 314 (noting that although the litigation involved only a single property, the case had "general precedential value for enforcing governmental adherence to the

12

dedication of private land for public parks and as historic sites, and for the

enforcement of the government's commitments to the preservation of such parks

and historic sites"). *Maui Tomorrow v. State, Bd. of Land & Nat. Res. of State of

Haw.*, 110 Haw. 234, 244, 131 P.3d 517, 527 (2006) (holding that the private

attorney general doctrine is an equitable rule that allows courts in their discretion

to award attorneys' fees to plaintiffs who have vindicated important public

rights.") (citation omitted).  California and Ninth Circuit case law are helpful in

expounding this requirement.

    Although this Court recognizes that California and Ninth Circuit case law

concerning the private attorney general doctrine are persuasive only, these

decisions are particularly cogent given the origins of Hawaii's adoption of the

private attorney general doctrine.  The Hawaiʻi Supreme Court adopted the PAG

Test directly from the California Supreme Court's decision in *Serrano v. Priest*,

569 P.2d 1303, and it has applied this test in every subsequent private attorney

general doctrine case since it introduced the doctrine in *Waiahole II*.  *See Waiahole

II*, 96 Haw. at 29-30, 25 P.3d at 804-05 (extensively quoting the rationale from

*Serrano*).  California has since codified its private attorney general doctrine in

California Civil Procedure Code section 1021.5, yielding a number of cases that

have developed the prongs of the PAG Test in a manner consistent with the

principles in *Serrano*.  Accordingly, the Court finds California and Ninth Circuit

case law supplementary to Hawaii's private attorney general doctrine decisions.

13

*See Irwin Park II*, 130 Haw. at 317 n.12, 310 P.3d at 312 n.12 (listing California court decisions on the private attorney general doctrine in support of its reasoning and noting that California's codified private attorney general doctrine was "analogous to our private attorney general doctrine").

As explained by the Ninth Circuit, "[t]he purpose of the 'private attorney general' doctrine is to encourage suits of societal importance which private parties would not otherwise have an incentive to pursue." *Unocal Corp. v. United States*, 222 F.3d 528, 544 (9th Cir. 2000). "Section 1021.5 was not designed 'as a method for rewarding litigants motivated by their own pecuniary interests who only coincidentally protect the public interest.'" *Id.* (quoting *Advanced Micro Devices, Inc. v. Nat'l Semiconductor Corp.*, 38 F. Supp. 2d 802, 815 (N.D. Cal. 1999)). The Ninth Circuit further explained that a plaintiff's motives are pertinent in determining whether to apply the private attorney general doctrine:

> [I]n determining whether to exercise its discretion to award fees under the doctrine, the district court must consider whether the plaintiff's own interests are sufficient to motivate such a suit, or whether plaintiffs in actions of this kind require the additional carrot of shifted fees to ensure that the public interest will be vindicated.

*Id.* In other words, was Bridge indeed "acting as a private attorney general in this action" to protect the public, or was Bridge seeking to further its own pecuniary interests? *See id.* at 544 ("[T]he purpose of this lawsuit was not to protect the public from future environmental disasters. Rather, the goal of [plaintiff's] suit was merely to shift the burden of paying for the cleanup from plaintiff to

14

[defendant]. [Plaintiff] was not acting as a private attorney general in this case, and the district court did not abuse its discretion in denying fees on this ground.").

Nothing in the record evinces that this lawsuit was motivated by a public interest as opposed to Bridge's own pecuniary interests. Hawaii's private attorney general doctrine does not prohibit plaintiffs from gaining a personal benefit; however, vindication of a public interest is compulsory. The keystone of the private attorney general doctrine is the recognition that those entrusted with the vindication of important public rights may not have the resources to properly represent these rights; thus, private parties need incentives to take up these causes. *See Waiahole II*, 96 Haw. at 30; 925 P.3d at 805 (quoting *Serrano*, 569 P.3d at 1313) ("Although there are within the executive branch of the government offices and institutions (exemplified by the Attorney General) whose function it is to represent the general public in such matters and to ensure proper enforcement, for various reasons the burden of enforcement is not always adequately carried by those offices and institutions, rendering some sort of private action imperative.").

Here, Bridge does not list a single "public right" vindicated by this litigation, nor did this litigation support any of the objectives of the private attorney general doctrine. Bridge explicitly contends that the results achieved in this litigation protect the rights of private property ownership, but fails to provide any support that such results also vindicated a "public right." Accordingly, the Court finds that Bridge was not acting as a private attorney general in this action. *See State v.*

15

*Hagerman Water Right Owners, Inc*., 947 P.2d 391, 399 (Idaho 1997), *abrogated on other grounds by Syringa Networks, LLC v. Idaho Dept. of Admin*., 305 P.3d 499 (Idaho 2013) ("Thus, if the plaintiff is protecting its own economic interests, it cannot claim that it is a public interest litigant.  It is not enough that the action results in benefits to the public; it must be pursued with the purpose of benefiting the public.").

        Based on this Court's analysis of (1) private attorney general doctrine cases in Hawaiʻi, (2) the principles underlying Hawaii's adoption of the private attorney general doctrine, and (3) persuasive California and Ninth Circuit case law on the private attorney general doctrine, this Court finds that this action fails to vindicate an important public right.  Accordingly, after careful consideration of the first prong of the PAG Test, the strength or societal importance of the public policy vindicated by the litigation, the Court finds that this first prong does not support an award of attorneys' fees to Bridge pursuant to the private attorney general doctrine.

B.      Necessity for Private Enforcement and the Resultant Burden on Plaintiff

        Bridge argues that it meets the second prong of the PAG Test because it was the "'sole representative challenging' the LUC's illegal and unconstitutional action."  ECF No. 384-1 at 13 (quoting *Irwin Park II*, 130 Haw. at 315, 310 P.2d at 310).  Bridge contends that "[g]iven the LUC's conduct, 'it was necessary for [Bridge] to bring the action to enforce' fundamental constitutional rights, and confirm that, in violating its statutory grant of authority and Bridge's constitutional

rights . . . the LUC went too far." *Id.* (citations omitted). Bridge asserts that Bridge alone bore the heavy burden of litigating an action that spanned years in various state and federal courts in recognition of the high stakes that the litigation represented. *Id.*

Although the Hawai'i Supreme Court has considered whether the plaintiff was the sole representative in determining the applicability of the second prong, Bridge's interpretation of the second prong of the PAG Test is incomplete. The second prong of the PAG Test requires this Court to consider both the (1) "necessity for private enforcement," and (2) "the magnitude of the resultant burden on the plaintiff." The Court finds that Bridge fails to meet either of the requirements of this prong.

1. Necessity for Private Enforcement

The Hawai'i Supreme Court has discussed this portion of the prong in a number of cases. *See, e.g., Irwin Park*, 130 Haw. at 315, 310 P.3d at 310; *Kaleikini*, 129 Haw. at 464; 304 P.3d at 262; *Superferry II*, 120 Haw. at 220, 202 P.3d at 1265; *Maui Tomorrow*, 110 Haw. at 245, 131 P.3d at 528; *Waiahole II*, 96 Haw. at 31-32, 25 P.3d at 806-07. The considerations included in this prong vary in each of the Hawai'i cases, but this Court finds that the salient consideration specific to this case is the extent to which an incentive was required for Bridge to pursue this action.

This requirement is best described by the Hawai'i Supreme Court in its analysis of the second prong in *Irwin Park*. The Hawai'i Supreme Court reasoned that the second prong specifically concerns the need to encourage suits involving interests with "enormous significance" to society as a whole, but interests that may be overlooked because they "do not involve the fortunes of a single individual to the extent necessary to encourage their private vindication in the courts." *Irwin Park*, 130 Haw. 306, 315, 310 P.3d at 310 (emphasis in *Irwin Park*) (quoting *Waiahole II*, 96 Haw. at 30, 25 P.3d at 802 (quoting *Serrano*, 569 P.2d at 1313)). Parties are thus more likely to meet the second prong when the action involves interests with enormous significance to society as a whole, but fail to affect a single party to the extent necessary to enforce that right. Hence, the need for "private vindication," *i.e.*, the necessity for private enforcement.

Private property interests generally *do* involve the fortunes of a single party to the extent necessary to encourage private vindication in courts. This is certainly true in this case. The Commission's decision seriously affected Bridge's "fortune" as evidenced in Bridge's filings. Bridge vigorously litigated and continues to litigate its position that it was severely affected by the Commission's actions. The Court is thus not persuaded that this case involved an interest that "fail[ed] to affect a single party to the extent necessary to enforce" that party's right such that private enforcement was necessary.

This case did involve the fortune of a single party, Bridge, to an extent necessary to encourage Bridge to vindicate its rights in court without any further external incentive.  Accordingly, Bridge fails to meet the "necessity for private enforcement" clause of the second prong.

2.  Magnitude of the Resultant Burden on Plaintiff

Even if Bridge had established that private enforcement was necessary in this case, this Court finds that Bridge fails to meet the second prong of the PAG test because the magnitude of the resultant burden on Bridge was proportionate to its personal interest.

The Court recognizes that this action has presented a long and challenging struggle for Bridge.  Indeed, Bridge was the sole plaintiff in this action. Notwithstanding, the "heavy burden" borne by Bridge in this litigation, the Court notes that Bridge was the only party that had standing to prosecute this case. Accordingly, even if this case presented the need for private enforcement, the magnitude of the resultant burden on Bridge was proportionate to its individual stake in the matter.  Bridge owned the property; thus, Bridge alone enjoys any pecuniary benefit from the litigation.  *See Hi-Tech Rockfall Const., Inc. v. Cty. of Maui*, No. CV 08-00081 DAE-LEK, 2009 WL 529096, at *19 (D. Haw. Feb. 26, 2009) (finding that the plaintiff could not meet the second prong of the PAG test because "Plaintiff is the only person standing to benefit from a decision on its remaining claims"); *Woodland Hills Residents Ass'n., v. City Council*, 593 P.2d

200, 213 (Cal. 1979) ("An award on the 'private attorney general' theory is

appropriate when the cost of the claimant's legal victory transcends his personal

interest, that is, when the necessity for pursuing the lawsuit placed a burden on the

plaintiff out of proportion to his individual stake in the matter." (internal quotations

omitted) (citation omitted)); *Serrano*, 569 P.3d at 1314 (opining that the second

prong requires that the necessary costs of securing vindication of a strong or

societally important public policy must "transcend the individual plaintiff's

pecuniary interest to an extent requiring subsidization").

      Accordingly, regardless of whether the magnitude of the resultant burden on

Bridge was substantial, the Court finds that such burden was appropriate given that

Bridge stood to benefit from the decision.  Bridge thus fails to meet the "magnitude

of the resultant burden on the plaintiff" portion of the second prong.

      The Court finds that this case did not present a need for private enforcement.

Nor was the magnitude of the resultant burden on Bridge disproportionate to its

potential benefit.  The Court thus finds that Bridge fails entirely to meet the second

prong of the PAG Test.

C.     The Number of People Standing to Benefit from the Decision

      Bridge contends that it satisfies the third prong of the PAG test because this

case will have "'value to society as a whole.'"  ECF No. 384-1 at 14 (quoting *Irwin

Park II*, 130 Haw. at 319, 310 P.3d at 314).  Bridge asserts that, "'all of the citizens

of the state, present and future st[and] to benefit from the decision' that Bridge

obtained, which 'involved constitutional rights of profound significance.'" *Id*.
(quoting *Waiahole II*, 96 Haw. at 31, 25 P.3d at 806). Bridge argues that the
litigation: (1) "cleared the way for development of the Property, which will
provide, among other things, housing and jobs to the public"; (2) "revitalized and
affirmed constitutional protections, in a case that will have precedential value for
the public good"; and (3) "helped bring clarity to the [Commission's] duties under
Haw. Rev. Stat. Chapter 205, and helped ensure that the [Commission] will
perform those duties as written and in accordance with the public's countervailing
constitutional rights." *Id*. at 14-15. The Court finds these arguments general,
conclusory, and insufficient to demonstrate that a "significant" number of people
benefitted from the litigation. Hawaii's case law on the third prong is instructive.

The Hawaiʻi Supreme Court has found that the third prong of the private
attorney general doctrine was satisfied in cases (1) in which "all citizens of the
state, present and future, stood to benefit from the decision"; (2) with "general
precedential value" on a government's obligation as to public parks and historic
preservation; and (3) in which society as a whole would have benefitted. *Waiahole
II*, 96 Haw. at 31, 25 P.3d at 806; *Irwin Park II*, 130 Haw. at 319, 310 P.3d at 314;
*Superferry II*, 120 Haw. at 221, 202 P.3d at 1266. Accordingly, under Hawaiʻi
law, the essential component of a case that satisfies the third prong of the PAG
Test is that the litigation affects nearly every individual in the State of Hawaiʻi, not
just a segment of the population. *See, e.g., Nelson v. Hawaiian Homes Comm'n*,

21

130 Haw. 162, 168, 307 P.3d 142, 148 (2013) (opining that the number of people

standing to benefit from the *Nelson* decision was substantial because "a shift in

funding for administrative and operating expenses provides a benefit to the

Hawaiian Home Lands trust, impacting at least the tens of thousands of known

beneficiaries on the waiting list, and ultimately benefitting the State as a whole,"

and "stewardship of Hawaiian Home Lands was an obligation taken on by the State

as a condition for admission into the union"); *Kaleikini*, 129 Haw. at 466, 304 P.3d

at 264 (concluding that the plaintiff had satisfied the third prong because the

court's opinion "established 'generally applicable law' regarding standing to

enforce historic preservation laws" and ensured that these laws would be enforced

as written, which the Court found was "for the public good" and "in the public

interest" (quoting Haw. Rev. Stat. § 6E-1)).

Bridge contends that "[t]his action established that, in administering its

duties under HRS Chapter 205, the State should—and indeed, must—give

consideration to an affected landowner's constitutional rights, something that the

State previous "refused to do."  ECF No. 402 at 16.  Bridge also argues that

"[p]rior to this action the [Commission] believed and behaved as if it could kill an

affordable housing project; deprive a property of all economically viable use; and

destroy most or all of a property's value, without any consideration of

constitutional rights or any consequence."  *Id*.  The record simply does not support

these contentions.  The only support Bridge provides is a citation to the

Commission's April 25, 2011 Order Adopting Proposed Findings of Fact,

Conclusions of Law, and Decision and Order Reverting the Petition Area, as

Amended as Commission's Final Decision (ECF No. 382-26), which is wholly

insufficient to provide support that following the jury's verdict, "[a]ll citizens of

the state . . . benefit from the decision." *Id*. at 7 (quoting *Irwin Park II*, 130 Haw.

at 317, 310 P.3d at 312).

Moreover, Bridge fails to explain how this case provides any precedential

value other than its conclusory statement that it "revitalized and affirmed

constitutional protections." ECF No. 384-1 at 14. If this Court were to accept

Bridge's arguments regarding the reasons for its entitlement to attorneys' fees in

this case, every case involving a taking would be entitled to attorneys' fees under

the private attorney general doctrine. Indeed, there would be no need for a private

attorney general doctrine test for takings cases. Such is not the present state of the

law, and Bridge fails to provide any legally sufficient support for such a

proposition.

The Court finds that Bridge fails to establish that a significant number of

people stand to benefit from the decision in this action. Because the Court FINDS

that none of the prongs of the PAG Test support an award of attorneys' fees, the

Court RECOMMENDS that the district court DENY Bridge's request for

attorneys' fees pursuant to the private attorney general doctrine.

III.  Sovereign Immunity

This Court notes that even if this Court had found that the three prongs of the PAG test supported fees in this action, the application of the private attorney general doctrine is nonetheless subject to the defenses a defendant may have, *e.g.* the defense of sovereign immunity.  *Nelson*, 130 Haw. at 168, 307 P.3d at 148; *Superferry II*, 120 Haw. at 225-29, 202 P.3d at 1270-74; *see also Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 269 n.44 (1975) (opining that in the absence of statutory authorization, an attorneys' fee award pursuant to the private attorney general doctrine against a state government would raise a question with respect to its permissibility under the Eleventh Amendment).  The State argues that even if Bridge could establish a legal basis for an award of attorneys' fees, the State has sovereign immunity against such an award, which the State has not waived.  *See* ECF No. 399 at 18.

Bridge argues that sovereign immunity cannot bar an award of attorneys' fees to Bridge because (1) the State "waived the protections of the Eleventh Amendment by removing to this court"; and (2) the uniquely self-executing and remedial natures of the Takings Clauses of the U.S. and Hawaiʻi constitutions, and the unique circumstances of this case, require an award of reasonable attorneys'' fees to Bridge.  Bridge's arguments are unavailing.

First, Bridge fails to provide any support for its contention that the State of Hawaiʻi waived its immunity as to attorneys' fees because the State removed this

24

action to this Court.  The State explicitly stated that removal to this Court "waived

Eleventh Amendment immunity but not any other aspect of sovereign immunity."

*See* ECF No. 191-1 at 3.  The Court is unable to find, nor does Bridge provide, any

evidence that the State waived its sovereign immunity for liability in the form of

attorneys' fees.  Accordingly, the Court finds this argument without merit.

Second, Bridge's arguments regarding the "self-executing" and "remedial"

nature of the Fifth Amendment is not applicable to the issue of attorneys' fees.  All

of the cases cited by Bridge in support of its argument that the State's sovereign

immunity does not bar an award of attorneys' fees are related to the issue of "just

compensation" under the Fifth Amendment and Article I, Section 20 of the

Hawaiʻi Constitution.  *See* Haw. Const. art. I, § 20 ("Private property shall not be

taken or damaged for public use without just compensation.").  The relevant

inquiry, however, is whether the State clearly relinquished its immunity in this case

as to attorneys' fees, not "just compensation."  *See Superferry II*, 120 Haw. at 226,

202 P.3d at 1271 ("'[A]n award of costs and fees to a prevailing party is inherently

in the nature of a damage award.'  . . . .  Accordingly, to properly award attorney's

fees and costs against [the State] in this case, there must be 'a clear relinquishment'

of the State's immunity in this case." (quoting *Fought & Co., v. Steel Eng'g &

Erection, Inc*., 87 Haw. 37, 51, 951 P.2d 487, 501 (1998); *Bush v. Watson*, 81

Haw. 474, 481, 918 P.2d 1130, 1137 (1996)); *see also Nelson*, 130 Haw. at 168,

307 P.3d at 148 ("It is true that sovereign immunity did not bar the Plaintiffs'

25

underlying claims, which were for declaratory and injunctive relief for violations

of Article XII, Section 1, and not damages. . . .  However, that sovereign immunity

was no bar to the underlying claim 'does not necessarily result in a right to

attorneys' fees.'") (quoting *Taomae v. Lingle*, 110 Haw. 327, 333, 132 P.3d 1238,

1244 (2006) (rejecting plaintiffs' argument that "if sovereign immunity does not

bar the underlying action, then no waiver is required for the imposition of fees and

costs" and denying attorneys' fees because (1) no statute authorized a shift in fees

to defendants, and (2) the fact that sovereign immunity did not preclude the court

from addressing the merits of the case did not necessarily result in a right to

attorneys' fees)).

      In determining the extent of the State's waiver of sovereign immunity, the

Hawaiʻi Supreme Court relies on principles derived from federal law.  *Kaleikini*,

129 Haw. at 467, 304 P.3d at 265.  First, "'a waiver of the Government's sovereign

immunity will be strictly construed, in terms of its scope, in favor of the

sovereign[.]'"  *Taylor-Rice v. State*, 105 Haw. 104, 110, 94 P.3d 659, 665 (2004)

(quoting *Lane v. Pena*, 518 U.S. 187, 192 (1996)).  Second, "a waiver of sovereign

immunity 'must be unequivocally expressed in statutory text[.]'"  *Id*. (quoting

*Pena*, 518 U.S. at 192).  Third, "[a] statute's legislative history cannot supply a

waiver that does not appear clearly in any statutory text[.]"  *Pena,* 518 U.S. at 191-

92 ("A waiver of the Federal Government's sovereign immunity must be

unequivocally expressed in statutory text . . .  'the 'unequivocal expression' of

elimination of sovereign immunity that we insist upon is an expression in statutory

text.'") (quoting *United States v. Nordic Village, Inc.*, 503 U.S. 30, 37) (1992).

Fourth, a court must not "'extend the waiver of sovereign immunity more broadly

tha[n] has been directed by the [legislature].'" *Id.* (quoting *United States v. Shaw*,

309 U.S. 495, 502 (1940). Finally, "sovereign immunity 'is not to be waived by

policy arguments[.]'" *Id.* (quoting *United States v. N.Y. Rayon Importing Co.*, 329

U.S. 654, 663 (1947)).

Simply stated, any waiver must be unequivocally and clearly expressed in

statutory text and cannot be waived by policy arguments, because it is the

legislature's and not the court's right to extend the waiver of sovereign immunity.

*See e.g. Pena*, 518 U.S. at 192 ("To sustain a claim that the Government is liable

for awards of monetary damages, the waiver of sovereign immunity must extend

unambiguously to such monetary claims."). The scope of the waiver of the

Government's sovereign immunity will be strictly construed in favor of the

sovereign.

Bridge argues that Article I, Section 20 of the Hawai'i Constitution is self-

executing and remedial; accordingly, no statute is required for enforcement or

remedial purposes. Bridge thus contends that no further authorization than what is

provided in Article I is required to shift attorneys' fees to the State. Bridge is

categorically mistaken.

First, as expressly stated by the Hawaiʻi Supreme Court, the Hawaiʻi Constitution does not waive the State's sovereign immunity "because claims based on the constitution are not 'founded upon any statute of the State [.]'" *Kaleikini*, 129 Haw. at 468, 304 P.3d at 266 (quoting *Kahoʻohanohano v. State*, 114 Haw. 302, 338, 162 P.3d 696, 732 (2007)).  Second, the Hawaiʻi Supreme Court has explicitly held that attorney's fees are not embraced within the meaning of "just compensation" for the purposes of Article I, Section 20 of the Hawaiʻi Constitution.  *State v. Davis*, 53 Haw. 582, 587, 499 P.2d 663, 667 (1972) ("We hold in accordance with the overwhelming weight of authority that attorneys' fees and expenses, including expert witness' fees, are not embraced within the meaning of 'just compensation' for purposes of article I, section [20] of the Hawaii Constitution[.]") (citations omitted)).  Finally, nothing in the plain language of article I, section 20 "clearly relinquishes the State's sovereign immunity with respect to attorney's fees." *Kaleikini*, 129 Haw. at 468, 304 P.3d at 266.

Pursuant to Hawaiʻi law, this Court must strictly construe this provision in favor of the sovereign.  Nothing in article I, section 20 expressly waives the State's immunity for attorneys' fees.  Nor does Bridge cite to any statute under Hawaiʻi law entitling Bridge to attorneys' fees for this particular action.  The analogous statutes Bridge cites in support of its contention that it is entitled to attorneys' fees for the Commission's unlawful taking, Hawaii Revised Statutes sections 101-27 and 113-4, highlights the problems with Bridge's sovereign immunity arguments.

28

The legislature explicitly provided for attorneys' fees in these statutes, yet did not do so for regulatory takings cases. The fact that in other takings cases, the legislature explicitly provided for attorneys' fees "increases the possibility that, if the legislature had intended" to provide for attorneys' fees in cases like this, the legislature "would have expressed such an intent." *Beneficial Haw., Inc. v. Kida*, 96 Haw. 289, 311, 30 P.3d 895, 917 (2001) (quoting *Wilson v. Kealakekua Ranch, Ltd.*, 57 Haw. 124, 130-32, 551 P.2d 525, 529-30 (1976)).

Bridge argues that it "cannot be the law" that despite the State's failure to "properly institute proceedings to take a landowner's property, thereby causing Bridge to incur attorneys' fees to establish that a taking occurred, the State remains immune to an award of fees for violating Bridge's constitutional rights (which mandate a damages remedy)." ECF No. 402 at 11. Bridge contends that the State "would be free to disregard its obligations under the U.S. and Hawaii Constitutions (as it did here), force an aggrieved landowner to incur substantial costs to prove that a taking occurred (as it did here), and avoid any obligation to pay back those attorneys' fees and costs . . . ." *Id*. Bridge argues that "any award of just compensation would thus be insufficient to place the landowner in the same pecuniary position occupied prior to the State's conduct" and that "[s]uch a result would defeat the very purposes that the Takings Clause is supposed to serve." *Id*. at 11-12.

These arguments are policy arguments. This Court is not free to award fees on the basis of its view of sound policy. As stated by the Hawaiʻi Supreme Court, "sovereign immunity is not to be waived by policy arguments[.]" *Kaleikini*, 129 Haw. at 467, 304 P.3d at 265. It is not this Court's "right to extend the waiver of sovereign immunity more broadly than has been directed by the [legislature.]" *Id.*

The Court finds that Bridge fails to establish that the State has waived sovereign immunity pursuant to Article I, Section 20 or Article XVI, § 16 of the Hawaiʻi Constitution. Accordingly, this Court finds that even if each prong of the PAG Test supported an award of attorneys' fees pursuant to the private attorney general doctrine, the State's immunity bars Bridge's request for fees based on the private attorney general doctrine. *See id.* at 469, 304 P.3d at 267 (concluding that all three prongs of the test for the private attorney general doctrine had been satisfied; however, there had "been no clear relinquishment of the State's sovereign immunity," and thus, the State's immunity barred the plaintiff's "request for fees based on the private attorney general doctrine").

## IV. Bridge's Request for Costs

A.    Compensable Costs

Bridge requests $62,810.06 in costs as follows:

| Service | Total |
|---|---|
| Deposition services | $13,656.41 |
| Outside printing and copies | $7,251.15 |

| Mediation services | $5,785.33 |
|---|---|
| Travel expenditures | $2,459.40 |
| Process servers | $1,656.54 |
| Filing fees | $519.00 |
| Witness and mileage fees | $512.00 |
| Courier services | $79.18 |
| Experts services | $30,891.05 |
| **TOTAL COSTS** | **$62,810.06** |

Of the nine foregoing categories, Bridge contends that only costs for: (1) printed or electronically recorded transcripts necessarily obtained for use in the case; (2) disbursements for printing and witnesses; and (3) exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case are compensable pursuant to 28 U.S.C. § 1920(2)-(4). *See* ECF No. 384-1 ("Here, such non-taxable costs include: mediation services, travel, process servers, filing fees, witness and mileage fees, and courier serves."); ECF No. 399 at 26 n.5 (noting that "[Bridge] only claims the transcript and copying expenses as costs, with the remainder as non-taxable expenses"). Accordingly, this Court treats only the first two categories listed above, deposition services and outside printing and copies, as compensable under § 1920.

Bridge argues that if it is entitled to recover its attorneys' fees, it should be entitled to recover for the other categories Bridge asserts are non-compensable under § 1920. *See* ECF No. 402 at 15. The Court finds that Bridge is not entitled

to recover its attorneys' fees; thus, the Court finds that only the first two categories are compensable.

B.     Reasonableness of Costs

The State objects to the entire $7,251.15 in copying costs requested by Bridge.  *See* ECF No. 399 at 27.  The State argues that it has been objecting for years concerning the number of exhibits that Bridge has listed, and the number of exhibits the State has had to list to counter Bridge's exhibits.  *Id.*  The State contends that:  (1) the exhibits were unnecessary; (2) trying the case with that many documents would be impossible; and (3) Bridge introduced only 9 of its 320 exhibits, 11 of its 223 defense exhibits, and 18 of the 84 joint exhibits.  *Id.* at 27-28.  The State argues that Bridge's request for $7,251.15 in costs for preparing five copies of Bridge's exhibits and one-half of the joint exhibits (where the State and Bridge agreed to split the costs of copying) is unreasonable and should not be assessed.  The State asks this Court to award only 10% of the copying costs, or $725.15.  *Id.* at 28.

Bridge counters that it was under no obligation to tailor its trial presentation.  ECF No. 402 at 14.  Bridge contends that it needed to ensure that it had all potentially relevant exhibits ready and available to establish the third *Penn Central* factor, *i.e.*, evidence of singling out or of conduct that was unfair unreasonable and in bad faith.  *Id.* at 14-15.  Bridge's request for $7,251.15 in copying costs consists of the following items:

| Date | Cost | Description |
|---|---|---|
| 05/10/13 | $178.04 | HonBlue- Copies and binding of Brief |
| 10/10/13 | $75.86 | HonBlue- Copies and binding of Brief filed in Ninth Circuit Court |
| 07/14/14 | $40.47 | Professional Image – Copy and binding charges for 13 originals |
| 07/01/16 | $519.28 | Professional Image, Inc. Photocopies of Documents |
| 02/28/18 | $1,121.80 | Honolulu Copy LLC – ½ cost Photocopies of Exhibits 2001 to 2083 |
| 02/28/18 | $5,262.30 | Honolulu Copy LLC – Photocopies of Documents |
| 03/12/18 | $53.40 | Professional Image, Inc. – KIP print color oversize mounted on foam core |

ECF No. 384-9 at 1-2.

Section 1920(4) "restricts the award of costs to those incurred for copies necessarily obtained for use in the case"; however, § 1920(4) "is not, in itself, a justification permitting the award of costs for any task necessary to the prosecution or defense of a case." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914, 928 (9th Cir. 2015). "The proper application of a narrowly construed § 1920(4) requires that the tasks and services for which an award of costs is being considered must be described and established with sufficient specificity, particularity, and clarity as to permit a determination that costs are awarded for making copies." *Id.* "'Document production' and other similarly generic statements on the invoices are unhelpful in determining whether those costs are taxable." *Id.* (quoting *In re Ricoh Co. Patent Litig.*, 661 F.3d 1361, 1368 (Fed. Cir. 2011)). "Further, a description of

33

a task is useful only to the extent it accurately reflects the task for which copying

costs are sought." *Id*.

Local Rule 54.2 corroborates § 1920(4)'s requirement for some particularity

in a request for printing costs.  Rule 54.2 requires that the party requesting copying

costs submit an affidavit describing the documents copied, the number of pages,

the cost per page, and the use of the documents copied.  LR54.2(f)(4).  The cost of

copies obtained for the use and/or convenience of the party seeking recovery and

its counsel is not taxable.  *Id*.

Bridge provided the information in the table above and attached invoices

from HonBlue, Professional Image, and Honolulu Copy detailing the number of

copies and the cost of each copy.  *See* ECF No. 384-11.  This Court is unable to

assess, however, whether all of these copies were necessarily obtained for use in

the case.  Bridge fails to provide any information on what was being copied and for

what purpose.

For example, the largest invoice is from Honolulu Copy totaling $5,510.26.[1]

*See* ECF No. 384-11 at 6.  The invoice provides that 36,220 black and white copies

---

[1]  The Court notes that Bridge's table requests $5,262.30 for this invoice; however,
it appears that Bridge may have inadvertently excluded the $247.96 in tax in its
request for reimbursement of that invoice.  *Compare* ECF No. 384-9 at 2 (table
entry dated 02/28/18 requesting $5,262.30 for photocopies of documents prepared
by Honolulu Copy) with ECF No. 384-11 at 6 (reflecting an invoice total of
$5,262.30 plus $247.96 in Sales Tax, with an invoice balance due of $5,510.26).
For the purposes of this Motion, the Court considers Bridge's request to be for

were made, and that 3,382 color copies were made. *Id.* The invoice provides no

further information regarding the contents of these copies or for what purpose the

copies were used. Neither the Motion nor Mr. Voss's Declaration elucidates the

contents of or reason for these copies. Accordingly, the Court has no means of

discerning whether the copies were necessarily obtained for use in the case or for

the use and/or convenience of the party seeking recovery. *See, e.g., Broadband

iTV, Inc. v. Hawaiian Telcom, Inc*., No. CV 14-00169 ACK-RLP, 2015 WL

9274092, at \*5 (D. Haw. Nov. 25, 2015), *adopted by* 2015 WL 9272842 (D. Haw.

Dec. 17, 2015) ("Although Defendant . . . failed to provide an affidavit in

compliance with Local Rule 54.2(f)(4), Defendant['s] . . . Motion, Reply, and

attached vendor invoices provide the necessary information for the Court to assess

whether these copies were necessarily obtained for use in the case.").

 The Court finds, however, that some of the copying charges are

compensable. First, the Court finds that the charges invoiced by HonBlue on

04/18/13 and 05/29/13 appear related to the appeal to the Ninth Circuit Court of

Appeals. The Court thus finds that these charges ($178.04 and $75.86) were

necessary and therefore, are compensable. Second, the Court finds that the invoice

from Honolulu Copy dated 03/02/18 in the amount of $2,243.61 was for joint

exhibits for which the State and Bridge agreed to share the cost ($1,121.80 each).

---

$5,510.26, the total amount of the invoice including sales tax, as it requested for all
the other invoices.

Accordingly, the Court finds that this cost was necessarily obtained for use in the case and thus, finds this cost compensable. Finally, the Court finds that the invoice in the amount of $53.40 from Professional Image dated 03/12/18 appears to be for a trial exhibit. Accordingly, the Court finds that this cost was necessarily obtained for use in the case, and thus finds this cost compensable.

In total, the Court finds that Bridge has demonstrated that Bridge necessarily incurred $1,429.10[2] for use in the case. Thus, the Court recommends that the district court GRANT Bridge its request for $1,429.10 for outside printing and copying costs, but DENY Bridge the remaining $5,822.05 requested by Bridge for outside printing and copying costs.

The State does not object to Bridge's request for deposition costs. Accordingly, the Court recommends that the district court GRANT Bridge the $13,656.41 requested by Bridge for deposition services. The Court thus recommends that the district Court award Bridge a total of $15,085.51[3] in costs pursuant to § 1920(2)-(4).

## CONCLUSION

Based on the foregoing, the Court FINDS that Plaintiff Bridge Aina Le'a, LLC is not entitled to attorneys' fees pursuant to Hawaii's private attorney general

---

[2] $178.04 (04/18/13) + $75.86 (05/29/13) + $1,121.80 (1/2 of 03/02/18 invoice) + $53.40 (03/12/18) = $1,429.10.

[3] $1,429.10 (outside printing and copying costs) + $13,656.41 (deposition services) = $15,085.51.

doctrine; however, the Court FINDS that Bridge is entitled to a total of $15,085.51

in costs.  The Court thus RECOMMENDS that the district court GRANT Bridge

Aina Le'a, LLC a total of $15,085.51 in costs, but DENY Bridge Aina Le'a, LLC's

Motion for Attorneys' Fees and Costs in all other respects.

IT IS SO ORDERED.

DATED:  Honolulu, Hawai'i, August 31, 2018.



/S/ Kenneth J. Mansfield
Kenneth J. Mansfield
United States Magistrate Judge

CV11-414 SOM-KJM; BRIDGE AINA LE'A, LLC v. STATE OF HAWAII LAND USE
COMMISSION; FINDINGS AND RECOMMENDATIONS TO GRANT IN PART AND
DENY IN PART BRIDGE AINA LE'A, LLC'S MOTION FOR ATTORNEYS' FEES AND
COSTS