IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BRIDGE AINA LE'A, LLC, | ) | Civ. No. 11-00414 SOM-KJM |
| | ) | |
| Plaintiff, | ) | ORDER MODIFYING AND ADOPTING |
| | ) | AS MODIFIED THE MAGISTRATE |
| vs. | ) | JUDGE'S FINDINGS AND |
| | ) | RECOMMENDATIONS REGARDING |
| STATE OF HAWAII LAND USE | ) | ATTORNEYS' FEES AND COSTS |
| COMMISSION; VLADIMIR P. | ) | |
| DEVENS, in his individual and | ) | |
| official capacity; KYLE | ) | |
| CHOCK, in his individual and | ) | |
| official capacity; THOMAS | ) | |
| CONTRADES, in his individual | ) | |
| and official capacity; LISA | ) | |
| M. JUDGE, in her individual | ) | |
| and official capacity; | ) | |
| NORMAND R. LEZY, in his | ) | |
| individual and official | ) | |
| capacity; NICHOLAS W. TEVES, | ) | |
| JR., in his individual and | ) | |
| official capacity; RONALD I. | ) | |
| HELLER, in his individual and | ) | |
| official capacity; DUANE | ) | |
| KANUHA, in his official | ) | |
| capacity; CHARLES JENCKS, in | ) | |
| his official capacity; JOHN | ) | |
| DOES 1-10; JANE DOES 1-10; | ) | |
| DOE PARTNERSHIPS 1-10; DOE | ) | |
| CORPORATIONS 1-10; DOE | ) | |
| ENTITIES 2-10; and DOE | ) | |
| GOVERNMENTAL UNITS 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| _____ | ) | |

**ORDER MODIFYING AND ADOPTING AS MODIFIED THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS REGARDING ATTORNEYS' FEES AND COSTS**

**I.      INTRODUCTION.**

Plaintiff Bridge Aina Le'a ("Bridge") and Defendant State of Hawaii Land Use Commission (the "LUC") have filed

separate objections to the Magistrate Judge's Findings & Recommendations ("F&R") to grant in part and deny in part Plaintiff Bridge's Motion for Attorneys' Fees and Costs. *See* ECF Nos. 428, 429, 431.

In the F&R, the Magistrate Judge recommended that this court deny Bridge any attorneys' fee award because Bridge is not entitled to fees under the private attorney general doctrine, and because the LUC's sovereign immunity bars any award of attorneys' fees. The Magistrate Judge also recommended that Bridge be awarded $15,085.51 of its requested costs, including $1,429.10 in copying costs.

Bridge objects to the denial of its request for attorneys' fees and argues that it is entitled to the remainder of its requested costs. The LUC objects to the award of copying costs, arguing that it should be limited to $725.15.

Having reviewed the F&R in light of the parties' objections, this court concludes that the LUC's waiver of Eleventh Amendment sovereign immunity extends to attorneys' fees and that therefore this court has jurisdiction over Bridge's request. However, the court agrees with the Magistrate Judge that Bridge does not meet the requirements for recovery under the private attorney general doctrine. The court also adopts the Magistrate Judge's recommendation that Bridge be awarded $15,085.51 in costs.

The court therefore adopts the F&R with modified reasoning on whether the LUC's sovereign immunity bars an award of attorneys' fees. The court denies Bridge's request for attorneys' fees and awards Bridge $15,085.51 in costs. Pursuant to Local Rule 7.2(d), the court finds this matter suitable for disposition without a hearing.

II.      **BACKGROUND.**

The factual and procedural background of this case has been discussed at length in the court's previous orders. *See, e.g.*, ECF Nos. 131, 283, 318, 404. For the purposes of this order, the court adopts the F&R's background section, finding that it sets forth the relevant facts and noting that neither party raised any objections related to that section. *See* ECF No. 428, PageID #s 11303-06. Because the parties and the court are familiar with the background of this case, this court describes only those events relevant to the F&R and to Bridge's Motion.

This case arises out of a decision by the LUC to reclassify a parcel of land owned by Bridge from urban use to agricultural use. *See* ECF No. 1. Bridge filed a Complaint in state court, asserting eleven counts against the LUC and some of its commissioners for violations under the United States Constitution, the Hawaii constitution, and various Hawaii laws. *See* ECF No. 1-2. The Complaint was then removed to this court

3

based on federal question jurisdiction.  *See* ECF No. 1.  The case was stayed for several years pending the resolution of related state-court proceedings.  *See* ECF No. 48.

Following the completion of the state-court proceedings and this court's partial grant of the LUC's motion for summary judgment, Bridge had two takings claims that were tried to a jury.  *See* ECF No. 131, PageID # 3112.  On March 23, 2018, the jury found in favor of Bridge, concluding that the LUC's decision to reclassify the land constituted a taking under both the *Lucas* and *Penn Central* analyses.  *See* ECF Nos. 372, 373.  On March 30, 2018, the court awarded Bridge $1 in nominal damages.[1]  *See* ECF No. 375.  Bridge then filed the present Motion on April 13, 2018.[2]  ECF No. 384.

The F&R was filed on August 31, 2018, and both parties filed their objections shortly thereafter.  ECF Nos. 428, 429, 431.  This court requested supplemental briefs on the scope of the LUC's sovereign immunity in federal court, and the parties filed their supplemental briefs on December 3, 2018.  ECF Nos. 434, 436, 437.

---

[1] In pretrial proceedings, this court struck one of Bridge's expert witnesses and limited another.  Bridge was left without the just compensation evidence it had hoped to present.

[2] On April 20, 2018, the LUC filed a "Motion for Judgment as a Matter of Law or, in the Alternative, for a New Trial," which this court denied on June 27, 2018.  ECF Nos. 385, 404.

III.        **STANDARD OF REVIEW.**

Congress has empowered magistrate judges, upon referral of dispositive pretrial motions by district judges, to conduct hearings and issue findings and recommendations regarding dispositive pretrial motions. *See* 28 U.S.C. § 636(b)(1)(B); *see also* Fed. R. Civ. P. 72(b) (promulgating rule). The Federal Rules of Civil Procedure permit a district judge to similarly refer a post-judgment motion for attorneys' fees "as if it were a dispositive pretrial matter," *see* Fed. R. Civ. P. 54(d)(2)(D), and such motions are customarily referred to magistrate judges in this district under Local Rule 54.3(h).

A district judge reviews a magistrate judge's findings and recommendations prior to ruling on the motion, and may accept, reject, or modify, in whole or in part, the findings and recommendations made by the magistrate judge. Fed. R. Civ. P. 72(b). If a party timely objects to portions of the findings and recommendations, the district judge reviews those portions of the findings and recommendations de novo. Fed. R. Civ. P. 72(b)(3); Local Rule 74.2. The district judge may consider the record developed before the magistrate judge. Local Rule 74.2. The district judge also has discretion to receive further evidence. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Rule 74.2; *see also United States v. Raddatz*, 447 U.S. 667, 676 (1980) (explaining that a district judge has wide

discretion in deciding whether to allow new evidence).  The de
novo standard requires the district court to consider a matter
anew and arrive at its own independent conclusions, but a de
novo hearing is not ordinarily required.  *See United States v.
Remsing*, 874 F.2d 614, 617 (9th Cir. 1989); *United States v.
Boulware*, 350 F. Supp. 2d 837, 841 (D. Haw. 2004); Local Rule
74.2.

        The district judge may accept the portions of the
findings and recommendations to which the parties have not
objected as long as it is satisfied that there is no clear error
on the face of the record.  *See United States v. Bright*, Civ.
No. 07-00311 ACK/KSC, 2009 WL 5064355, at *3 (D. Haw. Dec. 23,
2009); *Stow v. Murashige*, 288 F. Supp. 2d 1122, 1127 (D. Haw.
2003); Fed. R. Civ. P. 72(b) advisory committee's note.

**IV.        ANALYSIS.**

        Bridge objects to the portions of the F&R that
recommended denial of its request for an award of attorneys'
fees, totaling $662,227,03, and to the portions recommending
denial of $47,724.55 of its requested costs.  *See* ECF No. 429.
The LUC filed cross-objections, arguing that the Magistrate
Judge's recommended award of $1,429.10 in copying costs should
be reduced to $725.15.  *See* ECF No. 431.

        Having performed a de novo review of the portions of
the F&R to which the parties objected, the court adopts the

6

Magistrate Judge's recommendations to deny Bridge's request for attorneys' fees and to award Bridge $15,085.51 in costs. However, as an initial matter, the court modifies the Magistrate Judge's reasoning with respect to whether the LUC's sovereign immunity bars an award of attorneys' fees.

### A. This Court Is Not Barred from Awarding Attorneys' Fees to Bridge Because the LUC Waived Its Sovereign Immunity by Removing the Case.

Bridge objects to the Magistrate Judge's conclusion that the LUC's sovereign immunity bars an award of attorneys' fees. *See* ECF No. 429, Page ID # 11347; ECF No. 428, PageID # 11324. The Magistrate Judge based its conclusion on the LUC's statement in a motion in limine that "removal to this Court 'waived Eleventh Amendment immunity but not any other aspect of sovereign immunity.'" ECF No. 428, PageID # 11325 (quoting ECF No. 191-1, PageID # 4609). This court concludes that the LUC's waiver of Eleventh Amendment immunity extends to attorneys' fees and that the LUC's sovereign immunity is not a jurisdictional bar to an award of attorneys' fees by this court.

The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Under the Eleventh Amendment, a state is immune from

lawsuits for monetary damages or other retrospective relief brought in federal court by its own citizens or citizens of other states. *Frew ex rel. Frew v. Hawkins*, 540 U.S. 431, 437 (2004); *Papasan v. Allain*, 478 U.S. 265, 276 (1986); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 105-06 (1984). Federal court actions against agencies or instrumentalities of a state, such as the LUC, are also barred by the Eleventh Amendment. *Sato v. Orange Cty. Dep't of Educ.*, 861 F.3d 923, 928 (9th Cir. 2017); *Blount v. Sacramento Cty. Superior Court*, 559 F. App'x 623, 623 (9th Cir. 2014). Eleventh Amendment immunity does not apply if Congress exercises its power under the Fourteenth Amendment to override Eleventh Amendment immunity, or if a state consents to federal suit. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-68 (1989); *Pennhurst*, 465 U.S. at 99.

States have Eleventh Amendment immunity to takings claims seeking just compensation, meaning that federal courts lack jurisdiction over such claims. *See Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 954 (9th Cir. 2008) (holding that "the constitutionally grounded self-executing nature of the Takings Clause does not alter the conventional application of the Eleventh Amendment"); *see also City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 710 (1999) ("As its name

suggests, . . . just compensation is, like ordinary money damages, a compensatory remedy.").

However, sovereign immunity is "quasi-jurisdictional in nature," meaning that it may be waived. *See In re Bliemeister*, 296 F.3d 858, 861 (9th Cir. 2002) (citing *Hill v. Blind Indus. & Servs.*, 179 F.3d 754, 760 (9th Cir. 1999), *amended by* 201 F.3d 1186 (9th Cir. 2000)). A state may waive Eleventh Amendment immunity by voluntarily invoking federal jurisdiction or by engaging in "conduct that is incompatible with an intent to preserve that immunity." *See id.*; *Hill*, 179 F.3d at 758. A state's removal of a case to federal court signals the state's voluntary invocation of federal jurisdiction for that case, whether the case involves state law claims, federal law claims, or both. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 624 (2002) ("[R]emoval is a form of voluntary invocation of a federal court's jurisdiction sufficient to waive the State's otherwise valid objection to litigation of a matter (here of state law) in a federal forum."); *Embury v. King*, 361 F.3d 562, 564 (9th Cir. 2004) ("[T]he rule in *Lapides* applies to federal claims as well as to state claims and to claims asserted after removal as well as to those asserted before removal.").

Thus, when the LUC removed this case to this court, it voluntarily invoked federal jurisdiction and waived its Eleventh

Amendment immunity with respect to Bridge's state and federal claims.  The LUC conceded this waiver early in the case.  *See* ECF No. 37, PageID # 327 (stating in the LUC's reply to Bridge's motion to dismiss, "Defendants do not dispute they waived the protections of the Eleventh Amendment by removing to this court.").  Additionally, the LUC's behavior during trial proceedings was consistent with waiver; it never raised a sovereign immunity defense and did not argue that this court lacked jurisdiction to award money damages against it.  The LUC appears to concede as much.  *See* ECF No. 37, PageID # 327 ("Defendants do not dispute they waived the protections of the Eleventh Amendment by removing to this court.").

Despite its waiver of Eleventh Amendment immunity, the LUC now argues that its sovereign immunity bars this court from awarding attorneys' fees.  *See* ECF No. 399, PageID # 9551.  The LUC appears to argue that its sovereign immunity in federal court is broader than the Eleventh Amendment and bars an award of attorneys' fees.  It is true that "the sovereign immunity of the States neither derives from, nor is limited by, the terms of the Eleventh Amendment."  *Alden v. Maine*, 527 U.S. 706, 713 (1999).  Thus, states have sovereign immunity from suit in their own courts, in addition to federal courts.  *See id.*  However, this court is unaware of case law holding that, if a state waives Eleventh Amendment immunity and submits to the

jurisdiction of a federal court, the state retains some additional sovereign immunity preventing the federal court from awarding attorneys' fees if the state is on the losing end of the litigation.

Such a rule would give states an unfair tactical advantage in federal court. "In large part the rule governing voluntary invocations of federal jurisdiction has rested upon the problems of inconsistency and unfairness that a contrary rule of law would create." *Lapides*, 535 U.S. at 622-23 ("And that determination reflects a belief that neither those who wrote the Eleventh Amendment nor the States themselves (insofar as they authorize litigation in federal courts) would intend to create that unfairness." (internal citation omitted)). Inconsistency and unfairness would certainly result if a state could actively litigate a matter in federal court and then invoke sovereign immunity post-trial. *See Embury*, 361 F.3d at 566 ("[A]llowing the reassertion of Eleventh Amendment immunity, after the State had litigated extensively in federal court but began to anticipate an unfavorable outcome, would waste the time and money of the litigants and the resources of the courts."). While this court understands that the LUC is saying that it waived only Eleventh Amendment immunity but retains some other aspect of sovereign immunity that bars a fee award, the problem

is that the LUC cannot actually point to an operable immunity source that applies here.

A more sensible understanding of the scope of sovereign immunity in federal court is that once a state voluntarily submits to federal jurisdiction, it cannot then pick and choose the stages of federal litigation in which it will participate. "Allowing a State to waive immunity to remove a case to federal court, then 'unwaive' it to assert that the federal court could not act, would create a new definition of chutzpah." *Id.*

To be clear, the court is not saying that a waiver of Eleventh Amendment immunity via removal necessarily means that a state *will* pay attorneys' fees. Rather, it means that the court may exercise jurisdiction to award attorneys' fees provided the plaintiff proves that it is entitled to such an award (which, as discussed below, Bridge has not proven here). Nor is this court saying that Eleventh Amendment immunity is the only kind of sovereign immunity the LUC enjoys. What the court is saying is that, whatever other forms of sovereign immunity are available, the LUC does not show that any such form has relevance here.

The court is unpersuaded by the LUC's argument that the LUC is immune from an award of attorneys' fees under Hawaii law, and that this court, in its exercise of supplemental jurisdiction over the state law claims, is therefore prevented

from awarding attorneys' fees.  *See* ECF No. 436; *see also* ECF
No. 399, PageID #s 9550-53.

The most striking thing about the LUC's argument is
that it purports to rely on state law as determinative of this
court's jurisdiction.  This case included claims under both
federal and state law.  With respect to the takings claims that
were tried, this court instructed the jury on the takings clause
of the Fifth Amendment to the United States Constitution.  *See*
ECF No. 372, PageID # 7450.  The elements of takings claims
under federal and Hawaii law are the same.  The LUC advances no
reason that state law should govern this court's jurisdiction
over the awardability of attorneys' fees when the LUC has
conceded that a monetary award of nominal damages may be
assessed against it on underlying federal and state claims.  The
LUC notably had no objection to that award of nominal damages
against it on the federal and state takings claims.

Moreover, it is unclear that the LUC's sovereign
immunity would bar an award of attorneys' fees even under Hawaii
law with respect to the state claims.  In its supplemental
brief, the LUC asserts that "Hawai'i courts have definitively
stated that the State is immune from an award of attorneys' fees
under the private-attorney-general doctrine."  ECF No. 436,
PageID #s 11373.  The LUC then does not itself cite supporting
Hawaii case law, instead referring to the Magistrate Judge's

sovereign immunity analysis in the F&R. *See id.* at 11380

(citing ECF No. 428, PageID #s 11324-30).

Hawaii law is like federal law in that a state is
immune from lawsuits for money damages unless the state consents
to suit. *See Bush v. Watson*, 81 Haw. 474, 481, 918 P.2d 1130,
1137 (1996) ("[T]he sovereign State is immune from suit for
money damages, except where there has been a clear
relinquishment of immunity and the State has consented to be
sued." (citations and internal quotation marks omitted)).
Hawaii courts have "recognized that 'an award of costs and fees
to a prevailing party is inherently in the nature of a damage
award.'" *Kaleikini v. Yoshioka*, 129 Haw. 454, 467, 304 P.3d
252, 265 (2013) (quoting *Sierra Club v. Dep't of Transp. of
Haw.*, 120 Haw. 181, 226, 202 P.3d 1226, 1271 (2009)). It would
follow that, by litigating Bridge's state law claims for money
damages on the merits, the LUC consented to suit with respect to
those claims and opened itself up to an award of attorneys' fees
against it if Bridge prevailed and proved entitlement to fees.

In its opposition brief to Bridge's Motion, the LUC
cites two Hawaii cases in support of its argument that a
separate waiver of sovereign immunity with respect to attorneys'
fees is required: *Kaleikini v. Yoshioka*, 129 Haw. 454, 304 P.3d
252 (2013), and *Nelson v. Hawaiian Homes Commission*, 130 Haw.
162, 307 P.3d 142, 148 (2013). ECF No. 399, PageID # 399. In

both cases, the Hawaii Supreme Court held that sovereign immunity barred an award of attorneys' fees against the state because the state had not explicitly waived its immunity.  *See Kaleikini*, 129 Haw. at 467-69, 304 P.3d at 265-67; *Nelson*, 130 Haw. at 168-73, 307 P.3d at 148-53.  But *Kaleikini* and *Nelson* are distinguishable from this case.

In those cases, the plaintiffs sought injunctions and/or declaratory relief, not money damages or other retrospective relief that would be barred by sovereign immunity. *See Kaleikini*, 129 Haw. at 458, 304 P.3d at 256 (explaining that the plaintiff brought suit seeking an injunction); *Nelson*, 130 Haw. at 168, 307 P.3d at 148  ("[S]overeign immunity did not bar the Plaintiffs' underlying claims, which were for declaratory and injunctive relief . . . , and not damages.").  The LUC is similarly not disputing that injunctive and declaratory relief may be awarded against it.

Sovereign immunity became an issue in *Kaleikini* and *Nelson* only when the plaintiffs prevailed and sought attorneys' fees.  By contrast, Bridge from the start sought just compensation.  Whether Bridge could recover money damages was not litigated, given the LUC's removal of this case and consent to suit for such damages.  *See Figueroa v.* States, 61 Haw. 369, 381, 604 P.2d 1198, 1205 (1979) ("It is well established that the State as sovereign is immune from suit except as it consents

15

to be sued."). The LUC presents no case suggesting that, if a state consents to a suit seeking money damages and waives sovereign immunity early in the proceedings, it can later invoke sovereign immunity solely with respect to attorneys' fees.

The LUC has not asked this court to treat the federal and state law claims differently, whether for the purposes of sovereign immunity or otherwise. During trial, the LUC never raised a sovereign immunity defense with respect to the state law claims, never asked for different presentations of evidence under state and federal law, and never asked for separate jury instructions under state and federal law. The court sees no reason to now treat the claims differently with respect to its jurisdiction to award attorneys' fees.

Bridge responds by arguing that, with respect to both state and federal takings claims, the LUC lacks sovereign immunity "with regard to successful regulatory takings claims" in light of "the self-executing and uniquely remedial natures of the takings clauses found in both the U.S. and Hawaii constitutions." ECF No. 429, PageID # 11347. Bridge appears to argue that a statutory waiver of sovereign immunity is not required because no statute is required for the enforcement of the Fifth Amendment of the United States Constitution and Article I, Section 20 of the Hawaii constitution. ECF No. 384-1, PageID #s 9105-9.

This argument confuses two questions: (1) whether a statute is required for the enforcement of a constitutional provision, and (2) whether a state has waived sovereign immunity through passage of a statute that indicates its consent to suit. Not only are these questions distinct, they do not address whether the LUC's waiver of sovereign immunity via removal to this court extends to an award of attorneys' fees. In any event, this court need not delve into the issue of whether a statute is or is not required. This court concludes that there is no basis for treating its jurisdiction over an attorneys' fees motion differently from its unchallenged jurisdiction over a just compensation award. Both involve monetary awards sought against a state. If immunity as to one was indisputably waived, that waiver cannot be withdrawn as to the other after judgment is entered.

> **B.  Bridge Is Not Entitled to Attorneys' Fees Under the Private Attorney General Doctrine.**

Having concluded that there is no jurisdictional bar to an attorneys' fee award, this court turns to whether to order such an award. The long-standing rule in federal courts is that "absent an express statutory command, attorney's fees will not be awarded in civil cases." *Home Sav. Bank, F.S.B. by Resolution Tr. Corp. v. Gillam*, 952 F.2d 1152, 1162 (9th Cir. 1991) (citing *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*,

421 U.S. 240, 262 (1975)); *see also Donovan v. Burlington N., Inc.*, 781 F.2d 680, 682 (9th Cir. 1986) ("In this country, 'the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser.'" (quoting *Alyeska*, 421 U.S. at 247)). Bridge acknowledges that there is no federal statute allowing for an award of attorneys' fees in takings cases. *See* ECF No. 384-1, PageID # 9114 (stating that there "appears to be no statutory provision that explicitly provides for an award of attorneys' fees to the plaintiff, such as Bridge, who successfully proves that the State committed an unconstitutional taking").

Bridge therefore seeks attorneys' fees pursuant to the private attorney general doctrine, which is a common law doctrine under Hawaii state law. *See* ECF No. 384. In relying on this state doctrine, it is not clear whether Bridge is seeking fees relating to claims it brought under only the Hawaii constitution, or also under the federal Constitution. This court exercised supplemental jurisdiction over the state claims. So long as "state law does not run counter to a valid federal statute or rule of court, and usually it will not, state law denying the right to attorney's fees or giving a right thereto, which reflects a substantial policy of the state, should be followed." *Alyeska*, 421 U.S. at 259 n.31 (quoting 6 Moore's Federal Practice § 54.77[2] (2d ed. 1974)). Federal common law

18

does not recognize the private attorney general doctrine, but there is no conflicting federal statute or rule of court. *See id.* at 241.

Two things are worth noting about whether the private attorney general doctrine provides a means for Bridge to obtain an attorneys' fee award. First, under the circumstances of this case, this court is treating the applicability of that doctrine as a matter going to the merits of Bridge's attorneys' fee claim, not to this court's jurisdiction to address those merits. Second, if the private attorney general doctrine is the source of any claim to attorneys' fees, it likely applies, as a doctrine under state law, only to state claims on which Bridge prevailed. As noted earlier, Bridge's motion is ambiguous on this point. In its moving papers, Bridge refers to the takings clauses under the federal and state constitutions. No party has identified any takings matter that would have been handled differently depending on whether the federal or state constitution was at issue, so the distinction appears to have no effect on the amount of fees or costs claimed. But, as a legal proposition, Bridge cites no authority for a fee award under state law for a victory under federal law. This court therefore examines the private attorney general doctrine as applicable to Bridge's state claims.

Under Hawaii law, the private attorney general
doctrine "is an equitable rule that allows courts in their
discretion to award attorneys' fees to plaintiffs who have
'vindicated important public rights.'" *In re Water Use Permit
Applications*, 96 Haw. 27, 32, 25 P.3d 802, 804 (2001) ("*Waiahole
II*") (quoting *Arnold v. Dep't of Health Servs.*, 775 P.2d 521,
537 (Ariz. 1989)). Courts applying the private attorney general
doctrine consider three "prongs": "(1) the strength or societal
importance of the public policy vindicated by the litigation,
(2) the necessity for private enforcement and the magnitude of
the resultant burden on the plaintiff, [and] (3) the number of
people standing to benefit from the decision." *Id.* (quoting
*Serrano v. Priest*, 569 P.2d 1303, 1314 (Cal. 1977)).

The court adopts the F&R's analysis of the private
attorney general doctrine. Bridge does not satisfy any of the
three prongs and is therefore not entitled to attorneys' fees
under the private attorney general doctrine. *See Goo v.
Arakawa*, 132 Haw. 304, 318, 321 P.3d 655, 669 (2014) ("All three
prongs must be satisfied by the party seeking attorneys'
fees.").

### 1. Prong One: Vindication of a Public Policy of Strong or Societal Importance.

A public policy of strong or societal importance is
vindicated when a case involves "constitutional rights of

profound significance" and when "all of the citizens of the
state, present and future, [stand] to benefit from the
decision."  *Waiahole II*, 96 Haw. at 31, 25 P.3d at 806.

        In its Motion, Bridge argues that it satisfies the
first prong because "[t]he litigation, and the results achieved,
will serve as a benchmark for land use regulation and
constitutional protection of rights of private property
ownership."  ECF No. 384-1; PageID # 9101.  Bridge further
argues that "[t]his action established that, in administering
its duties under HRS Chapter 205, the State should--and indeed,
must--give consideration to an affected landowner's
constitutional rights, something that the State previously
refused to do."  ECF No. 402, PageID # 9639.

        As detailed in the F&R, the Hawaii Supreme Court has
addressed whether the plaintiffs met the first prong in three
other cases, none of which supports Bridge's argument that the
present case involves a matter of public policy.  First, in
*Sierra Club v. Department of Transportation of State of Hawai'i*,
the Hawaii Supreme Court examined whether an environmental
assessment was needed before the development of the Hawaii
Superferry, an inter-island ferry service.  *See* 120 Haw. 181,
186-87, 202 P.3d 1226, 1231-32 (2009) ("*Superferry II*").  The
first prong was satisfied because the case "establish[ed] the
principle of procedural standing in environmental law in Hawai'i

and clarif[ied] the importance of addressing the secondary impacts of a project in the environmental review process pursuant to HRS chapter 343." *Id.* at 220, 202 P.3d at 1265.

Second, in *In re Honolulu Construction and Draying Company*, the litigation focused on Irwin Park, a public park in Honolulu. *See* 130 Haw. 306, 310 P.3d 301 (2013) ("*Irwin Park II*"). At issue was whether the court should expunge deed restrictions requiring that the park be preserved as a public park. *See id.* at 310-11, 310 P.3d at 305-06. The significant public concern satisfying the first prong was "the preservation of public parks and historic sites in the State." *Id.* at 314, 310 P.3d at 309 (citing HRS § 6E-1) ("The Constitution of the State of Hawaiʻi recognizes the value of conserving and developing the historic and cultural property within the state for the public good.").

Finally, *Kaleikini v. Yoshioka* concerned the Honolulu High-Capacity Transit Corridor Project, a planned 20-mile rail project, and whether an archaeological inventory survey was required to identify historic properties and burial sites in the project area. *See* 129 Haw. 454, 458, 304 P.3d 252, 256 (2013). The Hawaii Supreme Court held that the first prong was met because the case "was responsible for clarifying the principle of procedural standing in historic preservation law in Hawaiʻi, and clarifying the importance of addressing impacts on historic

properties prior to approval and commencement of projects that are subject to the provisions of HRS chapter 6E." *Id.* at 463-64, 304 P.3d at 261-62.

Bridge argues that the first prong is satisfied because it prevailed on a constitutional matter involving a state entity's regulation of land. Yet *Superferry II*, *Irwin Park II*, and *Kaleikini* make clear that the first prong requires the protection of a public good, such as protection of the environment, public spaces, or historic sites. By contrast, Bridge litigated this case not to protect a public good but to recover damages for itself. *See Maunalua Bay Beach Ohana 28 v. State*, No. 28175, 2010 WL 2329366, at *13 (Haw. June 9, 2010) ("The very nature of a takings claim[] protects the interest of the *private* party or parties from whom the State has taken property."). As stated in the F&R, Bridge "has not vindicated an important *public* right in this case; rather, Plaintiff has vindicated an important *private* right." ECF No. 428, PageID # 11311.

Characterizing the Magistrate Judge's "interpretation of the first prong of the doctrine" as "too restrictive," Bridge says that to deny it "fees would be an overly-formalistic application of what it means to vindicate an important public policy." ECF No. 429, PageID # 11343 (quoting *Irwin Park II*, 130 Haw. at 315, 310 P.3d at 310). Bridge provides no further

argument on this objection and does not cite any case law holding that vindication of a private property right meets the first prong.

Bridge quotes *Irwin Park II* out of context.  One of the issues in *Irwin Park II* was whether the lower court's ruling was sufficiently connected to the public policy at issue--i.e., the future of a public park--such that the policy could be considered "vindicated" by the litigation.  The Hawaii Intermediate Court of Appeals ("ICA") held that the ruling was "only tangential to the ultimate disposition and future use of Irwin Park," but the Hawaii Supreme Court disagreed and called the ICA's interpretation "too restrictive" and "overly-formalistic."  *See* 130 Haw. at 315, 310 P.3d at 310.  The Hawaii Supreme Court held that the first prong "requires that the litigation have vindicated a public policy, but does not require that the public policy *be the subject* of the litigation itself." *Id*.  The Hawaii Supreme Court clarified that "an organization may seek to vindicate public policy through litigation on discrete issues, so long as the resolution of the litigation in favor of the organization vindicates a public policy goal, and that policy satisfies the first prong of the test."  *Id.* Nothing in the portion of *Irwin Park II* quoted by Bridge suggests that this case involves an important public policy or that the Magistrate Judge's analysis is incorrect.  No matter

how one defines the subject of this lawsuit, its resolution

vindicates Bridge, not a public policy goal.

Bridge fails to satisfy the first prong because this

case did not vindicate a public policy of strong or societal

importance.

> **2.  Prong Two: Necessity for Private Enforcement and the Magnitude of the Burden on Bridge.**

Underlying Hawaii's adoption of the private attorney

general doctrine is the recognition that "citizens in great

numbers and across a broad spectrum have interests in common"

and that these interests, "while of enormous significance to the

society as a whole, do not involve the fortunes of a single

individual to the extent necessary to encourage their private

vindication in the courts." *Irwin Park II*, 130 Haw. at 315, 310

P.3d at 310 (quoting at *Waiahole II*, 96 Haw. at 30, 25 P.3d at

802).  In other words, lawsuits vindicating interests of great

societal significance might never be brought because any

individual stake in the case might be insufficient to justify

the costs of litigation.  The private attorney general doctrine

is intended to offset the burdens of litigation and encourage

citizens to litigate these important common interests.  This

background clarifies why the second prong considers the

"necessity for private enforcement" and the "magnitude of the

resultant burden on the plaintiff." *Waiahole II*, 96 Haw. at 32, 25 P.3d at 804.

Bridge argues that it satisfies the second prong because it "alone bore a heavy burden that spanned years, in an action that the State--in recognition of the high stakes that the litigation presented--hotly contested and vigorously litigated every step of the way, through proceedings on the docket, then in circuit court, then in state and federal appellate courts, and finally in this Court." ECF No. 384-1, PageID # 9102.

As the Magistrate Judge correctly concluded, the second prong requires more. To satisfy the second prong, the plaintiff must be the sole plaintiff "representing the public interest" or "advocating the public interest." *See Irwin Park II*, 130 Haw. at 316, 310 P.3d at 311. For example, in *Superferry II*, the second prong was met because "it was necessary for the plaintiff to bring the action to enforce the duties owed by [the] Department of Transportation . . . *to the public* under the Hawaiʻi Constitution." *Id.* (summarizing the holding of *Superferry II*, 120 Haw. at 220, 202 P.3d at 1265) (emphases added). In contrast, in *Waiahole II*, the Hawaii Supreme Court held that the plaintiff did not satisfy the second prong because it "'represented one of many competing public and private interests in an adversarial proceeding,' and thus was

not the sole representative challenging an established

governmental policy." *Id.* at 315-16 (summarizing the holding of

*Waiahole II*, 96 Haw. at 31-32, 25 P.3d at 806-07).

This case "involve[d] the fortunes of a single

individual"--Bridge. *See Irwin Park II*, 130 Haw. at 316, 310

P.3d at 311. As discussed above, the private attorney general

doctrine is not intended to encourage an individual to vindicate

private rights in court. The F&R correctly states, "Bridge

owned the property; thus, Bridge alone enjoys any pecuniary

benefit from the litigation." ECF No. 428, PageID # 11319

(citing *Hi-Tech Rockfall Const., Inc. v. Cty. of Maui*, No. CV

08-00081 DAE-LEK, 2009 WL 529096, at *19 (D. Haw. Feb. 26, 2009)

(finding that the plaintiff could not meet the second prong of

the PAG test because "Plaintiff is the only person standing to

benefit from a decision on its remaining claims"). With respect

to Bridge's burden, the court can certainly attest to the

lengthy and litigious nature of the proceedings, but that alone

is insufficient to satisfy the second prong.

Bridge also argues that the F&R "would impose a new

hurdle for plaintiffs who vindicate [public] policies . . . and

would disincentivize--or prevent--plaintiffs from bringing

actions that vindicate such policies." ECF No. 429, PageID

# 11345. Bridge references the Magistrate Judge's

"acknowledgment that 'Hawai'i's private attorney general

doctrine does not prohibit plaintiffs from gaining a personal benefit.'" *Id.* (quoting ECF No. 428, PageID # 11315).  Bridge's argument misses the point; Bridge is not a plaintiff who vindicated a public policy.  This case involved Bridge's private property interests, not interests of "enormous significance to the society as a whole."  *Irwin Park II*, 130 Haw. at 315, 310 P.3d at 310.

As a result, Bridge fails to satisfy the second prong.

### 3. Prong Three: Number of People Standing to Benefit from Bridge's Win.

As summarized in the F&R, "the Hawai'i Supreme Court has found that the third prong of the private attorney general doctrine was satisfied in cases (1) in which 'all citizens of the state, present and future, stood to benefit from the decision'; (2) with 'general precedential value' on a government's obligation as to public parks and historic preservation; and (3) in which society as a whole would have benefited."  ECF No. 428, PageID # 11321 (citing *Waiahole II*, 96 Haw. at 31, 25 P.3d at 806; *Irwin Park II*, 130 Haw. at 319, 310 P.3d at 314; *Superferry II*, 120 Haw. at 221, 202 P.3d at 1266); *see also Nelson v. Hawaiian Homes Comm'n*, 130 Haw. 162, 307 P.3d 142, 148 (2013) (finding the third prong satisfied when the decision benefited the Hawaiian Home Lands trust, and

"stewardship of Hawaiian Home Lands was an obligation taken on
by the State as a condition for admission into the union").

Bridge argues that this case will have "value to
society as whole" because it (1) "cleared the way for
development of the Property, which will provide, among other
things, housing and jobs to the public"; (2) "revitalized and
affirmed constitutional protections, in a case that will have
precedential value for the public good"; and (3) "helped bring
clarity to the LUC's duties under Haw. Rev. Stat. Chapter 205,
and helped ensure that the LUC will perform those duties as
written and in accordance with the public's countervailing
constitutional rights."  ECF No. 384-1, PageID #s 9103-04.

Bridge's arguments are unavailing.  Bridge's assertion
that development of its property will benefit the public is
speculative.  Moreover, this case did not involve any public
good, but rather a piece of privately owned, privately operated
property.  The jury concluded only that Bridge "proved by a
preponderance of the evidence that a taking occurred."  ECF No.
374, PageID # 7470.  The jury verdict did not obligate Bridge to
use the property for any public purpose.  Nor did it establish
any "generally applicable law" regarding issues that are "for
the public good" or "in the public interest."  *See Kaleikini*,
129 Haw. at 466, 304 P.3d at 264 (quoting *Superferry II*, 120
Haw. at 221, 202 P.3d at 806; HRS § 6E-1) (finding that the

third prong was satisfied when the Hawaii Supreme Court's
opinion on appeal established law "regarding standing to enforce
historic preservation laws").

In fact, the litigation that allowed development of
the property was the administrative appeal that resulted in the
Hawaii Supreme Court's decision that the LUC had wrongly changed
the land classification. The present case did not decide
whether development could proceed. This court waited for the
Hawaii Supreme Court's ruling before tackling certain issues.

Nor does this court agree with Bridge that the third
prong is affected by this court's order denying LUC's "Motion
for Judgment as a Matter of Law, or in the Alternative, for a
New Trial." Bridge argues that the order "will almost certainly
provide courts within this district and the State of Hawaii (and
elsewhere) with valuable guidance as to the complex
constitutional issues that this action raised." ECF No. 429,
PageID # 11346. Regardless of whether that order is helpful to
courts addressing issues similar to those raised in LUC's
motion, the order does not support Bridge's claim that the
litigation is of value to all citizens of the State of Hawaii.

The crux of Bridge's argument is that its claim
involved conduct by a state entity charged with regulating land.
But a case involving the rights of one citizen does not
necessarily satisfy the third prong. There must be some

connection to a public good or public interest.  As aptly stated
by the Magistrate Judge, "If this Court were to accept Bridge's
arguments regarding the reasons for its entitlement to
attorneys' fees in this case, every case involving a taking
would be entitled to attorneys' fees under the private attorney
general doctrine."  ECF No. 428, PageID # 11323.

Bridge asserts that the Magistrate Judge misapplied
the relevant Hawaii case law.  ECF No. 429, PageID # 11346
("[U]nder the very same cases that the Magistrate found
'instructive," . . . Bridge satisfied prong three of the
[private attorney general test]."  ECF No. 429, PageID # 11346.
This conclusory statement, presented without argument or
reference to specific cases, is without merit.

The Magistrate Judge correctly concluded that Bridge
was not entitled to attorneys' fees pursuant to Hawaii's private
attorney general doctrine.

### C.    Bridge Is Entitled to $15,085.51 in Costs.

The Federal Rules of Civil Procedure provide, "Unless
a federal statute, these rules, or a court order provides
otherwise, costs--other than attorney's fees--should be allowed
to the prevailing party."  Fed. R. Civ. P. 54(d)(1); *see also*
Local Rule 54.2(a) ("Costs shall be taxed as provided in Fed. R.
Civ. P. 54(d)(1).").  Under the Local Rules of the District of

Hawaii, "[c]osts are taxed in conformity with 28 U.S.C. §§ 1821, 1920-1925, and other applicable statutes."  Local Rule 54.2(f).

As the prevailing party, Bridge requested $62,810.06 in costs as follows:

| Service | Cost |
|---------|------|
| Deposition services | $13,656.41 |
| Outside printing and copies | $7,251.15 |
| Mediation services | $5,785.33 |
| Travel expenditures | $2,459.40 |
| Process servers | $1,656.54 |
| Filing fees | $519.00 |
| Witness and mileage fees | $512.00 |
| Courier services | $79.18 |
| Experts services | $30,891.05 |
| **Total** | **$62,810.06** |

ECF No. 384-1, PageID # 9129.

In its Motion, Bridge argues that, under 28 U.S.C. § 1920(2)-(4), "deposition services" and "outside printing and copies" could be taxed as costs.  *Id.* at 9130.  Bridge concedes that the remaining categories do not fall under § 1920, but says they concern nontaxable expenses that should be awarded as part of its attorneys' fees award.  *See id.* at 9131-32.

Because Bridge is not entitled to an award of
attorneys' fees, the Magistrate Judge found only the § 1920
categories compensable.  ECF No. 428, PageID # 11331.  The
Magistrate Judge determined that $13,656.41 in deposition costs,
unopposed by the LUC, were reasonable.  *Id.* at 11336.  However,
the Magistrate Judge found reasonable only $1,429.10 of the
requested $7,251.15 in copying costs.

A party seeking copying costs under § 1920(4) must
show that the copies were "necessarily obtained for use in the
case."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 914,
928 (9th Cir. 2015).  To make such a showing, the party must
provide some detail regarding the use of the documents copied.
*See* Local Rule 54.2(f) ("The cost of copies necessarily obtained
for use in the case is taxable provided the party seeking
recovery submits an affidavit describing the documents copied,
the number of pages copied, the cost per page, and the use of or
intended purpose of the items copied."); *see also Online DVD-
Rental Antitrust Litig.*, 779 F.3d at 928 ("'Document production'
and other similarly generic statements on the invoices are
unhelpful in determining whether [copying costs under § 1920(4)]
are taxable." (quoting *In re Ricoh Co., Ltd. Patent Litig.*, 661
F.3d 1361, 1368 (Fed. Cir. 2011))).

For $1,429.10 of the copying costs, the Magistrate
Judge was able to discern from the invoices and Bridge's

description that those copies were for Bridge's trial exhibits and Ninth Circuit briefs.  ECF No. 428, PageID # 11333.  For the remaining costs, Bridge included no description of the use of the copies in the litigation, so the Magistrate Judge declined to award those copying costs.

The F&R therefore recommended that this court grant Bridge an award of $13,656.41 in deposition costs and $1,429.10 in copying costs, for a total of $15,085.51.  *Id.* at 11336. Both Bridge and the LUC object to the F&R's analysis of copying costs.[3]  The court agrees with the Magistrate Judge and adopts the F&R's recommendation in this regard.

### 1.    Bridge's Objection: Entitlement to an Additional $5,510.26 in Copying Costs.

Bridge argues that the Magistrate Judge could have determined that $5.510.26 worth of additional copies were necessarily obtained for the litigation.  ECF No. 429, PageID # 11349.  Bridge focuses on a Honolulu Copy invoice totaling $5,510.26 dated March 5, 2018.  ECF No. 429, PageID # 11349; ECF No. 384-11, PageID # 9228.  Bridge argues that the Magistrate Judge could have determined that these copies were used for trial exhibits because the date of the Honolulu Copy invoice was close in time to two invoices that the Magistrate Judge deemed

---

[3] Bridge also argues that nontaxable expenses should be awarded as part of its attorneys' fees award.  ECF No. 429, PageID #s 11350-51.  This court's conclusion that Bridge is not entitled to attorneys' fees renders this objection unpersuasive.

compensable: one dated March 2, 2018, and another dated March 12, 2018. *See id.* Bridge also argues that the LUC's opposition brief and Bridge's reply brief indicated that Bridge's copying costs were for trial exhibits. *See id.*[4]

Bridge's argument is unconvincing. The court can determine that the March 2 and March 12 invoices were for exhibits by looking at Bridge's Motion and its exhibits. Bridge's description for the March 2 invoice was "Photocopies of Exhbits [sic] 2001 to 2083," and the March 12 invoice states that the copies were for "Exhibit 037." ECF No. 348-9, PageID # 9208; ECF No. 384-11, PageID # 9229. By contrast, the Honolulu Copy invoice dated March 5 provides no description for the use of the copies, and Bridge provides none in its Motion. *See* ECF Nos. 348-9, 349-11. Further, neither the LUC's opposition brief nor Bridge's reply brief mentions the $5,510.26 in copying costs; both make general arguments with respect to Bridge's use of trial exhibits. *See* ECF Nos. 399, 402.

It was Bridge's responsibility to clearly set forth what copies were made and for what purpose. Bridge wrongly

_____

[4] Bridge states that "[t]he State recognized that the subject invoice for $5,510.26 was for copying exhibits that Bridge intended for use at trial, and the State vehemently opposed their award." ECF No. 429, PageID # 11349 (citing ECF No. 399, PageID #s 9559-60). Bridge overstates the LUC's opposition brief. The LUC never mentioned the $5,510.26 invoice, but rather argued that the court "should not award $7,251.15 in copying costs" because Bridge's "exhibits were unnecessary." ECF No. 399, PageID # 9559.

suggests that the court must infer compensability by comparing separate invoices, or by extrapolating from general references made in other briefs. The Magistrate Judge correctly determined that Bridge is not entitled to an additional $5,510.26 in copying costs because Bridge did not demonstrate that such costs were necessarily obtained for use in the case.

### 2. LUC's Objection: Unreasonableness of Copying Costs.

The LUC objects to the F&R's recommendation regarding copying costs because "[t]he Magistrate Judge failed to give weight to the [LUC's] argument that plaintiff's copying costs should be reduced based upon plaintiff's unreasonably excessive naming of exhibits." ECF No. 431, PageID # 11359. The LUC argues that Bridge "was needlessly naming hundreds of unnecessary trial exhibits totaling thousands of pages" and that this court "should award no more than $725.15," which is ten percent of Bridge's requested amount. *Id.* at 11359-60.

The LUC offers no way to determine which of Bridge's trial exhibits were necessary and which were "needlessly nam[ed]." Moreover, $725.15 is an arbitrary amount; the LUC offers no support for limiting any award to ten percent of Bridge's requested copying costs. This court saw the high number of unused exhibits at trial, but the court has no basis for saying that a prudent attorney should have known that

numerous exhibits would not be needed during trial proceedings, which always include uncertainties. The check on any attorney is the risk of not prevailing at trial and therefore of not recovering costs. In the context of this case, the court declines to evaluate Bridge's trial preparation in the manner proposed by LUC and adopts the Magistrate Judge's recommendation with respect to this argument by the LUC.

Bridge is awarded $15,085.51 in costs pursuant to 28 U.S.C. § 1920(2)-(4).

## V.        CONCLUSION.

The court adopts the F&R with modified reasoning on the issue of the LUC's sovereign immunity. The LUC waived its sovereign immunity with respect to attorneys' fees, but Bridge has not demonstrated that it is entitled to attorneys' fees. The court awards Bridge $15,085.51 in costs.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 20, 2018.



/s/ Susan Oki Mollway

Susan Oki Mollway
United States District Judge

Bridge Aina Le'a, LLC v. Hawaii Land Use Comm'n et al., Civ. No. 11-00414 SOM-KJM; ORDER MODIFYING AND ADOPTING AS MODIFIED THE MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS REGARDING ATTORNEYS' FEES AND COSTS.